Insured's Name   Parkland Chamber of Commerce                         Policy # NBP2556963A

UMR # _____

                                                                      **(Lloyd's Policies Only)**

Policy Dates  From   08/23/2024                 To   08/23/2025

Surplus Lines Agents Name            David O'Keeffe

Surplus Lines Agents Address         2 Oakwood Blvd., Ste 100 Hollywood FL 33020

Surplus Lines Agents License #       P082520

Producing Agent's Name                JAMES D. RUDD

Producing Agent's Physical Address  3303 W Commercial Blvd Ste 200, Fort Lauderdale,  FL  33309

**"THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER."**

**"SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY."**

| | | | |
|---|---|---|---|
| Policy Premium | $1,906.00 | Policy Fee | $125.00 |
| Inspection Fee | $0.00 | Provider Fee | $0.00 |
| Tax | $100.33 | Service Fee | $1.22 |
| FHCF Assessment | $0.00 | Citizen's Assessment | $0.00 |
| EMPA Surcharge | $4.00 | | |

David O'Keeffe Lic# P082520

Surplus Lines Agent's Countersignature

☐ **"THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE OR WIND LOSSES, WHICH MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU."**

☐ **"THIS POLICY CONTAINS A CO-PAY PROVISION THAT MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU."**

# EXHIBIT B

 business resource center



As a policyholder through USLI, you have access to many free and discounted services that will assist you in operating and growing your business through the Business Resource Center (BRC). Consider the following services and associated cost savings when deciding where to place your insurance!

## Cybersecurity
- Complimentary access to eRiskHub®, a data breach prevention and response resource that will help you understand your exposure to a data breach and the importance of a response plan
- Best practice checklists for securing personal and payment card information, plus tips on protecting against cyberattacks

## Background Checks and Screenings
- Discounted background checks, including multi-court criminal database searches, county criminal searches and more (first background check is free)
- Best practices for performing a background check
- Discounted tenant and drug screenings and motor vehicle reports (MVRs)

## Disaster Preparation and Recovery
- Guidance on preparing for natural disasters and serve weather
- Business planning and recovery toolkit
- Sample incident reporting form and disaster loan assistance resource

## Human Resources
- Free PeopleSystems' human resources consultation helpline to be used for personnel issues, including harassment and discrimination, the Family and Medical Leave Act, disability, wage and hours regulations and more
- Online library with information, forms and articles pertaining to human resources
- Discounted HR and payroll management system by PrimePoint
- Discounted employee workplace assessment by Talogy, previously PSI Caliper
- Resources for recruiting, interviewing and terminating employees

## Marketing
- Resources marketing via email and social media, capturing leads and building surveys
- Free and discounted stock imagery sites and photo and video editing programs
- Discount stationery, signage, promotional items and gifts

## Property Safety
- Free workplace safety and occupational health consultation
- Tips for building maintenance, fire prevention and water safety

## Industry-specific Resources For:
- Health, wellness and sports
- Hospitality, food and beverage
- Nonprofits and social services
- Residential and rental properties
- Retail and professional services
- Youth services and child care
- … and more!

 Try our **cost-savings calculator** to see how much you could save!

ONLINE LEARNING

### Need help training your new employees?
Properly preparing new employees can be time-consuming and expensive. We offer a variety of free and discounted industry-specific training and certifications to help you save time and money!

**Topics include:**
- Food manager and handler safety
- Liquor safety
- CPR, first aid and concussion
- Sexual harassment
- Leadership and professional development

 For a full list of vendors, discounts and resources, visit **bizresourcecenter.com.**



# 24/7 CLAIM REPORTING

In our continuing effort to provide you with excellent claim service, you may now report a claim and get claim assistance 24 hours a day/7 days a week.

**For claim reporting, call toll free 1-888-875-5231 or visit USLI.COM and select the "report a claim" option.**

For emergency claims requiring immediate assistance, please use the toll free option. Your call will be referred to a claims professional who will respond within an hour of your call with direction and assistance.

Thank you for placing your trust in our company. We pledge to work hard every day to earn and maintain that trust.



**USLI.COM**
**888-523-5545**

CRF 12/16

# Privacy Notice At Collection

We may need to collect certain personal information to provide you with our services and products. For information on how we store, use and protect personal information, please see our Privacy Policy accessible on our website, **https://www.usli.com/privacy-policy/**.



**USLI.COM**
**888-523-5545**

# Note About Loss Control

Dear Valued Policyholder,

Slips, trips and falls are among the most frequent causes of loss. What might surprise you is that, many times, they result in claims and judgments in the hundreds of thousands of dollars, which ultimately impact your insurance premium. In most instances, these claims can be lessened or prevented entirely simply by addressing the most common causes of such losses listed below.

## Most Common Causes

- ▶ Spills, wet or icy walking surfaces
- ▶ Uneven or worn floors/carpets/steps/sidewalks
- ▶ Inadequate or poorly maintained lighting
- ▶ Obstructed views
- ▶ Poor housekeeping - Excess clutter/trash in walkways or near open flames or hot surfaces

We encourage you to please take the time to periodically inspect your premises to see if any of these conditions exist and work to eliminate them where possible. Your efforts may save you money on future insurance premiums and, quite possibly, save your business.

Thank you for choosing and trusting us to help protect your business!

*"An ounce of prevention is worth a pound of cure."*
*-Benjamin Franklin*

Regards,

Thomas P. Nerney
Chairman, President and CEO



# FREE PRIVACY BREACH RISK MANAGEMENT RESOURCES



## WILL YOU BE PREPARED WHEN A PRIVACY BREACH OCCURS?

Every year, thousands of privacy breaches are reported, exposing millions of people's personal information. The eRiskHub® portal, powered by NetDiligence®, is an effective way to combat privacy breaches and other types of cyber losses.

**With your USLI policy, you will receive instructions on how to access and begin using the eRiskHub® portal—a benefit that is valued in excess of $1,200 a year!**

eRiskHub® an all-in-one resource for becoming educated about and prepared for a privacy breach. This free service is available to USLI policyholders.

Using proprietary tools anchored in proven risk management principals, NetDiligence® provides a full range of enterprise-level information security, e-risk insurability and regulatory compliance assessment and testing services. NetDiligence® supports and is endorsed by some of the world's largest network liability insurance underwriters.

### HOW TO START USING THIS FREE OFFERING:

▶ Go to **eriskhub.com/usli**

▶ Select "**Register Now**" to set up a free account

▶ Create your own username and password; your access code is **08451**

## KEY FEATURES OF THE ERISKHUB® PORTAL



**Data breach calculators**: Learn how to estimate the cost of a breach, notifications and business interruption.



**Learning center**: Explore best practices articles, white papers and webinars from leading technical and legal experts. Highlighted topics include PCI compliance and social engineering.



**Security training**: Watch videos to learn about best practices in security and privacy awareness, or download a training guide.



**Risk manager tools**: Discover how your cybersecurity measures up to industry best-practices with a self-assessment, and find other resources to assist you with cyber risk management such as sample privacy policies.



**Ransomware resources**: Listen to experts discuss challenges and best practices to prevent ransomware attacks, and browse our site to discover the impact of an attack based on hundreds of real incidents.



**Consultation**: Our Breach Coach, HIPPA Coach and Security Coach are available to assist you.



This document does not amend, extend or alter the coverage afforded by the policy. For a complete understanding of any insurance you purchase, you must first read your policy, declaration page and any endorsements and discuss them with your agent. A sample policy is available from your agent. Your actual policy conditions may be amended by endorsement or affected by state laws. USLI companies are members of the Berkshire Hathaway family of companies and have an A++ Superior rating for financial stability from AM Best. The insuring company names are United States Liability Insurance Company, Mount Vernon Fire Insurance Company, and U.S. Underwriters Insurance Company.

**This page has been intentionally left blank.**

NBP2556963
Renewal of Number

## Mount Vernon Fire Insurance Company

1190 Devon Park Drive, Wayne, Pennsylvania 19087
A Member Company of United States Liability Insurance Group

POLICY DECLARATIONS

## No. NBP2556963A

NAMED INSURED AND ADDRESS:

PARKLAND CHAMBER OF COMMERCE
7957 N UNIVERSITY DR
STE 111
PARKLAND, FL 33067

THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER.
SURPLUS LINES INSURERS POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.

POLICY PERIOD: (MO. DAY YR.)  From: 08/23/2024  To: 08/23/2025

12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE

FORM OF BUSINESS:     Non-Profit Corporation

BUSINESS DESCRIPTION: Non-Profit Management Liability

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.
THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

|  | PREMIUM |
|---|---|
| Businessowners Liability Coverage Part | $971.00 |
| Businessowners Property Coverage Part | $50.00 |
| Management Liability Coverage Part | $885.00 |
| TOTAL: | $1,906.00 |

Coverage Form(s) and Endorsement(s) made a part of this policy at time of issue
### See Endorsement EOD (1/95)

Agent:  HULL & COMPANY, LLC (FT. LAUDERDALE, FL) (228)
P O BOX 934551
Atlanta, GA  31193

Broker:  THE JOHN GALT INSURANCE AGENCY CORPORATION
6300 NW 5th Way,  Suite 100
Ft. Lauderdale, FL  33309

Issued:  08/26/2024 12:43 PM

By: _____
Authorized Representative

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS, COVERAGE PART COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

UPD (08-07)

# EXTENSION OF DECLARATIONS

**Policy No. NBP2556963A**

Effective Date:  08/23/2024

12:01 AM STANDARD TIME AT YOUR MAILING ADDRESS

---

## FORMS AND ENDORSEMENTS

The following forms apply to multiple coverage parts

| Endt# | Revised | Description of Endorsements |
|---|---|---|
| 2110 | 04/15 | Service Of Suit |
| BP-102 | 01/15 | Exclusion Of War, Military Action And Terrorism |
| BP-107 | 04/08 | Actual Cash Value Definition |
| BP-11 | 05/04 | Exclusion - Fiduciary Liability And Financial Services |
| BP-115 | 07/08 | Protective Devices Or Services Provisions |
| BP-15 | 07/04 | Business Income And Extra Expense Limit |
| BP-152 | 01/13 | Separation of Insureds Clarification Endorsement |
| BP-165 | 05/18 | Exclusion - Specific Activities, Events or Conditions or Over 2,500 People |
| BP-168 | 11/11 | Exclusion - Injury To Performers Or Entertainers |
| BP-179 NBP | 12/17 | Amendment of Liquor Liability Exclusion |
| BP-201 | 09/16 | Coverage Extension - Education Services |
| BP-40 | 03/11 | Molestation Or Abuse Exclusion |
| BP-48 | 05/16 | Exclusion Asbestos, Lead Contamination, Absolute Pollution, Mold, Fungus, Bacteria, Virus And Organic Pathogen |
| BP-49 | 01/13 | Absolute Exclusion For Pollution, Organic Pathogen, Silica, Asbestos And Lead |
| BP-54 | 06/04 | Windstorm Or Hail Exclusion |
| BP-58 | 05/07 | Animal Exclusion |
| BP-59 | 02/13 | Exclusion - Athletic Activity Or Sport Participants |
| BP-60 | 05/07 | Exclusion For Bleacher Collapse |
| BP-65 | 05/07 | Exclusion For Mechanical Rides |
| BP-8 | 02/09 | Limits Of Insurance Under Multiple Coverage Parts |
| BP-88 | 04/06 | Expanded Definition Of Bodily Injury |
| BP-90 | 04/14 | Who Is An Insured Clarification Endorsement |
| BP-95 | 05/07 | Exclusion For Climbing, Rebounding And Interactive Games And Devices |
| BP-96 | 05/07 | Exclusion For Firearms, Fireworks And Other Pyrotechnic Devices |
| BP-97 | 05/07 | Exclusion For Event Vendor/Exhibitor & Contractor |
| BP0003 | 01/10 | Businessowners Coverage Form |
| BP0303 | 02/23 | Florida Changes |
| BP0417 | 01/10 | Employment-Related Practices Exclusion |
| BP1505 | 05/14 | Exclusion - Access Or Disclosure Of Confidential Or Personal Information And Data -Related Liability - Limited Bodily Injury Exception Not Included |
| BP1560 | 02/21 | Cyber Incident Exclusion |
| BP1591 | 12/23 | Exclusion - Perfluoroalkyl and Polyfluoralkyl Substances (PFAS) |
| DO FL | 05/17 | Florida State Amendatory Endorsement |
| DO-100 | 05/17 | Directors and Officers Coverage Part |
| DO-101 | 05/17 | Employment Practices Coverage Part |

---

## EXTENSION OF DECLARATIONS

Policy No. NBP2556963A

Effective Date:  08/23/2024

12:01 AM STANDARD TIME AT YOUR MAILING ADDRESS

### FORMS AND ENDORSEMENTS

| | | |
|---|---|---|
| DO-211 | 05/17 | Insurance Operations Exclusion |
| DO-283 | 05/17 | Data and Security Plus Endorsement |
| DO-296 | 05/17 | Fair Labor Standards Act Endorsement Defense Costs Only Coverage |
| DO-314 | 03/21 | Biometric Information Exclusion |
| DO-GTC | 05/17 | General Terms and Conditions |
| Jacket | 07/19 | Policy Jacket |
| Jacket FL | 12/19 | Policy Jacket |
| PL 1 PFAS | 03/23 | Exclusion - Perfluoroalkyl And Polyfluoroalkyl Substances (Pfas) |
| TRIADN | 12/20 | Disclosure Notice of Terrorism Insurance Coverage |

## BUSINESSOWNERS PROPERTY COVERAGE PART DECLARATIONS

Policy No. NBP2556963A

Effective Date:  08/23/2024
12:01 STANDARD TIME

### DESCRIPTION OF PREMISES

| Prem | Bldg | Location, Construction, Occupancy and Other Information | Territory | Fire Code |
|------|------|-----|-----|-----|
| 1 | 1 | 7957 N. University Drive Suite 111, Coral Springs, FL 33067 | 002 | 0702 |
| | | Description:        Non-Profit Management Liability | | |
| | | Covered Causes of Loss:  Special Excluding Wind And Hail | Protection Class | 1 |
| | | Construction:        Frame | Square Footage: | 500 |
| | | Special Deductible:    None      Special Deductible Type: | | |

### COVERAGES PROVIDED - INSURANCE  AT THE DESCRIBED PREMISES APPLIES ONLY FOR COVERAGES FOR WHICH A LIMIT OF INSURANCE IS SHOWN

| Prem | Bldg | Coverage | Limits of Insurance | Deductible | Coinsurance % or Monthly Indemnity | + Valuation | Premium |
|------|------|-----|-----|-----|-----|-----|-----|
| 1 | 1 | Business Income and Extra Expense | $25,000 | $0 | | | Included |
| 1 | 1 | Business Personal Property | $5,000 | $1,000 | | RC | Included |
| | | MINIMUM PREMIUM FOR PROPERTY COVERAGE PART: | | | | | $50 |
| | | TOTAL PREMIUM FOR PROPERTY COVERAGE PART: | | | | | $50  MP |

MP - minimum premium

+ Valuation: ACV - Actual Cash Value; RC - Replacement Cost; RC/ACV - Replacement Cost/ACV Roof
FBV - Functional Building Value; AA - Agreed Amount; ALS - Actual Loss Sustained

### LOSS PAYABLE(S): NONE

Coverage Form(s)/Part(s) and Endorsement(s) made a part of this policy at time of issue:
See Endorsement EOD (01/95)

**THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.**

Includes copyrighted material of ISO Commercial Risk Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1983, 1984, 1988

BPP150 (02/09)

## BUSINESSOWNERS GENERAL LIABILITY COVERAGE PART DECLARATIONS

Policy No.    NBP2556963A

Effective Date:  08/23/2024
12:01 STANDARD TIME

### LIMITS OF INSURANCE

| | |
|---|---|
| Liability and Medical Expenses | $1,000,000 |
| Medical Expense (per person) | $5,000 |
| Damages To Premises Rented To You (Any One Premises) | $100,000 |

An Aggregate Limit of Liability applies to this Coverage as defined in SECTION II - LIABILITY, paragraph D.4. of the Businessowners Coverage Form.

### LIABILITY DEDUCTIBLE                                                                              $0

### LOCATIONS OF ALL PREMISES YOU OWN, RENT OR OCCUPY

| Location | Address | Territory |
|---|---|---|
| 1 | 7957 N. University Drive Suite 111, Coral Springs, FL 33067 | 002 |

### PREMIUM COMPUTATION

| | | | | Rate | | Advance Premium | |
|---|---|---|---|---|---|---|---|
| Loc | Classification | Code No. | Premium Basis | Pr/Co | All Other | Pr/Co | All Other |
| 1 | Chamber of Commerce - Not-For-Profit only | 41668 | 500 Per 1,000 Total Area | 0.000 | 862.482 | $0 | $431 |
| 1 | Blanket Special Events Liability - Non-Profit Organizations | 00041 | Flat | 0.000 | 540.000 | $0 | $540 |

MINIMUM PREMIUM FOR GENERAL LIABILITY COVERAGE PART:                $345

TOTAL PREMIUM FOR GENERAL LIABILITY COVERAGE PART:                 $971
(This Premium may be subject to adjustment.)   MP - minimum premium

Coverage Form(s)/Part(s) and Endorsement(s) made a part of this policy at time of issue:
See Form EOD (01/95)

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.

Includes copyrighted material of ISO Commercial Risk Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1983, 1984, 1988

# NON PROFIT MANAGEMENT LIABILITY COVERAGE PART DECLARATIONS

PLEASE READ YOUR POLICY CAREFULLY.

THIS IS A CLAIMS MADE POLICY COVERAGE FORM AND UNLESS OTHERWISE PROVIDED HEREIN, THE COVERAGE OF THIS FORM IS LIMITED TO LIABILITY FOR CLAIMS FIRST MADE DURING THE POLICY PERIOD, OR THE EXTENSION PERIOD, IF APPLICABLE.  DEFENSE COSTS SHALL BE APPLIED AGAINST THE RETENTION.

No.  NBP2556963A

Effective Date:  08/23/2024
12:01 AM STANDARD TIME

ITEM I. PARENT ORGANIZATION AND PRINCIPAL ADDRESS

PARKLAND CHAMBER OF COMMERCE
7957 N UNIVERSITY DR
STE 111
PARKLAND, FL 33067

ITEM II. POLICY PERIOD: (MM/DD/YYYY)  From:   08/23/2024  To:  08/23/2025

## Non Profit Directors and Officers Liability Coverage Part

ITEM III. LIMITS OF LIABILITY

| | | |
|---|---|---|
| a. Non Profit Directors & Officers | $1,000,000 | EACH CLAIM |
| b. Non Profit Directors & Officers | $1,000,000 | IN THE AGGREGATE |

| | | |
|---|---|---|
| ITEM IV. RETENTION: | $0 | EACH CLAIM |
| ITEM V. PREMIUM: | $698 | |
| RETROACTIVE DATE: | Full Prior Acts | |
| PRIOR OR PENDING LITIGATION | 08/23/2023 | |

## Employment Practices Liability Coverage Part

ITEM III. LIMITS OF LIABILITY

| | | |
|---|---|---|
| a. Employment Practices | $1,000,000 | EACH CLAIM |
| b. Employment Practices | $1,000,000 | IN THE AGGREGATE |
| ITEM IV. RETENTION: | $0 | EACH CLAIM |
| ITEM V. PREMIUM: | $187 | |
| RETROACTIVE DATE: | Full Prior Acts | |
| PRIOR OR PENDING LITIGATION | 08/23/2023 | |

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.

## NON PROFIT MANAGEMENT LIABILITY COVERAGE PART DECLARATIONS

PLEASE READ YOUR POLICY CAREFULLY.

THIS IS A CLAIMS MADE POLICY COVERAGE FORM AND UNLESS OTHERWISE PROVIDED HEREIN, THE COVERAGE OF THIS FORM IS LIMITED TO LIABILITY FOR CLAIMS FIRST MADE DURING THE POLICY PERIOD, OR THE EXTENSION PERIOD, IF APPLICABLE. DEFENSE COSTS SHALL BE APPLIED AGAINST THE RETENTION.

No. NBP2556963A

Effective Date: 08/23/2024
12:01 AM STANDARD TIME

### Fiduciary Liability Coverage Part

ITEM III. LIMITS OF LIABILITY

    a. Fiduciary Liability          NOT COVERED

ITEM IV. RETENTION:          NOT COVERED

ITEM V. PREMIUM:          NOT COVERED

ITEM VI. Coverage Form(s)/Part(s) and Endorsement(s) made a part of this policy at time of issue:
    See Endorsement EOD (01/95)

---

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.

This page has been intentionally left blank.

## Service Of Suit

Pursuant to any statute of any state, territory or district of the United States which makes provisions therefore, the Company hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the Statute, or his successors in office, as our true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured(s) or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the below named as the person to whom the said officer is authorized to mail process or a true copy thereof.

It is further agreed that service of process in such suit may be made upon the General Counsel of the Company, or his nominee, at 1190 Devon Park Drive, Wayne, Pennsylvania 19087 and that in any suit instituted against any one of them upon this policy, the Company will abide by the final decision of such Court or any Appellate Court in the event of an appeal.

> This endorsement modifies insurance provided under the following:
>
> **BUSINESSOWNERS COVERAGE FORM**

# Exclusion Of War, Military Action And Terrorism

A.  SECTION I PROPERTY; B. Exclusions; 1. f. War and Military Action is deleted in its entirety and is replaced by the following:

    f.  War and Military Action
        (1) War, including undeclared or civil war;
        (2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or
        (3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

        With respect to any action that comes within the terms of this exclusion and involves nuclear reaction or radiation, or radioactive contamination, this War And Military Action Exclusion supersedes the Nuclear Hazard Exclusion.

B.  SECTION I PROPERTY; B. Exclusions; 1. item t. is added:

    t.  Terrorism
        "Terrorism" including any action taken in hindering or defending against an actual or expected incident of "terrorism" regardless of any other cause or event that contributes concurrently.

        But with respect to any such activity that also comes within the terms of the War and Military Action Exclusion, that exclusion supersedes this "Terrorism" Exclusion.

        In the event of an act of "terrorism" that involves nuclear reaction or radiation, or radioactive contamination, this "Terrorism" Exclusion supersedes the Nuclear Hazard Exclusion.

**A.** SECTION II – LIABILITY; B. Exclusions; 1. Applicable To Business Liability Coverage; i. War and SECTION II – LIABILITY; B. Exclusions; 2. Applicable To Medical Expenses Coverage; h. is deleted in its entirety and replaced by the following:

 i. War or Terrorism
  "Bodily injury", "property damage", "personal and advertising injury" arising, directly or indirectly out of:
  (1) War, including undeclared or civil war; or
  (2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents;
  (3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or
  (4) "Terrorism", including any action taken in hindering or defending against an actual or expected incident of "terrorism" regardless of any other cause or event that contributes concurrently.

The following definition is added with respect to the provisions of this endorsement:

Terrorism means activities against persons, organizations or property of any nature:
 (1) That involve the following or preparation for the following:
  (a) Use or threat of force or violence; or
  (b) Commission or threat of a dangerous act; or
  (c) Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and
 (2.) When one or both of the following applies:
  (a) The effect is to intimidate or coerce a government, or to cause chaos among the civilian population or any segment thereof, or to disrupt any segment of the economy; or
  (b) It is reasonable to believe that the intent is to intimidate or coerce a government, or to seek revenge or retaliate, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

All other terms and conditions of this policy remain unchanged. This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown.

# UNITED STATES LIABILITY INSURANCE GROUP
# WAYNE, PENNSYLVANIA

This endorsement modifies insurance provided under the following:

## BUSINESSOWNERS COVERAGE FORM

### Actual Cash Value Definition

It is agreed the following is added to **SECTION I – PROPERTY**; **H. Property Definitions:**

"Actual Cash Value" means replacement cost less depreciation.

All other terms and conditions of this policy remain unchanged.  This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown.

BP 107 (04-08)                                                         Page 1 of 1

## UNITED STATES LIABILITY INSURANCE GROUP
## WAYNE, PENNSYLVANIA

This Endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

# EXCLUSION – FIDUCIARY LIABILITY AND FINANCIAL SERVICES

SECTION II - LIABILITY, B. Exclusions, 1. Applicable To Business Liability Coverage, items cc. and dd. are added as follows:

cc. This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" resulting from the rendering of or the failure to render financial services by any insured for other persons or organizations.  For the purpose of this exclusion, financial services include but are not limited to:

(1) Planning, administering or advising on:
   (a) Any: investment, pension, annuity, savings, checking, or individual retirement plan, fund or account;
   (b) The issuance or withdrawal of any bond, debenture, stock or other securities;
   (c) The trading of securities, commodities or currencies; or
   (d) Any acquisitions or mergers;
(2) Acting as a dividend disbursing agent, exchange agent, redemption or subscription agent, warrant or scrip agent, fiscal or paying agent, tax withholding agent, escrow agent, clearing agent, or electronic funds transfer agent;
(3) Lending, or arranging for the lending of, money, including credit card, debit card, leasing or mortgage operations or activities or interbank transfers;
(4) Repossessing of real or personal property from a borrower or acting as an assignee for the benefit of creditors;
(5) Checking or reporting of credit;
(6) Maintaining of financial accounts or records;
(7) Tax planning, tax advising or the preparation of tax returns; or
(8) Selling or issuing travelers checks, letters of credit, certified checks, bank checks or money orders.

dd. This insurance does not apply to "bodily injury", "property damage", or  "personal injury and advertising injury" arising out of the ownership, maintenance or use, including all related operations, of property for which you are acting in a fiduciary or representative capacity.

All other terms and conditions of this Policy remain unchanged.  This endorsement is a part of your Policy and takes effect on the effective date of your Policy unless another effective date is shown.

# UNITED STATES LIABILITY INSURANCE GROUP
# WAYNE, PENNSYLVANIA

| This endorsement modifies insurance provided under the following: |
|---|
| **BUSINESSOWNERS COVERAGE FORM** |

## PROTECTIVE DEVICES OR SERVICES PROVISIONS
## SCHEDULE

| Premises Number | Building Number | Symbol | Description of Protective Safeguard |
|---|---|---|---|
| ALL | ALL | P-6 | All electric is on functioning and operational circuit breakers |
| ALL | ALL | P-5 | Functioning and operational smoke/heat detectors in all units or occupancies |

The following is added to the policy:

**A.** Protective Safeguards

  **1.** You are required to have and maintain the protective devices or services listed in the Schedule above.

  **2.** The protective safeguards to which this endorsement applies are identified by the following symbols:

    **a.** **"P-1"** Automatic Sprinkler System, including related supervisory services.
Automatic Sprinkler System means:

      1) Any automatic fire protective or extinguishing system, including connected:

        a) Sprinklers and discharge nozzles;

        b) Ducts, pipes, valves and fittings;

        c) Tanks, their components parts and supports; and

        d) Pumps and private fire protection mains.

      2) When supplied from an automatic fire protective system:

        a) Non-automatic fire protective systems; and

        b) Hydrants, standpipes and outlets.

    **b.** **"P-2"** Automatic Fire Alarm, protecting the entire building, that is:

      1) Connected to a central station; or

      2) Reporting to a public or private fire alarm station.

    **c.** **"P-3"** Security Service, with a recording system or watch clock making hourly rounds covering the entire building, when the premises are not in actual operations.

    **d.** **"P-4"** Service Contract with a privately owned fire department providing fire protection service to the described premises.

    **e.** **"P-5"** Functioning and operational smoke/heat detectors in all units or occupancies.

    **f.** **"P-6"** All Electrical in on functioning and operational circuit breakers.

    **g.** **"P-7"** Functioning and operational central station burglar alarm with a monitoring contract.

    **h.** **"P-8"** Functioning and operational surge protectors on all computer and audio-video equipment.

    **i.** **"P-9"** Refrigeration maintenance contract on all refrigeration equipment.

    **j.** **"P-10"** Functioning and operational automatic fire suppression system per NFPA #96 on all cooking equipment.

Includes copyrighted material of Insurance Services Office, Inc. reprinted with permission

k.  "P-15" Any item on a display rack with a sales price of $250 or more must be affixed with a security sensor or must be chained and locked to a rack.
l.  "P-16" The building is protected from lightning with an approved NFPA 780 installation.
m.  "P-17" Flammable liquids must be stored in NFPA #30 approved cabinets.
n.  "P-18" No smoking signs must be posted and enforced.
o.  "P-21" The protective system described in the schedule.

The following is added to Paragraph B. Exclusions in Section I - Property:

With respects to "P-1", "P-2", "P-3", "P-4". "P-5", "P-6", "P-8", "P-10", "P-16", "P-17", and "P-18", we will not pay for loss or damage caused by or resulting from fire if, prior to the fire, you:
p.  Knew of any suspension or impairment in any protective safeguard listed in the Schedule above and failed to notify us of that fact; or
q.  Failed to maintain any protective safeguard listed in the Schedule above, and over which you had control, in complete working order.

If part of an Automatic Sprinkler System is shut off due to breakage, leakage, freezing conditions or opening of sprinkler heads, notification to us will not be necessary if you can restore full protection within 48 hours.

With respect to "P-3", "P-7"and "P-15", we will not pay for loss or damage caused by or resulting from vandalism, burglary, theft or any other act of stealing if, prior to the vandalism, burglary, theft or any other act of stealing, you:
a.  Knew of any suspension or impairment in any protective safeguard listed in the Schedule above and failed to notify us of that fact; or
b.  Failed to maintain any protective safeguard listed in the Schedule above, and over which you had control, in complete working order.

With respect to "P-6" and "P-8" we will not pay for loss or damage caused by or resulting from "equipment breakdown", electrical disturbance or expediting expenses as a result of an electrical disturbance if, prior to the "equipment breakdown" you:
a.  Knew of any suspension or impairment in any protective safeguard listed in the Schedule above and failed to notify us of that fact; or
b.  Failed to maintain any protective safeguard listed in the Schedule above, and over which you had control, in complete working order.

With respect to "P-9" we will not pay for loss or damage caused by or resulting from "equipment breakdown", spoilage or expediting expenses as a result of spoilage if, prior to the "equipment breakdown" you:
a.  Knew of any suspension or impairment in any protective safeguard listed in the Schedule above and failed to notify us of that fact; or
b.  Failed to maintain any protective safeguard listed in the Schedule above, and over which you had control, in complete working order.

With respect to "P-21" we will not pay for loss or damage caused by or resulting from fire, vandalism, burglary, theft or any other act of stealing, "equipment breakdown", electrical disturbance or expediting expenses as a result of an electrical disturbance, "equipment breakdown", spoilage or expediting expenses as a result of spoilage, as applicable, if you:
a.  Knew of any suspension or impairment in any protective safeguard listed in the Schedule above and failed to notify us of that fact; or

BP 115 (07/08)                                                                 Page 2  of 3

Includes copyrighted material of Insurance Services Office, Inc. reprinted with permission

b. Failed to maintain any protective safeguard listed in the Schedule above, and over which you had control, in complete working order.

All other terms and conditions of this policy remain unchanged.  This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown.

Includes copyrighted material of Insurance Services Office, Inc. reprinted with permission

# UNITED STATES LIABILITY INSURANCE GROUP
## WAYNE, PENNSYLVANIA

This Endorsement modifies insurance provided under the following:

### BUSINESSOWNERS COVERAGE FORM

## BUSINESS INCOME AND EXTRA EXPENSE LIMIT

It is agreed that under the SECTION I – PROPERTY; A. Coverage; 5. Additional Coverages; f. Business Income; (4) "This Additional Coverage is not subject to the Limits of Insurance of SECTION I – PROPERTY." is deleted in its entirety and replaced with the following:

(4) The most we will pay under the Business Income additional coverages is the Limit of Insurance which will be shown in the DECLARATIONS or EXTENSION OF DECLARATIONS."

It is agreed that under the SECTION I – PROPERTY; A. Coverage; 5. Additional Coverages; g. Extra Expense; (4) "We will only pay for Extra Expense that occurs within 12 consecutive months after the date of direct physical loss or damage. This Additional Coverage is not subject to the Limits of Insurance of SECTION I – PROPERTY." is deleted in its entirety and replaced with the following:

(4) We will only pay for Extra Expense that occurs within 12 consecutive months after the date of direct physical loss or damage. The most we will pay under the Extra Expense additional coverages is the Limit of Insurance which will be shown in the DECLARATIONS or EXTENSION OF DECLARATIONS."

The limit shown for Business Income and Extra Expense on the DECLARATIONS or EXTENSION OF DECLARATIONS is the total limit for both additional coverages.

All other terms and conditions of this **Policy** remain unchanged.  This endorsement is a part of your **Policy** and takes effect on the effective date of your **Policy** unless another effective date is shown.

# UNITED STATES LIABILITY INSURANCE GROUP
# WAYNE, PENNSYLVANIA

This endorsement modifies insurance provided under the following:

## BUSINESSOWNERS COVERAGE FORM

# SEPARATION OF INSUREDS CLARIFICATION ENDORSEMENT

It is agreed:

**SECTION II – LIABILITY; E. Liability And Medical Expenses General Conditions**; 4. **Separation Of Insureds** is deleted in its entirety and replaced with the following:

    **4. Separation of Insureds**

        The Limits of Insurance of **Section II – Liability** applies:

        **a.** As if each Named Insured were the only Named Insured; and

        **b.** Separately to each insured against whom claim is made or "suit" is brought,

        but nothing in this endorsement shall serve to increase the Limits of Insurance beyond the Per occurrence, per person, per premises, per common cause, aggregate or any similar limit stipulated in the Declarations.

All other terms and conditions of this policy remain unchanged.  This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown.

---

This endorsement modifies insurance provided under the following:

**BUSINESSOWNERS COVERAGE FORM**

---

# EXCLUSION – SPECIFIC ACTIVITIES, EVENTS OR CONDITIONS OR OVER 2,500 PEOPLE

This policy does not apply to "bodily injury", "property damage", "personal and advertising injury", medical expenses or "damages" directly or indirectly arising out of, resulting from or in consequence of any insured's sponsorship, organization, operation or involvement, directly or indirectly, in any:

**I.** Activity, event or condition involving any of the following:
   **a.** Hay rides or animal-driven rides of any kind;
   **b.** Airplane, helicopter or balloon shows, rides or demonstrations;
   **c.** Boating, fishing, surfing, water skiing, jet skiing, wave running, water tubing, ice skating, snow skiing, snowboarding, snow tubing and other activities or events on water or snow;
   **d.** Extreme sports including but not limited to bungee jumping, base jumping, sky diving, hang gliding, zip lining or any other similar sports;
   **e.** Bonfires, camp fires or open fires;
   **f.** Outdoor camping with or without the use of tents;
   **g.** Swimming and other activities in bodies of water other than guarded public pools;
   **h.** Carnivals;
   **i.** Circuses;
   **j.** Haunted attractions, corn mazes and similar activities;
   **k.** Mechanical rides/devices or water parks;
   **l.** All-terrain vehicle or snowmobile or any other motor vehicle races, competitions, demonstrations or shows, including mud bogs;
   **m.** Heavy metal, hard rock, rap or hip-hop concerts;
   **n.** Parades in which objects of any kind are thrown or launched to spectators;
   **o.** Political rallies, protests or demonstrations;
   **p.** Rodeos; or
   **q.** Pub crawls, bar tours, wine walks or similar events in which attendees consume alcoholic beverages at multiple establishments in a single day or night.

**II.** Activity, event or condition including but not limited to those listed above with attendance that exceeds two thousand five hundred (2,500) people.

   However, coverage is provided for any insured's attendance and/or participation in the above activities, events or conditions so long as any insured does not sponsor, organize or operate same.

All other terms and conditions of this policy remain unchanged. This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown.

## UNITED STATES LIABILITY INSURANCE GROUP
## WAYNE, PENNSYLVANIA

This endorsement modifies insurance provided under the following:

**BUSINESSOWNERS COVERAGE FORM**

## EXCLUSION - INJURY TO PERFORMERS OR ENTERTAINERS

This insurance does not apply to:

(A) "Bodily injury", medical expenses or "personal and advertising injury" to any performer or entertainer for which any insured may be held liable in any capacity; or

(B) Any obligation of the insured to indemnify or contribute with another because of damages arising out of the "bodily injury", medical expenses or "personal and advertising injury" as a consequence of (A) above; or

(C) "Bodily injury", medical expenses or "personal and advertising injury" sustained by the spouse, child, parent, brother or sister of a performer or entertainer of any insured as a consequence of "bodily injury" or "personal and advertising injury" to such performer or entertainer.

This exclusion applies to all claims and "suits" by any person or organization for damages because of such "bodily injury", medical expenses or "personal and advertising injury" including damages for care and loss of services.

All other terms and conditions of this policy remain unchanged.  This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown.

> This endorsement modifies insurance provided under the following:
> 
> **BUSINESSOWNERS COVERAGE FORM**

## AMENDMENT OF LIQUOR LIABILITY EXCLUSION

It is agreed:

**SECTION II – LIABILITY**; **B. EXCLUSIONS**; **1. c. Liquor Liability** is deleted in its entirety and replaced with the following:

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:
   (1) Causing or contributing to the intoxication of any person;
   (2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or
   (3) Actual or alleged violation of any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:
   (a) The supervision, hiring, employment, training or monitoring of others by that insured ; or
   (b) Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol.
if the "occurrence" which caused the "bodily injury" or "property damage", arises or results, directly or indirectly from Paragraph (1), or  (2) or (3) above.

However, this exclusion applies only if:
   (1) An insured is in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages; or
   (2) An insured sells or serves, or furnishes alcoholic beverages in exchange for a charge, fee or donation of any kind; or
   (3) An insured permits a person to bring alcoholic beverages for consumption on any insured's premises or at any insured's event in exchange for a charge, fee or donation of any kind.


All other terms and conditions of this policy remain the same. This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown.

<div style="border:1px solid">

This endorsement modifies insurance provided under the following:

**BUSINESSOWNERS COVERAGE FORM**

</div>

# COVERAGE EXTENSION – EDUCATION SERVICES

For purposes of coverage provided by this endorsement, it is agreed that the BUSINESSOWNERS COVERAGE FORM, SECTION II, is amended to add the following. Except as otherwise provided herein, the other terms, exclusions, conditions and provisions of the BUSINESSOWNERS COVERAGE FORM shall apply to coverage provided by this endorsement.

**A.** The provisions of Paragraph **A. Coverages 1. Business Liability** apply to the liability of an insured for "Wrongful Acts" as defined in this endorsement.

**B.** Paragraph **B. Exclusions** is amended as follows:

    **1.** **Applicable To Business Liability Coverage, b. Contractual Liability** is deleted in its entirety and replaced by the following:

        **b.** **Contractual Liability**

        Any express warranties or guarantees by you or liability assumed by you under a contract unless you would have been legally liable in the absence of such contract.

    The following Exclusions are added:

    **1.** The performance of or failure to perform "Education Services" for:

        **a.** you;

        **b.** any entity owned or controlled by you;

        **c.** any entity which is under common ownership or control of you; or

        **d.** any entity of which you are a director, an officer, a partner, or more than three percent (3%) a shareholder.

    **2.** "Bodily injury", "property damage" or "personal and advertising injury" caused by "Wrongful Acts" as defined in this endorsement.

**C.** Paragraph **C. Who Is An Insured,** is amended by the addition of the following:

    **2.** Each of the following is also an insured:

        **a.** Your directors, officers, trustees, committee members, volunteers or "employees" but only for "education services" rendered in the conduct of your operations subject to the limitations set forth under Section **C. Who Is An Insured, 2., (1) and C. Who Is An Insured, 2., (2).**

**D.** Paragraph **D. Liability And Medical Expenses Limits Of Insurance 2.** is deleted and replaced by the following:

    **2.** The most we will pay for the sum of all damages because of all:

        **a.** "Wrongful Acts" is the Liability And Medical Expenses limit shown in the Declarations.

The Limits of Liability for "Wrongful Acts" shall be part of and not in addition to the Aggregate limits of liability set forth in Paragraph D.4.b.

**E.** Paragraph **F. Liability And Medical Expenses Definitions,** is amended to add the following:

"Education Services" means instruction, training, seminars, workshops and other types of educational or informational services rendered by you or on your behalf solely in the conduct of your operations as described in the application submitted for this Policy. **"**Education Services" does not mean any services for which you charge tuition for providing such services.

"Wrongful Act" means any actual or alleged error, omission or negligent act committed solely in the rendering of or failure to render "education services" by you. The same "wrongful act", an interrelated series of "wrongful acts," or a series of similar or related "wrongful acts" shall be deemed to be one "wrongful act" and to have commenced at the time of the earliest "wrongful act."

## UNITED STATES LIABILITY INSURANCE GROUP
## WAYNE, PENNSYLVANIA

| |
|---|
| This endorsement modifies insurance provided under the following: |
| **BUSINESSOWNERS COVERAGE FORM** |

## MOLESTATION OR ABUSE EXCLUSION

The following applies to **SECTION II – LIABILITY** and supersedes any provision to the contrary:

This insurance does not apply to any injury sustained by any person arising out of or resulting from any alleged, threatened or actual molestation or abuse by:

    i.   Any insured; or

    ii.   Any "employee" of any insured; or

    iii.   Any "volunteer worker" or "temporary worker"; or

    iv.   Any other person.

We shall not have any duty to defend any "suit" against any insured seeking damages on account of any such injury.

This exclusion applies to all injury sustained by any person, including emotional distress, arising out of molestation or abuse whether alleged, threatened or actual including but not limited to molestation or abuse arising out of your negligence or other wrongdoing with respect to:

a.  Hiring, placement, employment, training, supervision or retention of a person for whom any insured is or ever was legally responsible, or

b.  Investigation or reporting any molestation or abuse to the proper authorities, or failure to so report, or the failure to protect any person while that person was in the insured's care custody or control.

All other terms and conditions of this policy remain unchanged.  This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown.

> This endorsement modifies insurance provided under the following:
>
> **BUSINESSOWNERS COVERAGE FORM**

# EXCLUSION – ASBESTOS, LEAD CONTAMINATION, ABSOLUTE POLLUTION, MOLD, FUNGUS, BACTERIA, VIRUS AND ORGANIC PATHOGEN

**ABSOLUTE POLLUTION EXCLUSION – PROPERTY**

**SECTION I - PROPERTY; B. Exclusions; 2.j.,** is deleted and replaced in its entirety with the following:

**j. Pollution**

Coverage under this policy does not apply:

**(1)** to direct physical loss of or damage to Covered Property,

**(2)** to your expense to remove debris of Covered Property,

**(3)** to any actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration",

**(4)** to any extra expense you incur during the "period of restoration",

**(5)** to damages for the devaluation of property or for the taking, use or acquisition or interference with the rights of others in property or air space.

**(6)** to any loss, cost or expense, including but not limited to fines and penalties, arising out of any governmental direction or request, or any private party or citizen action, that an insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize "pollutants", or

**(7)** to any litigation or administrative procedure in which an insured may be involved as a party;

arising directly, indirectly, or in concurrence, or in any sequence out of actual, alleged or threatened existence, discharge, dispersal, release or escape of "pollutants", whether or not such actual, alleged or threatened existence, discharge, dispersal, release or escape is sudden, accidental or gradual in nature.

This exclusion applies even if such "pollutant" has a function in, or is used by you in your business, operations, premises, site or location.

"Volatile organic compound" means any compound which discharges organic gases as it decomposes or evaporates, examples of which include but are not limited to formaldehyde, pesticides, adhesives, construction materials made with organic chemicals, solvents, paint varnish and cleaning products.

"Waste" means any property intended to be disposed, recycled, reused or reclaimed by the owner or user thereof.

**ASBESTOS MATERIAL EXCLUSION - PROPERTY**

**SECTION I – PROPERTY; B. Exclusions**; **2.,** is amended by the addition of the following:

Coverage under this policy does not insure loss or expense resulting from:

**(1)** demolition or increased cost of reconstruction, repair, debris removal or loss of use necessitated by the enforcement of any law or ordinance regulating asbestos material.

**(2)** any government direction or request declaring that asbestos material present in or part of or utilized on any undamaged portion of the insured's property can no longer be used for the purpose for which it was intended or installed and must be removed or modified.

**EXCLUSION - LEAD CONTAMINATION - PROPERTY**

**SECTION I – PROPERTY; B. Exclusions**; **2.,** is amended by the addition of the following:

Coverage under this policy does not apply to, and we will not defend or pay any loss arising, directly out of or indirectly resulting from, based upon or in any way involving the existence of lead in any form.

**MOLD, FUNGUS, BACTERIA, VIRUS OR ORGANIC PATHOGEN EXCLUSION – PROPERTY**

**SECTION I – PROPERTY; B. Exclusions**; **2.,** is amended by the addition of the following:

Coverage under this policy does not apply:

**(1)** to direct physical loss of or damage to Covered Property,

**(2)** to your expense to remove debris of Covered Property,

**(3)** to any actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration",

**(4)** to any extra expense you incur during the "period of restoration",

**(5)** to damages for the devaluation of property or for the taking, use or acquisition or interference with the rights of others in property or air space.

**(6)** to any loss, cost or expense, including but not limited to fines and penalties, arising out of any governmental direction or request, or any private party or citizen action, that an insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize "organic pathogens", or

**(7)** to any litigation or administrative procedure in which an insured may be        involved as a party;

arising directly, indirectly, or in concurrence, or in any sequence out of actual, alleged or threatened existence, discharge, dispersal, release or escape of "organic pathogens", whether or not such actual, alleged or threatened existence, discharge, dispersal, release or escape is sudden, accidental or gradual in nature.

"Organic pathogen" means any organic irritant or contaminant, including but not limited to mold, fungus, bacteria or virus, including but not limited to their byproduct such as mycotoxin, mildew, or biogenic aerosol.

**SECTION I – PROPERTY**, **H. Property Definitions**, paragraph **10.**, is deleted in its entirety and replaced with the following:

**10.** "Pollutants" mean[s] any solid, liquid, gaseous, bacterial, fungal, electromagnetic, thermal or other substance that can be toxic or hazardous, cause irritation to animals or persons and/or cause contamination to property and the environment including smoke, vapor, soot, fumes, acids, alkalis, chemicals, toxic materials, "volatile organic compound" and gases therefrom, radon, combustion byproducts and waste. Specific examples identified as pollutants include, but are not limited to, diesel, kerosene, and other fuel oils . . . carbon monoxide, and other exhaust gases . . . mineral spirits, and other solvents . . . tetrachloroethylene, perchloroethylene (PERC), trichloroethylene (TCE), methylene chloroform, and other dry cleaning chemicals . . . chlorofluorocarbons, chlorinated hydrocarbons, adhesives, pesticides, insecticides . . . and all substances specifically listed, identified, or described by one or more of the following references: **Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) Priority List Hazardous Substances** (1997 and all subsequent editions), **Agency for Toxic Substances And Disease Registry ToxFAQs™**, and/or **U.S. Environmental Protection Agency EMCI Chemical References Complete Index**.

All other terms and conditions of this policy remain unchanged. This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown.

**UNITED STATES LIABILITY INSURANCE GROUP**
**WAYNE, PENNSYLVANIA**

> This endorsement modifies insurance provided under the following:
>
> **BUSINESSOWNERS COVERAGE FORM**

## Absolute Exclusion For Pollution, Organic Pathogen, Silica, Asbestos And Lead

**SECTION II – LIABILITY; B. Exclusions; 1 Applicable to Business Liability; f. Pollution** is deleted in its entirety and replaced with the following:

**f.  Pollution, Organic Pathogen, Silica, Asbestos and Lead**

**(1)** "Bodily injury", "property damage", or "personal and advertising injury"; or

**(2)** Diminishing or lessoning in value of property or for damages from the taking, use or acquisition or interference with the rights of others in property or air space; or

**(3)** Loss, cost or expense, including but not limited to payment for investigation or defense, fines and penalties, arising out of any governmental or any private party action, that an insured or any other party test for, monitor, clean up, remove, contain, mitigate, treat, detoxify or neutralize or in any way respond to or assess the actual or alleged effects of "pollutants", "organic pathogens", "silica", asbestos, or lead

arising directly, indirectly, or in concurrence or in any sequence out of actual, alleged or threatened presence of or exposure to, ingestion, inhalation, absorption, contact with discharge, dispersal, seepage, release or escape of "pollutants", "organic pathogens", "silica", asbestos, or lead, whether or not any of the foregoing are (1) sudden, accidental or gradual in nature; (2) intentional; or (3) expected or intended from the standpoint of the insured.

This exclusion applies even if the "pollutant", "organic pathogen", "silica", asbestos or lead has a function in, or is used by you in your business, operations, premises, site or location.

This exclusion does not apply to "bodily injury" or "property damage" arising from the consumption of food products intended for human consumption.

"Pollutants" mean[s] any solid, liquid, gaseous, bacterial, fungal, electromagnetic, thermal or other substance that can be toxic or hazardous, cause irritation to animals or persons and/or cause contamination to property and the environment including smoke, vapor, soot, fumes, acids, alkalis, chemicals, toxic materials, "volatile organic compound" and gases therefrom, radon, combustion byproducts and waste. Specific examples identified as pollutants include, but are not limited to, diesel, kerosene, and other fuel oils . . . carbon monoxide, and other exhaust gases . . . mineral spirits, and other

solvents . . . tetrachloroethylene, perchloroethylene (PERC), trichloroethylene (TCE), methylene chloroform, and other dry cleaning chemicals . . . chlorofluorocarbons, chlorinated hydrocarbons, adhesives, pesticides, insecticides . . . and all substances specifically listed, identified, or described by one or more of the following references: **Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) Priority List Hazardous Substances** (1997 and all subsequent editions), **Agency for Toxic Substances And Disease Registry ToxFAQs™**, and/or **U.S. Environmental Protection Agency EMCI Chemical References Complete Index**.

"Silica" means silica in any form and any of its derivatives, including but not limited to silica dust, silicon dioxide, crystalline silica, quartz, or non-crystalline (amorphous) silica.

"Volatile organic compound" means any compound which discharges organic gases as it decomposes or evaporates, examples of which include but are not limited to formaldehyde, pesticides, adhesives, construction materials made with organic chemicals, solvents, paint, varnish and cleaning products.

"Waste" means any property intended to be disposed, recycled, reused or reclaimed by the owner or user thereof.

"Organic pathogen" means any organic irritant or contaminant, including but not limited to mold, fungus, bacteria or virus, including but not limited to their byproduct such as mycotoxin, mildew, or biogenic aerosol.


All other terms and conditions of this policy remain unchanged.  This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown.

# UNITED STATES LIABILITY INSURANCE GROUP
# WAYNE, PENNSYLVANIA

This Endorsement modifies insurance provided under the following:

## BUSINESSOWNERS COVERAGE FORM

# WINDSTORM OR HAIL EXCLUSION

The following exclusion is added to SECTION I - PROPERTY; B. Exclusions; 1.

i.  Windstorm or Hail

We will not pay for loss or damage caused directly or indirectly by Windstorm or Hail, regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage.  For example, if a loss or damage from a covered weather condition other than Windstorm or Hail also occurs, and that loss or damage would not have occurred but for the Windstorm or Hail, such loss or damage shall be considered to be caused by Windstorm or Hail, and therefore part of the excluded Windstorm or Hail occurrence.

All other terms and conditions of this Policy remain unchanged.  This endorsement is a part of your Policy and takes effect on the effective date of your Policy unless another effective date is shown.

## UNITED STATES LIABILITY INSURANCE GROUP
## WAYNE, PENNSYLVANIA

This endorsement modifies insurance provided under the following:

**BUSINESSOWNERS COVERAGE FORM**

## ANIMAL EXCLUSION

It is agreed that **SECTION II – LIABILITY, B. Exclusions, 1.  Applicable To Business Liability Coverage**, is amended to add the following:

This insurance does not apply to:

a. "Bodily injury", "property damage", "personal and advertising injury" or medical expenses or cost of defense caused by or arising out of contact with any animals, reptiles, birds, fish, insects, and any animal organism other than human.

All other terms and conditions of this policy remain unchanged.  This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown.

## UNITED STATES LIABILITY INSURANCE GROUP
## WAYNE, PENNSYLVANIA

This endorsement modifies insurance provided under the following:

## BUSINESSOWNERS COVERAGE FORM

### Exclusion - Athletic Activity Or Sport Participants

SECTION II - LIABILITY, B. Exclusions, 1. Applicable To Business Liability Coverage, is amended with the addition of the following:

**Athletic Activity or Sport Participants**
"Bodily injury" to any person practicing, instructing or participating in any physical training, sport, athletic activity or contest whether on a formal or informal basis.

All other terms and conditions of this policy remain unchanged.  This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown.

# UNITED STATES LIABILITY INSURANCE GROUP
## WAYNE, PENNSYLVANIA

This endorsement modifies insurance provided under the following:

**BUSINESSOWNERS COVERAGE FORM**

## EXCLUSION FOR BLEACHER COLLAPSE

It is agreed that **SECTION II – LIABILITY, B. Exclusions, 1.  Applicable To Business Liability Coverage**, is amended to add the following:

This insurance does not apply to:

    a.  "Bodily injury", "property damage", "personal and advertising injury" or medical expenses or cost of defense caused by or arising out of the collapse of any bleacher, grandstand, benches, boxes or other seating structures, whether or not such collapse is a partial or total collapse.

All other terms and conditions of this policy remain unchanged.  This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown.

# UNITED STATES LIABILITY INSURANCE GROUP
# WAYNE, PENNSYLVANIA

This endorsement modifies insurance provided under the following:

**BUSINESSOWNERS COVERAGE FORM**

# EXCLUSION FOR MECHANICAL RIDES

It is agreed that **SECTION II – LIABILITY, B. Exclusions, 1.  Applicable To Business Liability Coverage**, is amended to add the following:

This insurance does not apply to:

a. "Bodily injury", "property damage", "personal and advertising injury" or medical expenses and cost of defense caused by or arising out of the operation, maintenance, existence or use of any mechanical ride or riding device.

All other terms and conditions of this policy remain unchanged.  This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown.

**BP 65 (05-07)**                                                                   Page 1 of 1

## UNITED STATES LIABILITY INSURANCE GROUP
## WAYNE, PENNSYLVANIA

| This endorsement modifies insurance provided under the following: |
|---|
| **BUSINESSOWNERS COVERAGE FORM**<br>**TECHNOLOGY PROFESSIONAL LIABILITY COVERAGE FORM** |

## LIMITS OF INSURANCE UNDER MULTIPLE COVERAGE PARTS

It is agreed **BUSINESSOWNERS COVERAGE FORM, SECTION III – COMMON POLICY CONDITIONS**, paragraph **H. Other Insurance**, is amended by the addition of the following:

**4. Limit Of Insurance Under Multiple Coverage Parts**

If we determine that more than one coverage part applies to the same "occurrence" or **Wrongful Act**, the maximum limits of insurance available under all coverage parts combined shall be the highest applicable limit of insurance under any one coverage part. The applicable deductible shall correspond to the coverage part with the highest limit of insurance.

This condition does not apply to any coverage form or policy issued by us, or an affiliated company specifically to apply as excess or umbrella insurance over this policy.

It is agreed **TECHNOLOGY PROFESSIONAL LIABILITY COVERAGE FORM; XV. OTHER INSURANCE** is amended by the addition of the following:

If we determine that more than one coverage part applies to the same **Loss** or **Wrongful Act**, the maximum limits of insurance available under all coverage parts combined shall be the highest applicable limit of insurance under any one coverage part. The applicable deductible shall correspond to the coverage part with the highest limit of insurance.

This condition does not apply to any coverage form or policy issued by us, or an affiliated **Company** specifically to apply as excess or umbrella insurance over this policy.

All other terms and conditions of this policy remain unchanged.  This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown.

## UNITED STATES LIABILITY INSURANCE GROUP
## WAYNE, PENNSYLVANIA

This Endorsement modifies insurance provided under the following:

**BUSINESSOWNERS COVERAGE FORM**

## EXPANDED DEFINITION OF BODILY INJURY

The Definition of "bodily injury" is removed in its entirety and replaced with the following:

1.   "Bodily injury" means:
     a.   bodily injury,
     b.   sickness,
     c.   disease; or
     d.   mental anguish or emotional distress arising out of a., b., or c., above,

sustained by a person, including death resulting from any of these at any time.

All other terms and conditions of this policy remain unchanged.  This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown.

| This endorsement modifies insurance provided under the following: |
| :---: |
| **BUSINESSOWNERS COVERAGE FORM** |

## Who Is An Insured Clarification Endorsement

Throughout this policy, with the exception of **SECTION II – LIABILITY; C. Who Is An Insured**; when the word "insured(s)" is used it shall mean "any insured(s)".

All other terms and conditions of this policy remain unchanged. This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown.

## UNITED STATES LIABILITY INSURANCE GROUP
## WAYNE, PENNSYLVANIA

This Endorsement modifies insurance provided under the following:

**BUSINESSOWNERS COVERAGE FORM**

## EXCLUSION FOR CLIMBING, REBOUNDING AND
## INTERACTIVE GAMES AND DEVICES

It is agreed that **SECTION II – Liability, B. Exclusions, 1.  Applicable To Business Liability Coverage**, is amended to add the following:

This insurance does not apply to:

a.   "Bodily injury", "property damage", "personal and advertising injury" or medical expenses including damages for care and loss of services and cost of defense:

   (1) Arising from the ownership, maintenance, operation, sponsorship, set-up or take-down or other use of:
   (a)   Rock climbing walls, Velcro walls and similar scaling devices; Gymnastic equipment;
   (b)   Trampolines and similar rebounding devices
   (c)   "Moon Bounces", "Moon Walks", "Space Walks", and similar inflatable games and devices;
   (d)   Laser tag, bungee jumping, sumo wrestling, human spheres, water slides and similar interactive games and devices;
   (e)   Advertising balloons, rooftop balloons, helium blimps, and similar devices

   by any insured or by any person for which any insured may be held liable in any capacity.

b.   Any obligation for any insured to indemnify, defend or contribute jointly or severally with another because of "bodily injury", "property damage", "personal and advertising injury" or medical expenses arising from any of the activities specified in a.(1), above.

All other terms and conditions of this policy remain unchanged.  This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown.

## UNITED STATES LIABILITY INSURANCE GROUP
## WAYNE, PENNSYLVANIA

This Endorsement modifies insurance provided under the following:

**BUSINESSOWNERS COVERAGE FORM**

## EXCLUSION FOR FIREARMS, FIREWORKS AND OTHER PYROTECHNIC DEVICES

It is agreed that **SECTION II – Liability, B. Exclusions, 1.  Applicable To Business Liability Coverage**, is amended to add the following:

This insurance does not apply to:

    a.    "Bodily injury", "property damage", "personal and advertising injury" or medical expenses including damages for care and loss of services and cost of defense:

        (1)  Arising from the ownership, maintenance, operation, sponsorship, set-up or take-down or other use of:

            (a)  Firearms, including handguns, revolvers, pistols, rifles, shotguns, air guns, semi-automatic weapons and similar devices:

            (b)  Fireworks, including firecrackers, roman candles, pinwheels, skyrockets, ground displays, flares, smoke bombs and similar devices that produce, when ignited or activated, sound, smoke, motion or a combination of these;

        by any insured or by any person for which any insured may be held liable in any capacity.

    b.    Any obligation of any insured to indemnify, defend or contribute jointly or severably with another because of "bodily injury", "property damage", "personal and advertising injury" or medical expenses arising from any of the activities specified in a.(1), above.

All other terms and conditions of this policy remain unchanged.  This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown.

## UNITED STATES LIABILITY INSURANCE GROUP
## WAYNE, PENNSYLVANIA

---

This Endorsement modifies insurance provided under the following:

### BUSINESSOWNERS COVERAGE FORM

---

## EXCLUSION FOR EVENT VENDOR/EXHIBITOR & CONTRACTOR

It is agreed that **SECTION II – Liability, B. Exclusions, 1.  Applicable To Business Liability Coverage**, is amended to add the following:

This insurance does not apply to:

    a.  Any claim, demand or "suit" arising out of the activities or operations of a person or entity participating as a vendor, exhibitor, performer or other capacity in an event hosted, sponsored or coordinated by any insured.

    b.  Any claim, demand or "suit" arising out of the operations performed for any insured by any contractor or independent contractor or acts or omissions of any insured in the selection and retention of any contractor or independent contractor or acts or omissions or any insured in connection with the general supervision of such operations.

This exclusion does not apply to the expense related to investigation or defense of any claim, demand or "suit" against any insured under paragraphs a. and b. above.

This exclusion does not apply to any claim, demand or "suit" arising out of the activities or operations of any insured participating as a vendor, exhibitor or other capacity in an event not hosted, sponsored or coordinated by the insured named on the declarations.

All other terms and conditions of this policy remain unchanged.  This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown.

**BP – 97 (5-07)**                                                                                     **Page 1 of 1**

<div align="right">
**BUSINESSOWNERS**
**BP 00 03 01 10**
</div>

# BUSINESSOWNERS COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Form the words "you" and "your" refer to the Named Insured shown in the Declarations.  The words "we", "us" and "our" refer to the Company providing this insurance.

In Section **II** – Liability, the word "insured" means any person or organization qualifying as such under Paragraph **C.** Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning.  Refer to Paragraph **H.** Property Definitions in Section **I** – Property and Paragraph **F.** Liability And Medical Expenses Definitions in Section **II** – Liability.

## SECTION I – PROPERTY

## A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

**1. Covered Property**

Covered Property includes Buildings as described under Paragraph **a.** below, Business Personal Property as described under Paragraph **b.** below, or both, depending on whether a Limit of Insurance is shown in the Declarations for that type of property. Regardless of whether coverage is shown in the Declarations for Buildings, Business Personal Property, or both, there is no coverage for property described under Paragraph **2.** Property Not Covered.

**a.** Buildings, meaning the buildings and structures at the premises described in the Declarations, including:

**(1)** Completed additions;

**(2)** Fixtures, including outdoor fixtures;

**(3)** Permanently installed:

**(a)** Machinery; and

**(b)** Equipment;

**(4)** Your personal property in apartments, rooms or common areas furnished by you as landlord;

**(5)** Personal property owned by you that is used to maintain or service the buildings or structures or the premises, including:

**(a)** Fire extinguishing equipment;

**(b)** Outdoor furniture;

**(c)** Floor coverings; and

**(d)** Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

**(6)** If not covered by other insurance:

**(a)** Additions under construction, alterations and repairs to the buildings or structures;

**(b)** Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the buildings or structures.

**b.** Business Personal Property located in or on the buildings at the described premises or in the open (or in a vehicle) within 100 feet of the described premises, including:

**(1)** Property you own that is used in your business;

**(2)** Property of others that is in your care, custody or control, except as otherwise provided in Loss Payment Property Loss Condition Paragraph **E.5.d.(3)(b);**

**(3)** Tenant's improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

**(a)** Made a part of the building or structure you occupy but do not own; and

**(b)** You acquired or made at your expense but cannot legally remove;

**(4)** Leased personal property which you have a contractual responsibility to insure, unless otherwise provided for under Paragraph **1.b.(2);** and

**(5)** Exterior building glass, if you are a tenant and no Limit of Insurance is shown in the Declarations for Building property.  The glass must be owned by you or in your care, custody or control.

**2. Property Not Covered**

Covered Property does not include:

**a.** Aircraft, automobiles, motortrucks and other vehicles subject to motor vehicle registration;

**b.** "Money" or "securities" except as provided in the

**(1)** Money And Securities Optional Coverage; or

**(2)** Employee Dishonesty Optional Coverage;

**c.** Contraband, or property in the course of illegal transportation or trade;

**d.** Land (including land on which the property is located), water, growing crops or lawns;

**e.** Outdoor fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, signs (other than signs attached to buildings), trees, shrubs or plants, all except as provided in the:

**(1)** Outdoor Property Coverage Extension; or

**(2)** Outdoor Signs Optional Coverage;

**f.** Watercraft (including motors, equipment and accessories) while afloat;

**g.** Accounts, bills, food stamps, other evidences of debt, accounts receivable or "valuable papers and records"; except as otherwise provided in this policy;

**h.** "Computer(s)" which are permanently installed or designed to be permanently installed in any aircraft, watercraft, motortruck or other vehicle subject to motor vehicle registration. This paragraph does not apply to "computer(s)" while held as "stock";

**i.** "Electronic data", except as provided under Additional Coverages – Electronic Data. This Paragraph **i.** does not apply to your "stock" of prepackaged software.

**j.** Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings.

**3. Covered Causes Of Loss**

Risks of direct physical loss unless the loss is:

**a.** Excluded in Paragraph **B.** Exclusions in Section **I**; or

**b.** Limited in Paragraph **4.** Limitations in Section **I**.

**4. Limitations**

**a.** We will not pay for loss of or damage to:

**(1)** Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**(2)** Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

**(3)** Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property. This limitation does not apply to the Optional Coverage for Money and Securities.

**(4)** Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

**(5)** The interior of any building or structure caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

**(a)** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

**(b)** The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

**b.** We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

**(1)** Animals, and then only if they are killed or their destruction is made necessary.

**(2)** Fragile articles such as glassware, statuary, marble, chinaware and porcelain, if broken. This restriction does not apply to:

**(a)** Glass that is part of the exterior or interior of a building or structure;

**(b)** Containers of property held for sale; or

**(c)** Photographic or scientific instrument lenses.

**c.** For loss or damage by theft, the following types of property are covered only up to the limits shown:

**(1)** $2,500 for furs, fur garments and garments trimmed with fur.

**(2)** $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semiprecious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

**(3)** $2,500 for patterns, dies, molds and forms.

**5. Additional Coverages**

**a. Debris Removal**

**(1)** Subject to Paragraphs **(3)** and **(4),** we will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

**(2)** Debris Removal does not apply to costs to:

**(a)** Extract "pollutants" from land or water; or

**(b)** Remove, restore or replace polluted land or water.

**(3)** Subject to the exceptions in Paragraph **(4),** the following provisions apply:

**(a)** The most that we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

**(b)** Subject to Paragraph **(a)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

**(4)** We will pay up to an additional $10,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

**(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

**(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Therefore, if Paragraphs **(4)(a)** and/or **(4)(b)** apply, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $10,000.

**(5) Examples**

**Example #1**

| | |
|---|---|
| Limit of Insurance | $90,000 |
| Amount of Deductible | $500 |
| Amount of Loss | $50,000 |
| Amount of Loss Payable | $49,500 |
| | ($50,000 – $500) |
| Debris Removal Expense | $10,000 |
| Debris Removal Expense Payable | $10,000 |
| ($10,000 is 20% of $50,000) | |

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3).**

**Example #2**

| | |
|---|---|
| Limit of Insurance | $   90,000 |
| Amount of Deductible | $        500 |
| Amount of Loss | $   80,000 |
| Amount of Loss Payable | $   79,500 |
| | ($80,000 – $500) |
| Debris Removal Expense | $   30,000 |
| Debris Removal Expense Payable | |
| Basic Amount | $   10,500 |
| Additional Amount | $   10,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000; capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4),** because the debris removal expense ($30,000) exceeds 25% of the loss payable plus the deductible ($30,000 is 37.5% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $30,000 = $109,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris

removal expense is $10,000, the maximum payable under Paragraph **(4).** Thus the total payable for debris removal expense in this example is $20,500; $9,500 of the debris removal expense is not covered.

**b. Preservation Of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss of or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 30 days after the property is first moved.

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $2,500, unless a different limit is shown in the Declarations, for your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

**d. Collapse**

The coverage provided under this Additional Coverage – Collapse applies only to an abrupt collapse as described and limited in Paragraphs **d.(1)** through **d.(7).**

**(1)** For the purpose of this Additional Coverage – Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

**(2)** We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this policy or that contains Covered Property insured under this policy, if such collapse is caused by one or more of the following:

**(a)** Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

**(b)** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

**(c)** Use of defective material or methods in construction, remodeling or

renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation.

**(d)** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

**(i)** A cause of loss listed in Paragraph **(2)(a)** or **(2)(b);**

**(ii)** One or more of the "specified causes of loss";

**(iii)** Breakage of building glass;

**(iv)** Weight of people or personal property; or

**(v)** Weight of rain that collects on a roof.

**(3)** This Additional Coverage – Collapse does **not** apply to:

**(a)** A building or any part of a building that is in danger of falling down or caving in;

**(b)** A part of a building that is standing, even if it has separated from another part of the building; or

**(c)** A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**(4)** With respect to the following property:

**(a)** Awnings;

**(b)** Gutters and downspouts;

**(c)** Yard fixtures;

**(d)** Outdoor swimming pools;

**(e)** Piers, wharves and docks;

**(f)** Beach or diving platforms or appurtenances;

**(g)** Retaining walls; and

**(h)** Walks, roadways and other paved surfaces;

if an abrupt collapse is caused by a cause of loss listed in Paragraphs **(2)(a)** through **(2)(d),** we will pay for loss or damage to that property only if such loss or damage is a direct result of the abrupt collapse of a building insured under this policy and the property is Covered Property under this policy.

**(5)** If personal property abruptly falls down or caves in and such collapse is **not** the result of abrupt collapse of a building,

we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

**(a)** The collapse of personal property was caused by a cause of loss listed in Paragraphs **(2)(a)** through **(2)(d)** of this Additional Coverage;

**(b)** The personal property which collapses is inside a building; and

**(c)** The property which collapses is not of a kind listed in Paragraph **(4)**, regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **(5)** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

**(6)** This Additional Coverage – Collapse does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**(7)** This Additional Coverage – Collapse will not increase the Limits of Insurance provided in this policy.

**(8)** The term Covered Cause of Loss includes the Additional Coverage – Collapse as described and limited in Paragraphs **d.(1)** through **d.(7).**

**e. Water Damage, Other Liquids, Powder Or Molten Material Damage**

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

We will not pay the cost to repair any defect that caused the loss or damage; but we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

**(1)** Results in discharge of any substance from an automatic fire protection system; or

**(2)** Is directly caused by freezing.

**f. Business Income**

**(1) Business Income**

**(a)** We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of

restoration".  The suspension must be caused by direct physical loss of or damage to property at the described premises.  The loss or damage must be caused by or result from a Covered Cause of Loss.  With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of the site at which the described premises are located.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

**(i)** The portion of the building which you rent, lease or occupy; and

**(ii)** Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

**(b)** We will only pay for loss of Business Income that you sustain during the "period of restoration" and that occurs within 12 consecutive months after the date of direct physical loss or damage.  We will only pay for ordinary payroll expenses for 60 days following the date of direct physical loss or damage, unless a greater number of days is shown in the Declarations.

**(c)** Business Income means the:

**(i)** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses; and

**(ii)** Continuing normal operating expenses incurred, including payroll.

**(d)** Ordinary payroll expenses:

**(i)** Means payroll expenses for all your employees except:

**i.** Officers;

**ii.** Executives;

**iii.** Department Managers;

**iv.** Employees under contract; and

**v.** Additional Exemptions shown in the Declarations as:

- Job Classifications; or
- Employees.

**(ii)** Include:

**i.** Payroll;

**ii.** Employee benefits, if directly related to payroll;

**iii.** FICA payments you pay;

**iv.** Union dues you pay; and

**v.** Workers' compensation premiums.

**(2) Extended Business Income**

**(a)** If the necessary suspension of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

**(i)** Begins on the date property except finished stock is actually repaired, rebuilt or replaced and "operations" are resumed; and

**(ii)** Ends on the earlier of:

**i.** The date you could restore your "operations", with reasonable speed, to the level which would generate the Business Income amount that would have existed if no direct physical loss or damage had occurred; or

**ii.** 30 consecutive days after the date determined in Paragraph **(a)(i)** above, unless a greater number of consecutive days is shown in the Declarations.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

**(b)** Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**(3)** With respect to the coverage provided in this Additional Coverage, suspension means:

**(a)** The partial slowdown or complete cessation of your business activities; or

**(b)** That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

**(4)** This Additional Coverage is not subject to the Limits of Insurance of Section **I** – Property.

**g. Extra Expense**

**(1)** We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of the site at which the described premises are located.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

**(a)** The portion of the building which you rent, lease or occupy; and

**(b)** Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

**(2)** Extra Expense means expense incurred:

**(a)** To avoid or minimize the suspension of business and to continue "operations":

**(i)** At the described premises; or

**(ii)** At replacement premises or at temporary locations, including relocation expenses, and costs to equip and operate the replacement or temporary locations.

**(b)** To minimize the suspension of business if you cannot continue "operations".

**(c)** To:

**(i)** Repair or replace any property; or

**(ii)** Research, replace or restore the lost information on damaged "valuable papers and records";

to the extent it reduces the amount of loss that otherwise would have been payable under this Additional Coverage or Additional Coverage **f.** Business Income.

**(3)** With respect to the coverage provided in this Additional Coverage, suspension means:

**(a)** The partial slowdown or complete cessation of your business activities; or

**(b)** That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

**(4)** We will only pay for Extra Expense that occurs within 12 consecutive months after the date of direct physical loss or damage. This Additional Coverage is not subject to the Limits of Insurance of Section **I** – Property.

**h. Pollutant Clean-up And Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay for each location under this Additional Coverage is $10,000 for the sum of all such expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

**i. Civil Authority**

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

**(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of

the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

**(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

Civil Authority coverage for necessary Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

**(1)** Four consecutive weeks after the date of that action; or

**(2)** When your Civil Authority coverage for Business Income ends;

whichever is later.

The definitions of Business Income and Extra Expense contained in the Business Income and Extra Expense Additional Coverages also apply to this Civil Authority Additional Coverage. The Civil Authority Additional Coverage is not subject to the Limits of Insurance of Section **I** – Property.

**j. Money Orders And "Counterfeit Money"**

We will pay for loss resulting directly from your having accepted in good faith, in exchange for merchandise, "money" or services:

**(1)** Money orders issued by any post office, express company or bank that are not paid upon presentation; or

**(2)** "Counterfeit money" that is acquired during the regular course of business.

The most we will pay for any loss under this Additional Coverage is $1,000.

**k. Forgery Or Alteration**

**(1)** We will pay for loss resulting directly from forgery or alteration of, any check, draft, promissory note, bill of exchange or similar written promise of payment in "money", that you or your agent has issued, or that was issued by someone who impersonates you or your agent.

**(2)** If you are sued for refusing to pay the

check, draft, promissory note, bill of exchange or similar written promise of payment in "money", on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur in that defense.

**(3)** For the purpose of this coverage, check includes a substitute check as defined in the Check Clearing for the 21st Century Act, and will be treated the same as the original it replaced.

**(4)** The most we will pay for any loss, including legal expenses, under this Additional Coverage is $2,500, unless a higher Limit of Insurance is shown in the Declarations.

**I. Increased Cost Of Construction**

**(1)** This Additional Coverage applies only to buildings insured on a replacement cost basis.

**(2)** In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with enforcement of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in Paragraphs **(3)** through **(9)** of this Additional Coverage.

**(3)** The ordinance or law referred to in Paragraph **(2)** of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises, and is in force at the time of loss.

**(4)** Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

**(a)** You were required to comply with before the loss, even when the building was undamaged; and

**(b)** You failed to comply with.

**(5)** Under this Additional Coverage, we will not pay for:

**(a)** The enforcement of any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungi", wet rot or dry rot; or

**(b)** Any costs associated with the enforcement of an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants", "fungi", wet rot or dry rot.

**(6)** The most we will pay under this Additional Coverage, for each described building insured under Section **I** – Property, is $10,000.  If a damaged building(s) is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for each damaged building, is $10,000.

The amount payable under this Additional Coverage is additional insurance.

**(7)** With respect to this Additional Coverage:

**(a)** We will not pay for the Increased Cost of Construction:

**(i)** Until the property is actually repaired or replaced, at the same or another premises; and

**(ii)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years.  We may extend this period in writing during the two years.

**(b)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the same premises.

**(c)** If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the new premises.

**(8)** This Additional Coverage is not subject to the terms of the Ordinance Or Law Exclusion, to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

**(9)** The costs addressed in the Loss Payment Property Loss Condition in Section **I** – Property do not include the increased cost attributable to enforcement of an ordinance or law.  The amount payable under this

Additional Coverage, as stated in Paragraph **(6)** of this Additional Coverage, is not subject to such limitation.

**m. Business Income From Dependent Properties**

**(1)** We will pay for the actual loss of Business Income you sustain due to physical loss or damage at the premises of a dependent property caused by or resulting from any Covered Cause of Loss.

However, this Additional Coverage does not apply when the only loss to dependent property is loss or damage to "electronic data", including destruction or corruption of "electronic data". If the dependent property sustains loss or damage to "electronic data" and other property, coverage under this Additional Coverage will not continue once the other property is repaired, rebuilt or replaced.

The most we will pay under this Additional Coverage is $5,000 unless a higher Limit of Insurance is indicated in the Declarations.

**(2)** We will reduce the amount of your Business Income loss, other than Extra Expense, to the extent you can resume "operations", in whole or in part, by using any other available:

**(a)** Source of materials; or

**(b)** Outlet for your products.

**(3)** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**(4)** Dependent property means property owned by others whom you depend on to:

**(a)** Deliver materials or services to you, or to others for your account. But services does not mean water, communication or power supply services;

**(b)** Accept your products or services;

**(c)** Manufacture your products for delivery to your customers under contract for sale; or

**(d)** Attract customers to your business.

The dependent property must be located in the coverage territory of this policy.

**(5)** The coverage period for Business Income under this Additional Coverage:

**(a)** Begins 72 hours after the time of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the premises of the dependent property; and

**(b)** Ends on the date when the property at the premises of the dependent property should be repaired, rebuilt or replaced with reasonable speed and similar quality.

**(6)** The Business Income coverage period, as stated in Paragraph **(5),** does not include any increased period required due to the enforcement of any ordinance or law that:

**(a)** Regulates the construction, use or repair, or requires the tearing down of any property; or

**(b)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not reduce the Business Income coverage period.

**(7)** The definition of Business Income contained in the Business Income Additional Coverage also applies to this Business Income From Dependent Properties Additional Coverage.

**n. Glass Expenses**

**(1)** We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

**(2)** We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

**o. Fire Extinguisher Systems Recharge Expense**

**(1)** We will pay:

**(a)** The cost of recharging or replacing, whichever is less, your fire extinguishers and fire extinguishing systems (including hydrostatic testing if needed) if they are discharged on or within 100 feet of the described premises; and

**(b)** For loss or damage to Covered Property if such loss or damage is the result of an accidental discharge of chemicals from a fire extinguisher or a fire extinguishing system.

**(2)** No coverage will apply if the fire extinguishing system is discharged during installation or testing.

**(3)** The most we will pay under this Additional Coverage is $5,000 in any one occurrence.

**p. Electronic Data**

**(1)** Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore "electronic data" which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that "electronic data" is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the "electronic data" was stored, with blank media of substantially identical type.

**(2)** The Covered Causes of Loss applicable to Business Personal Property include a computer virus, harmful code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you, or for you, to inspect, design, install, modify, maintain, repair or replace that system.

**(3)** The most we will pay under this Additional Coverage – Electronic Data for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved, is $10,000, unless a higher Limit of Insurance is shown in the Declarations. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in, but not after, that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**q. Interruption Of Computer Operations**

**(1)** Subject to all provisions of this Additional Coverage, you may extend the insurance that applies to Business

Income and Extra Expense to apply to a suspension of "operations" caused by an interruption in computer operations due to destruction or corruption of "electronic data" due to a Covered Cause of Loss.

**(2)** With respect to the coverage provided under this Additional Coverage, the Covered Causes of Loss are subject to the following:

**(a)** Coverage under this Additional Coverage – Interruption Of Computer Operations is limited to the "specified causes of loss" and Collapse.

**(b)** If the Businessowners Coverage Form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage.

**(c)** The Covered Causes of Loss include a computer virus, harmful code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for an interruption related to manipulation of a computer system (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you, or for you, to inspect, design, install, modify, maintain, repair or replace that system.

**(3)** The most we will pay under this Additional Coverage – Interruption Of Computer Operations for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved, is $10,000 unless a higher Limit of Insurance is shown in the Declarations. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and

expense is deemed to be sustained or incurred in the policy year in which the interruption began.

**(4)** This Additional Coverage – Interruption Of Computer Operations does not apply to loss sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in **(3)** above has not been exhausted.

**(5)** Coverage for Business Income does not apply when a suspension of "operations" is caused by destruction or corruption of "electronic data", or any loss or damage to "electronic data", except as provided under Paragraphs **(1)** through **(4)** of this Additional Coverage.

**(6)** Coverage for Extra Expense does not apply when action is taken to avoid or minimize a suspension of "operations" caused by destruction or corruption of "electronic data", or any loss or damage to "electronic data", except as provided under Paragraphs **(1)** through **(4)** of this Additional Coverage.

**r.** **Limited Coverage For "Fungi", Wet Rot Or Dry Rot**

**(1)** The coverage described in Paragraphs **r.(2)** and **r.(6)** only applies when the "fungi", wet rot or dry rot are the result of a "specified cause of loss" other than fire or lightning that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

**(2)** We will pay for loss or damage by "fungi", wet rot or dry rot.  As used in this Limited Coverage, the term loss or damage means:

**(a)** Direct physical loss or damage to Covered Property caused by "fungi", wet rot or dry rot, including the cost of removal of the "fungi", wet rot or dry rot;

**(b)** The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungi", wet rot or dry rot; and

**(c)** The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungi", wet rot or dry rot are present.

**(3)** The coverage described under this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total

of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) which take place in a 12-month period (starting with the beginning of the present annual policy period).  With respect to a particular occurrence of loss which results in "fungi", wet rot or dry rot, we will not pay more than the total of $15,000 even if the "fungi", wet rot or dry rot continues to be present or active, or recurs, in a later policy period.

**(4)** The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property.  If a particular occurrence results in loss or damage by "fungi", wet rot or dry rot, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

If there is covered loss or damage to Covered Property, not caused by "fungi", wet rot or dry rot, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungi", wet rot or dry rot causes an increase in the loss.  Any such increase in the loss will be subject to the terms of this Limited Coverage.

**(5)** The terms of this Limited Coverage do not increase or reduce the coverage provided under the Water Damage, Other Liquids, Powder Or Molten Material Damage or Collapse Additional Coverages.

**(6)** The following applies only if Business Income and/or Extra Expense Coverage applies to the described premises and only if the suspension of "operations" satisfies all the terms and conditions of the applicable Business Income and/or Extra Expense Additional Coverage.

**(a)** If the loss which resulted in "fungi", wet rot or dry rot does not in itself necessitate a suspension of "operations", but such suspension is necessary due to loss or damage to property caused by "fungi", wet rot or dry rot, then our payment under the Business Income and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

**(b)** If a covered suspension of "operations" was caused by loss or damage other than "fungi", wet rot or dry rot, but remediation of "fungi",

wet rot or dry rot prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days.  The days need not be consecutive.

**6. Coverage Extensions**

In addition to the Limits of Insurance of Section **I – Property**, you may extend the insurance provided by this policy as provided below.

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

**a. Newly Acquired Or Constructed Property**

**(1) Buildings**

If this policy covers Buildings, you may extend that insurance to apply to:

**(a)** Your new buildings while being built on the described premises; and

**(b)** Buildings you acquire at premises other than the one described, intended for:

**(i)** Similar use as the building described in the Declarations; or

**(ii)** Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

**(2) Business Personal Property**

If this policy covers Business Personal Property, you may extend that insurance to apply to:

**(a)** Business Personal Property, including such property that you newly acquire, at any location you acquire;

**(b)** Business Personal Property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations; or

**(c)** Business Personal Property that you newly acquire, located at the described premises.

This Extension does not apply to personal property that you temporarily acquire in the course of installing or performing work on such property or your wholesale activities.

The most we will pay for loss or damage

under this Extension is $100,000 at each building.

**(3) Period Of Coverage**

With respect to insurance on or at each newly acquired or constructed property, coverage will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

**(c)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

**b. Personal Property Off-premises**

You may extend the insurance provided by this policy to apply to your Covered Property, other than "money" and "securities", "valuable papers and records" or accounts receivable, while it is in the course of transit or at a premises you do not own, lease or operate.  The most we will pay for loss or damage under this Extension is $10,000.

**c. Outdoor Property**

You may extend the insurance provided by this policy to apply to your outdoor fences, radio and television antennas (including satellite dishes), signs (other than signs attached to buildings), trees, shrubs and plants, including debris removal expense. Loss or damage must be caused by or result from any of the following causes of loss:

**(1)** Fire;

**(2)** Lightning;

**(3)** Explosion;

**(4)** Riot or Civil Commotion; or

**(5)** Aircraft.

The most we will pay for loss or damage under this Extension is $2,500, unless a higher Limit of Insurance for Outdoor Property is shown in the Declarations, but not more than $1,000 for any one tree, shrub or plant.

**d. Personal Effects**

You may extend the insurance that applies to Business Personal Property to apply to personal effects owned by you, your officers, your partners or "members", your "managers" or your employees.  This extension does not apply to:

**(1)** Tools or equipment used in your business; or

**(2)** Loss or damage by theft.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises.

**e. Valuable Papers And Records**

**(1)** You may extend the insurance that applies to Business Personal Property to apply to direct physical loss or damage to "valuable papers and records" that you own, or that are in your care, custody or control caused by or resulting from a Covered Cause of Loss. This Coverage Extension includes the cost to research, replace or restore the lost information on "valuable papers and records" for which duplicates do not exist.

**(2)** This Coverage Extension does not apply to:

**(a)** Property held as samples or for delivery after sale; and

**(b)** Property in storage away from the premises shown in the Declarations.

**(3)** The most we will pay under this Coverage Extension for loss or damage to "valuable papers and records" in any one occurrence at the described premises is $10,000, unless a higher Limit of Insurance for "valuable papers and records" is shown in the Declarations.

For "valuable papers and records" not at the described premises, the most we will pay is $5,000.

**(4)** Loss or damage to "valuable papers and records" will be valued at the cost of restoration or replacement of the lost or damaged information. To the extent that the contents of the "valuable papers and records" are not restored, the "valuable papers and records" will be valued at the cost of replacement with blank materials of substantially identical type.

**(5)** Paragraph **B.** Exclusions in Section **I** – Property does not apply to this Coverage Extension except for:

**(a)** Paragraph **B.1.c.,** Governmental Action;

**(b)** Paragraph **B.1.d.,** Nuclear Hazard;

**(c)** Paragraph **B.1.f.,** War And Military Action;

**(d)** Paragraph **B.2.f.,** Dishonesty;

**(e)** Paragraph **B.2.g.,** False Pretense;

**(f)** Paragraph **B.2.m.(2),** Errors Or Omissions; and

**(g)** Paragraph **B.3.**

**f. Accounts Receivable**

**(1)** You may extend the insurance that applies to Business Personal Property to apply to accounts receivable. We will pay:

**(a)** All amounts due from your customers that you are unable to collect;

**(b)** Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

**(c)** Collection expenses in excess of your normal collection expenses that are made necessary by loss or damage; and

**(d)** Other reasonable expenses that you incur to reestablish your records of accounts receivable;

that result from direct physical loss or damage by any Covered Cause of Loss to your records of accounts receivable.

**(2)** The most we will pay under this Coverage Extension for loss or damage in any one occurrence at the described premises is $10,000, unless a higher Limit of Insurance for accounts receivable is shown in the Declarations.

For accounts receivable not at the described premises, the most we will pay is $5,000.

**(3)** Paragraph **B.** Exclusions in Section **I** – Property does not apply to this Coverage Extension except for:

**(a)** Paragraph **B.1.c.,** Governmental Action;

**(b)** Paragraph **B.1.d.,** Nuclear Hazard;

**(c)** Paragraph **B.1.f.,** War And Military Action;

**(d)** Paragraph **B.2.f.,** Dishonesty;

**(e)** Paragraph **B.2.g.,** False Pretense;

**(f)** Paragraph **B.3.;** and

**(g)** Paragraph **B.6.,** Accounts Receivable Exclusion.

**B. Exclusions**

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects

a substantial area.

**a. Ordinance Or Law**

**(1)** The enforcement of any ordinance or law:

**(a)** Regulating the construction, use or repair of any property; or

**(b)** Requiring the tearing down of any property, including the cost of removing its debris.

**(2)** This exclusion, Ordinance Or Law, applies whether the loss results from:

**(a)** An ordinance or law that is enforced even if the property has not been damaged; or

**(b)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property or removal of its debris, following a physical loss to that property.

**b. Earth Movement**

**(1)** Earthquake, including any earth sinking, rising or shifting related to such event;

**(2)** Landslide, including any earth sinking, rising or shifting related to such event;

**(3)** Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

**(4)** Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty.  Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in Paragraphs **(1)** through **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**(5)** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or volcanic action, we will pay for the loss or damage caused by that fire, building glass breakage or volcanic action.

Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

**(a)** Airborne volcanic blast or airborne shock waves;

**(b)** Ash, dust or particulate matter; or

**(c)** Lava flow.

All volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss of or damage to Covered Property.

**c. Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this policy.

**d. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

**e. Utility Services**

The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure:

**(1)** Originates away from the described premises; or

**(2)** Originates at the described premises, but only if such failure involves equipment used to supply the utility service to the described premises from a source away from the described premises.

Failure of any utility service includes lack of sufficient capacity and reduction in supply.

Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

But if the failure or surge of power, or the failure of communication, water or other utility service, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

Communication services include but are not limited to service relating to Internet access or access to any electronic, cellular or satellite network.

This exclusion does not apply to loss or damage to "computer(s)" and "electronic

data".

**f. War And Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g. Water**

**(1)** Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

**(2)** Mudslide or mudflow;

**(3)** Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

**(4)** Water under the ground surface pressing on, or flowing or seeping through:

  **(a)** Foundations, walls, floors or paved surfaces;

  **(b)** Basements, whether paved or not; or

  **(c)** Doors, windows or other openings; or

**(5)** Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **(1)**, **(3)** or **(4)**, or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

But if any of the above, in Paragraphs **(1)** through **(5)**, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

**h. Certain Computer-related Losses**

**(1)** The failure, malfunction or inadequacy of:

  **(a)** Any of the following, whether

belonging to any insured or to others:

  **(i)** "Computer" hardware, including microprocessors or other electronic data processing equipment as may be described elsewhere in this policy;

  **(ii)** "Computer" application software or other "electronic data" as may be described elsewhere in this policy;

  **(iii)** "Computer" operating systems and related software;

  **(iv)** "Computer" networks;

  **(v)** Microprocessors ("computer" chips) not part of any "computer" system; or

  **(vi)** Any other computerized or electronic equipment or components; or

  **(b)** Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph **(a)** above;

due to the inability to correctly recognize, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

**(2)** Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **(1)** above.

However, if excluded loss or damage, as described in Paragraph **(1)** above results in a "specified cause of loss" under Section I – Property, we will pay only for the loss or damage caused by such "specified cause of loss".

We will not pay for repair, replacement or modification of any items in Paragraph **(1)(a)** or **(1)(b)** to correct any deficiencies or change any features.

**i. "Fungi", Wet Rot Or Dry Rot**

Presence, growth, proliferation, spread or any activity of "fungi", wet rot or dry rot.

But if "fungi", wet rot or dry rot result in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion does not apply:

**(1)** When "fungi", wet rot or dry rot result from fire or lightning; or

**(2)** To the extent that coverage is provided in the Limited Coverage For "Fungi", Wet Rot Or Dry Rot Additional Coverage, with respect to loss or damage by a cause of loss other than fire or lightning.

**j. Virus Or Bacteria**

**(1)** Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

**(2)** However, the exclusion in Paragraph **(1)** does not apply to loss or damage caused by or resulting from "fungi", wet rot or dry rot. Such loss or damage is addressed in Exclusion **i.;**

**(3)** With respect to any loss or damage subject to the exclusion in Paragraph **(1),** such exclusion supersedes any exclusion relating to "pollutants".

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

**a. Electrical Apparatus**

Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

**(1)** Electrical or electronic wire, device, appliance, system or network; or

**(2)** Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

**(1)** Electrical current, including arcing;

**(2)** Electrical charge produced or conducted by a magnetic or electromagnetic field;

**(3)** Pulse of electromagnetic energy; or

**(4)** Electromagnetic waves or microwaves.

But if fire results, we will pay for the loss or damage caused by fire.

We will pay for loss or damage to "computer(s)" due to artificially generated electrical, magnetic or electromagnetic energy if such loss or damage is caused by or results from:

**(1)** An occurrence that took place within 100 feet of the described premises; or

**(2)** Interruption of electric power supply, power surge, blackout or brownout if the cause of such occurrence took place within 100 feet of the described premises.

**b. Consequential Losses**

Delay, loss of use or loss of market.

**c. Smoke, Vapor, Gas**

Smoke, vapor or gas from agricultural smudging or industrial operations.

**d. Steam Apparatus**

Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control.  But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion.  We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**e. Frozen Plumbing**

Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

**(1)** You do your best to maintain heat in the building or structure; or

**(2)** You drain the equipment and shut off the supply if the heat is not maintained.

**f. Dishonesty**

Dishonest or criminal acts by you, anyone else with an interest in the property, or any of your or their partners, "members", officers, "managers", employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

**(1)** Acting alone or in collusion with others; or

**(2)** Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your employees; but theft by employees is not covered.

With respect to accounts receivable and "valuable papers and records", this exclusion does not apply to carriers for hire.

This exclusion does not apply to coverage that is provided under the Employee Dishonesty Optional Coverage.

**g. False Pretense**

Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**h. Exposed Property**

Rain, snow, ice or sleet to personal property in the open.

**i. Collapse**

**(1)** Collapse, including any of the following conditions of property or any part of the property:

**(a)** An abrupt falling down or caving in;

**(b)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

**(c)** Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to Paragraph **i.(1)(a)** or **i.(1)(b).**

But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

**(2)** This Exclusion **i.,** does not apply:

**(a)** To the extent that coverage is provided under the Additional Coverage – Collapse; or

**(b)** To collapse caused by one or more of the following:

**(i)** The "specified causes of loss";

**(ii)** Breakage of building glass;

**(iii)** Weight of rain that collects on a roof; or

**(iv)** Weight of people or personal property.

**j. Pollution**

We will not pay for loss or damage caused by or resulting from the discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

**k. Neglect**

Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

**l. Other Types Of Loss**

**(1)** Wear and tear;

**(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**(3)** Smog;

**(4)** Settling, cracking, shrinking or expansion;

**(5)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals;

**(6)** Mechanical breakdown, including rupture or bursting caused by centrifugal force.

This exclusion does not apply with respect to the breakdown of "computer(s)";

**(7)** The following causes of loss to personal property:

**(a)** Dampness or dryness of atmosphere;

**(b)** Changes in or extremes of temperature; or

**(c)** Marring or scratching.

But if an excluded cause of loss that is listed in Paragraphs **(1)** through **(7)** above results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

**m. Errors Or Omissions**

Errors or omissions in:

**(1)** Programming, processing or storing data, as described under "electronic data" or in any "computer" operations; or

**(2)** Processing or copying "valuable papers and records".

However, we will pay for direct physical loss or damage caused by resulting fire or explosion if these causes of loss would be covered by this coverage form.

**n. Installation, Testing, Repair**

Errors or deficiency in design, installation, testing, maintenance, modification or repair of your "computer" system including "electronic data".

However, we will pay for direct physical loss or damage caused by resulting fire or explosion if these causes of loss would be covered by this coverage form.

**o. Electrical Disturbance**

Electrical or magnetic injury, disturbance or erasure of "electronic data", except as provided for under the Additional Coverages of Section **I** – Property.

However, we will pay for direct loss or damage caused by lightning.

**p. Continuous Or Repeated Seepage Or Leakage Of Water**

Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

**3.** We will not pay for loss or damage caused by or resulting from any of the following Paragraphs **a.** through **c.** But if an excluded cause of loss that is listed in Paragraphs **a.** through **c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

   **a. Weather Conditions**

     Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **B.1.** above to produce the loss or damage.

   **b. Acts Or Decisions**

     Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

   **c. Negligent Work**

     Faulty, inadequate or defective:

     **(1)** Planning, zoning, development, surveying, siting;

     **(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

     **(3)** Materials used in repair, construction, renovation or remodeling; or

     **(4)** Maintenance;

     of part or all of any property on or off the described premises.

**4. Additional Exclusion**

   The following applies only to the property specified in this Additional Exclusion.

   **Loss Or Damage To Products**

   We will not pay for loss or damage to any merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**5. Business Income And Extra Expense Exclusions**

   **a.** We will not pay for:

     **(1)** Any Extra Expense, or increase of Business Income loss, caused by or resulting from:

       **(a)** Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

       **(b)** Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage.

     **(2)** Any other consequential loss.

   **b.** With respect to this exclusion, suspension means:

     **(1)** The partial slowdown or complete cessation of your business activities; and

     **(2)** That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

**6. Accounts Receivable Exclusion**

   The following additional exclusion applies to the Accounts Receivable Coverage Extension:

   We will not pay for:

   **a.** Loss or damage caused by or resulting from alteration, falsification, concealment or destruction of records of accounts receivable done to conceal the wrongful giving, taking or withholding of "money", "securities" or other property.

     This exclusion applies only to the extent of the wrongful giving, taking or withholding.

   **b.** Loss or damage caused by or resulting from bookkeeping, accounting or billing errors or omissions.

   **c.** Any loss or damage that requires any audit of records or any inventory computation to prove its factual existence.

**C. Limits Of Insurance**

   **1.** The most we will pay for loss or damage in any one occurrence is the applicable Limits of Insurance of Section **I** – Property shown in the Declarations.

   **2.** The most we will pay for loss of or damage to outdoor signs attached to buildings is $1,000 per sign in any one occurrence.

**3.** The amounts of insurance applicable to the Coverage Extensions and the following Additional Coverages apply in accordance with the terms of such coverages and are in addition to the Limits of Insurance of Section **I** – Property:

  **a.** Fire Department Service Charge;

  **b.** Pollutant Clean-up And Removal;

  **c.** Increased Cost Of Construction;

  **d.** Business Income From Dependent Properties;

  **e.** Electronic Data; and

  **f.** Interruption Of Computer Operations.

**4. Building Limit – Automatic Increase**

  **a.** In accordance with Paragraph **C.4.b.,** the Limit of Insurance for Buildings will automatically increase by 8%, unless a different percentage of annual increase is shown in the Declarations.

  **b.** The amount of increase is calculated as follows:

    **(1)** Multiply the Building limit that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Building limit by:

      **(a)** The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 7% is .07); or

      **(b)** .08, if no percentage of annual increase is shown in the Declarations; and

    **(2)** Multiply the number calculated in accordance with **b.(1)** by the number of days since the beginning of the current policy year, or the effective date of the most recent policy change amending the Building limit, divided by 365.

    **Example:**

    If:

    The applicable Building limit is $100,000.  The annual percentage increase is 8%.  The number of days since the beginning of the policy year (or last policy change) is 146.

    The amount of increase is

    $100,000 x .08 x 146 ÷ 365 = $3,200.

**5. Business Personal Property Limit – Seasonal Increase**

  **a.** Subject to Paragraph **5.b.,** the Limit of Insurance for Business Personal Property is automatically increased by:

    **(1)** The Business Personal Property – Seasonal Increase percentage shown in the Declarations; or

    **(2)** 25% if no Business Personal Property – Seasonal Increase percentage is shown in the Declarations;

  to provide for seasonal variances.

  **b.** The increase described in Paragraph **5.a** will apply only if the Limit of Insurance shown for Business Personal Property in the Declarations is at least 100% of your average monthly values during the lesser of:

    **(1)** The 12 months immediately preceding the date the loss or damage occurs; or

    **(2)** The period of time you have been in business as of the date the loss or damage occurs.

**D. Deductibles**

**1.** We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Declarations.  We will then pay the amount of loss or damage in excess of the Deductible up to the applicable Limit of Insurance of Section **I** – Property.

**2.** Regardless of the amount of the Deductible, the most we will deduct from any loss or damage under all of the following Optional Coverages in any one occurrence is the Optional Coverage Deductible shown in the Declarations:

  **a.** Money and Securities;

  **b.** Employee Dishonesty;

  **c.** Outdoor Signs; and

  **d.** Forgery or Alteration.

But this Optional Coverage Deductible will not increase the Deductible shown in the Declarations.  This Deductible will be used to satisfy the requirements of the Deductible in the Declarations.

**3.** No deductible applies to the following Additional Coverages:

  **a.** Fire Department Service Charge;

  **b.** Business Income;

  **c.** Extra Expense;

  **d.** Civil Authority; and

  **e.** Fire Extinguisher Systems Recharge Expense.

**E. Property Loss Conditions**

**1. Abandonment**

  There can be no abandonment of any property to us.

**2. Appraisal**

  If we and you disagree on the amount of loss, either may make written demand for an

appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**3. Duties In The Event Of Loss Or Damage**

**a.** You must see that the following are done in the event of loss or damage to Covered Property:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limits of Insurance of Section I – Property. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this

within 60 days after our request. We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation or settlement of the claim.

**(9)** Resume all or part of your "operations" as quickly as possible.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4. Legal Action Against Us**

No one may bring a legal action against us under this insurance unless:

**a.** There has been full compliance with all of the terms of this insurance; and

**b.** The action is brought within two years after the date on which the direct physical loss or damage occurred.

**5. Loss Payment**

In the event of loss or damage covered by this policy:

**a.** At our option, we will either:

**(1)** Pay the value of lost or damaged property;

**(2)** Pay the cost of repairing or replacing the lost or damaged property;

**(3)** Take all or any part of the property at an agreed or appraised value; or

**(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to Paragraph **d.(1)(e)** below.

**b.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**c.** We will not pay you more than your financial interest in the Covered Property.

**d.** Except as provided in Paragraphs **(2)** through **(7)** below, we will determine the value of Covered Property as follows:

**(1)** At replacement cost without deduction for depreciation, subject to the following:

**(a)** If, at the time of loss, the Limit of Insurance on the lost or damaged property is 80% or more of the full replacement cost of the property immediately before the loss, we will pay the cost to repair or replace, after application of the deductible and without deduction for depreciation, but not more than the

least of the following amounts:

**(i)** The Limit of Insurance under Section **I** – Property that applies to the lost or damaged property;

**(ii)** The cost to replace, on the same premises, the lost or damaged property with other property:

  **i.** Of comparable material and quality; and

  **ii.** Used for the same purpose; or

**(iii)** The amount that you actually spend that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost is limited to the cost which would have been incurred had the building been built at the original premises.

**(b)** If, at the time of loss, the Limit of Insurance applicable to the lost or damaged property is less than 80% of the full replacement cost of the property immediately before the loss, we will pay the greater of the following amounts, but not more than the Limit of Insurance that applies to the property:

**(i)** The actual cash value of the lost or damaged property; or

**(ii)** A proportion of the cost to repair or replace the lost or damaged property, after application of the deductible and without deduction for depreciation. This proportion will equal the ratio of the applicable Limit of Insurance to 80% of the cost of repair or replacement.

**(c)** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim on a replacement cost basis if you notify us of your intent to do so within 180 days after the loss or damage.

**(d)** We will not pay on a replacement cost basis for any loss or damage:

**(i)** Until the lost or damaged property is actually repaired or replaced; and

**(ii)** Unless the repairs or replacement are made as soon

as reasonably possible after the loss or damage.

However, if the cost to repair or replace the damaged building property is $2,500 or less, we will settle the loss according to the provisions of Paragraphs **d.(1)(a)** and **d.(1)(b)** above whether or not the actual repair or replacement is complete.

**(e)** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

**(2)** If the Actual Cash Value – Buildings option applies, as shown in the Declarations, Paragraph **(1)** above does not apply to Buildings. Instead, we will determine the value of Buildings at actual cash value.

**(3)** The following property at actual cash value:

**(a)** Used or secondhand merchandise held in storage or for sale;

**(b)** Property of others. However, if an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance;

**(c)** Household contents, except personal property in apartments or rooms furnished by you as landlord;

**(d)** Manuscripts; and

**(e)** Works of art, antiques or rare articles, including etchings, pictures, statuary, marble, bronzes, porcelain and bric-a-brac.

**(4)** Glass at the cost of replacement with safety glazing material if required by law.

**(5)** Tenants' Improvements and Betterments at:

**(a)** Replacement cost if you make repairs promptly.

**(b)** A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

**(i)** Multiply the original cost by the

number of days from the loss or damage to the expiration of the lease; and

**(ii)** Divide the amount determined in **(i)** above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

**(c)** Nothing if others pay for repairs or replacement.

**(6)** Applicable only to the Optional Coverages:

**(a)** "Money" at its face value; and

**(b)** "Securities" at their value at the close of business on the day the loss is discovered.

**(7)** Applicable only to Accounts Receivable:

**(a)** If you cannot accurately establish the amount of accounts receivable outstanding as of the time of loss or damage:

**(i)** We will determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the loss or damage occurs; and

**(ii)** We will adjust that total for any normal fluctuations in the amount of accounts receivable for the month in which the loss or damage occurred or for any demonstrated variance from the average for that month.

**(b)** The following will be deducted from the total amount of accounts receivable, however that amount is established:

**(i)** The amount of the accounts for which there is no loss or damage;

**(ii)** The amount of the accounts that you are able to reestablish or collect;

**(iii)** An amount to allow for probable bad debts that you are normally unable to collect; and

**(iv)** All unearned interest and service charges.

**e.** Our payment for loss of or damage to personal property of others will only be for the account of the owners of the property. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**g.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, provided you have complied with all of the terms of this policy; and

**(1)** We have reached agreement with you on the amount of loss; or

**(2)** An appraisal award has been made.

**h.** A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of the Transfer Of Rights Of Recovery Against Others To Us Condition in this policy.

**6. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, you may retain the property. But then you must return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limits of Insurance of Section **I** – Property.

**7. Resumption Of Operations**

We will reduce the amount of your:

**a.** Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

**b.** Extra Expense loss to the extent you can return "operations" to normal and

discontinue such Extra Expense.

**8. Vacancy**

**a. Description Of Terms**

**(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in Paragraphs **(a)** and **(b)** below:

**(a)** When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

**(b)** When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

**(i)** Rented to a lessee or sublessee and used by the lessee or sub-lessee to conduct its customary operations; and/or

**(ii)** Used by the building owner to conduct customary operations.

**(2)** Buildings under construction or renovation are not considered vacant.

**b. Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

**(1)** We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

**(a)** Vandalism;

**(b)** Sprinkler leakage, unless you have protected the system against freezing;

**(c)** Building glass breakage;

**(d)** Water damage;

**(e)** Theft; or

**(f)** Attempted theft.

**(2)** With respect to Covered Causes of Loss other than those listed in Paragraphs **(1)(a)** through **(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**F. Property General Conditions**

**1. Control Of Property**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Form at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

**2. Mortgageholders**

**a.** The term "mortgageholder" includes trustee.

**b.** We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

**c.** The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

**d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this policy will then apply directly to the mortgageholder.

**e.** If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

**(2)** The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.** If we cancel this policy, we will give written notice to the mortgageholder at least:

**(1)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**g.** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**3. No Benefit To Bailee**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**4. Policy Period, Coverage Territory**

Under Section **I** – Property:

**a.** We cover loss or damage commencing:

**(1)** During the policy period shown in the Declarations; and

**(2)** Within the coverage territory or, with respect to property in transit, while it is between points in the coverage territory.

**b.** The coverage territory is:

**(1)** The United States of America (including its territories and possessions);

**(2)** Puerto Rico; and

**(3)** Canada.

**G. Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages also apply. These coverages are subject to the terms and conditions applicable to property coverage in this policy, except as provided below.

**1. Outdoor Signs**

**a.** We will pay for direct physical loss of or damage to all outdoor signs at the described premises:

**(1)** Owned by you; or

**(2)** Owned by others but in your care, custody or control.

**b.** Paragraph **A.3.,** Covered Causes Of Loss, and Paragraph **B.,** Exclusions in Section **I** – Property, do not apply to this Optional Coverage, except for:

**(1)** Paragraph **B.1.c.,** Governmental Action;

**(2)** Paragraph **B.1.d.,** Nuclear Hazard; and

**(3)** Paragraph **B.1.f.,** War And Military Action.

**c.** We will not pay for loss or damage caused by or resulting from:

**(1)** Wear and tear;

**(2)** Hidden or latent defect;

**(3)** Rust;

**(4)** Corrosion; or

**(5)** Mechanical breakdown.

**d.** The most we will pay for loss or damage in any one occurrence is the Limit of Insurance for Outdoor Signs shown in the Declarations.

**e.** The provisions of this Optional Coverage supersede all other references to outdoor signs in this policy.

**2. Money And Securities**

**a.** We will pay for loss of "money" and "securities" used in your business while at a bank or savings institution, within your living quarters or the living quarters of your partners or any employee having use and custody of the property, at the described premises, or in transit between any of these places, resulting directly from:

**(1)** Theft, meaning any act of stealing;

**(2)** Disappearance; or

**(3)** Destruction.

**b.** In addition to the Limitations and Exclusions applicable to Section **I** – Property, we will not pay for loss:

**(1)** Resulting from accounting or arithmetical errors or omissions;

**(2)** Due to the giving or surrendering of property in any exchange or purchase; or

**(3)** Of property contained in any "money"-operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

**c.** The most we will pay for loss in any one occurrence is:

**(1)** The limit shown in the Declarations for Inside the Premises for "money" and "securities" while:

**(a)** In or on the described premises; or

**(b)** Within a bank or savings institution; and

**(2)** The limit shown in the Declarations for Outside the Premises for "money" and "securities" while anywhere else.

**d.** All loss:

**(1)** Caused by one or more persons; or

**(2)** Involving a single act or series of related acts;

is considered one occurrence.

**e.** You must keep records of all "money" and "securities" so we can verify the amount of any loss or damage.

**3. Employee Dishonesty**

**a.** We will pay for direct loss of or damage to Business Personal Property and "money"

and "securities" resulting from dishonest acts committed by any of your employees acting alone or in collusion with other persons (except you or your partner) with the manifest intent to:

**(1)** Cause you to sustain loss or damage; and also

**(2)** Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment) for:

**(a)** Any employee; or

**(b)** Any other person or organization.

**b.** We will not pay for loss or damage:

**(1)** Resulting from any dishonest or criminal act that you or any of your partners or "members" commit whether acting alone or in collusion with other persons.

**(2)** Resulting from any dishonest act committed by any of your employees (except as provided in Paragraph **a.**), "managers" or directors:

**(a)** Whether acting alone or in collusion with other persons; or

**(b)** While performing services for you or otherwise.

**(3)** The only proof of which as to its existence or amount is:

**(a)** An inventory computation; or

**(b)** A profit and loss computation.

**c.** The most we will pay for loss or damage in any one occurrence is the Limit of Insurance for Employee Dishonesty shown in the Declarations.

**d.** All loss or damage:

**(1)** Caused by one or more persons; or

**(2)** Involving a single act or series of acts;

is considered one occurrence.

**e.** If any loss is covered:

**(1)** Partly by this insurance; and

**(2)** Partly by any prior cancelled or terminated insurance that we or any affiliate had issued to you or any predecessor in interest;

the most we will pay is the larger of the amount recoverable under this insurance or the prior insurance.

We will pay only for loss or damage you sustain through acts committed or events occurring during the policy period. Regardless of the number of years this policy remains in force or the number of

premiums paid, no Limit of Insurance cumulates from year to year or period to period.

**f.** This Optional Coverage is cancelled as to any employee immediately upon discovery by:

**(1)** You; or

**(2)** Any of your partners, "members", "managers", officers or directors not in collusion with the employee;

of any dishonest act committed by that employee before or after being hired by you.

**g.** We will pay only for covered loss or damage sustained during the policy period and discovered no later than one year from the end of the policy period.

**h.** If you (or any predecessor in interest) sustained loss or damage during the policy period of any prior insurance that you could have recovered under that insurance except that the time within which to discover loss or damage had expired, we will pay for it under this Optional Coverage, provided:

**(1)** This Optional Coverage became effective at the time of cancellation or termination of the prior insurance; and

**(2)** The loss or damage would have been covered by this Optional Coverage had it been in effect when the acts or events causing the loss or damage were committed or occurred.

**i.** The insurance under Paragraph **h.** above is part of, not in addition to, the Limit of Insurance applying to this Optional Coverage and is limited to the lesser of the amount recoverable under:

**(1)** This Optional Coverage as of its effective date; or

**(2)** The prior insurance had it remained in effect.

**j.** With respect to the Employee Dishonesty Optional Coverage in Paragraph **G.3.**, employee means:

**(1)** Any natural person:

**(a)** While in your service or for 30 days after termination of service;

**(b)** Who you compensate directly by salary, wages or commissions; and

**(c)** Who you have the right to direct and control while performing services for you;

**(2)** Any natural person who is furnished temporarily to you:

**(a)** To substitute for a permanent

employee as defined in Paragraph **(1)** above, who is on leave; or

**(b)** To meet seasonal or short-term workload conditions;

**(3)** Any natural person who is leased to you under a written agreement between you and a labor leasing firm, to perform duties related to the conduct of your business, but does not mean a temporary employee as defined in Paragraph **(2)** above;

**(4)** Any natural person who is a former employee, director, partner, member, manager, representative or trustee retained as a consultant while performing services for you; or

**(5)** Any natural person who is a guest student or intern pursuing studies or duties, excluding, however, any such person while having care and custody of property outside any building you occupy in conducting your business.

But employee does not mean:

**(1)** Any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character; or

**(2)** Any "manager", director or trustee except while performing acts coming within the usual duties of an employee.

**4.  Equipment Breakdown Protection Coverage**

**a.**  We will pay for direct loss of or damage to Covered Property caused by or resulting from a mechanical breakdown or electrical failure to pressure, mechanical or electrical machinery and equipment.

Mechanical breakdown or electrical failure to pressure, mechanical or electrical machinery and equipment does not mean any:

**(1)** Malfunction including but not limited to adjustment, alignment, calibration, cleaning or modification;

**(2)** Leakage at any valve, fitting, shaft seal, gland packing, joint or connection;

**(3)** Damage to any vacuum tube, gas tube, or brush; or

**(4)** The functioning of any safety or protective device.

**b.**  Paragraphs **A.4.a.(1)** and **A.4.a.(2), Limitations,** do not apply to this Optional Coverage.

**c.**  With respect to the coverage provided by this Optional Coverage, the following exclusions in Paragraph **B. Exclusions** do not apply:

**(1)** Paragraph **B.2.a. Electrical Apparatus;**

**(2)** Paragraph **B.2.d. Steam Apparatus;** and

**(3)** Paragraph **B.2.l.(6) Mechanical Breakdown.**

**d.**  With respect to the coverage provided by this Optional Coverage, Paragraph **G.1.c.(5)** of the **Outdoor Sign Optional Coverage** does not apply.

**e.**  If a dollar deductible is shown in the Declarations for this Optional Coverage, we will first subtract the applicable deductible amount from any loss we would otherwise pay.  We will then pay the amount of loss in excess of the applicable deductible up to the applicable limit for this coverage.

If no optional deductible is chosen for this Optional Coverage, the Property Deductible shown in the Declarations applies.

**f.**  With respect to **Additional Coverages 5.f. Business Income** and **5.g. Extra Expense,** if the 72-hour time period in the definition of "period of restoration" (hereinafter referred to as time deductible) is amended for this Optional Coverage as shown in the Declarations, we will not pay for any Business Income loss that occurs during the consecutive number of hours shown as the time deductible in the Declarations immediately following a mechanical breakdown or electrical failure. If a time deductible is shown in days, each day shall mean 24 consecutive hours.

As respects the coverage provided by this Optional Coverage, any time deductible shown in the Declarations for Equipment Breakdown Protection Coverage supersedes any time deductible otherwise applicable to the Business Income coverage provided by this policy.

**g.**  With respect to the coverage provided by this Optional Coverage, Paragraph **H. Property Definitions** is amended as follows:

**1.**  "Computer" means:

**a.**  Programmable electronic equipment that is used to store, retrieve and process data; and

**b.**  Associated peripheral equipment that provides communication, including input and output functions such as printing and auxiliary functions such as data transmission.

"Computer" includes those used to operate production type machinery or equipment.

**h.**  Whenever any covered pressure, mechanical or electrical machinery and equipment is found to be in, or exposed to,

a dangerous condition, any of our representatives may suspend coverage provided by this Optional Coverage for loss from a mechanical breakdown or electrical failure to that pressure, mechanical or electrical machinery and equipment.

However, coverage provided by this Optional Coverage may be reinstated for loss from a mechanical breakdown or electrical failure to that pressure, mechanical or electrical machinery and equipment if the reasons for the suspension are found by any of our representatives to no longer exist.

We may suspend or reinstate this Optional coverage by mailing or delivering a written notification regarding the suspension or reinstatement to:

(1) Your last known address; or

(2) The address where the pressure, mechanical or electrical machinery and equipment is located.

This notification will indicate the effective date of the suspension or reinstatement.

If the coverage provided by this Optional Coverage is not reinstated, you will get a pro rata refund of premium.  But the suspension will be effective even if we have not yet made or offered a refund.

**H. Property Definitions**

1. "Computer" means:

   a. Programmable electronic equipment that is used to store, retrieve and process data; and

   b. Associated peripheral equipment that provides communication, including input and output functions such as printing and auxiliary functions such as data transmission.

   "Computer" does not include those used to operate production type machinery or equipment.

2. "Counterfeit money" means an imitation of "money" that is intended to deceive and to be taken as genuine.

3. "Electronic data" means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment.  The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a "computer" or

device connected to it, which enable the "computer" or device to receive, process, store, retrieve or send data.

4. "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

5. "Manager" means a person serving in a directorial capacity for a limited liability company.

6. "Member" means an owner of a limited liability company represented by its membership interest, who also may serve as a "manager".

7. "Money" means:

   a. Currency, coins and bank notes in current use and having a face value; and

   b. Travelers checks, register checks and money orders held for sale to the public.

8. "Operations" means your business activities occurring at the described premises.

9. "Period of restoration":

   a. Means the period of time that:

      (1) Begins:

         (a) 72 hours after the time of direct physical loss or damage for Business Income Coverage; or

         (b) Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

         caused by or resulting from any Covered Cause of Loss at the described premises; and

      (2) Ends on the earlier of:

         (a) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

         (b) The date when business is resumed at a new permanent location.

   b. Does not include any increased period required due to the enforcement of any ordinance or law that:

      (1) Regulates the construction, use or repair, or requires the tearing down of any property; or

      (2) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants".

   The expiration date of this policy will not cut short the "period of restoration".

10. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including

smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**11.** "Securities" means negotiable and non-negotiable instruments or contracts representing either "money" or other property and includes:

**a.** Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

**b.** Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

but does not include "money".

**12.** "Specified causes of loss" means the following:

Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

**a.** Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

**(1)** The cost of filling sinkholes; or

**(2)** Sinking or collapse of land into man-made underground cavities.

**b.** Falling objects does not include loss of or damage to:

**(1)** Personal property in the open; or

**(2)** The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

**c.** Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam.

**13.** "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

**14.** "Valuable papers and records" means inscribed, printed or written:

**a.** Documents;

**b.** Manuscripts; and

**c.** Records;

including abstracts, books, deeds, drawings, films, maps or mortgages.

But "valuable papers and records" does not mean "money" or "securities".

## SECTION II – LIABILITY

### A. Coverages

**1. Business Liability**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Paragraph **D.** – Liability And Medical Expenses Limits Of Insurance in Section **II** – Liability; and

**(2)** Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements or medical expenses.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Paragraph **f.** Coverage Extension – Supplementary Payments.

**b.** This insurance applies:

**(1)** To "bodily injury" and "property damage" only if:

**(a)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(b)** The "bodily injury" or "property damage" occurs during the policy period; and

**(c)** Prior to the policy period, no insured listed under Paragraph **C.1.** Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any

continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known before the policy period.

**(2)** To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **C.1.** Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **C.1.** Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**f. Coverage Extension – Supplementary Payments**

**(1)** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**(a)** All expenses we incur.

**(b)** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which Business Liability Coverage for "bodily injury" applies. We do not have to furnish these bonds.

**(c)** The cost of bonds to release attachments, but only for bond amounts within our Limit of Insurance. We do not have to furnish these bonds.

**(d)** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**(e)** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**(f)** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**(g)** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the limit of liability.

**(2)** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**(a)** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**(b)** This insurance applies to such liability assumed by the insured;

**(c)** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**(d)** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**(e)** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**(f)** The indemnitee:

**(i)** Agrees in writing to:

  **i.** Cooperate with us in the investigation, settlement or defense of the "suit";

  **ii.** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

  **iii.** Notify any other insurer whose coverage is available to the indemnitee; and

  **iv.** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(ii)** Provides us with written authorization to:

  **i.** Obtain records and other information related to the "suit"; and

  **ii.** Conduct and control the defense of the indemnitee in such "suit".

**(3)** So long as the conditions in Paragraph **(2)** are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments.  Notwithstanding the provisions of Paragraph **B.1.b.(2)** Exclusions in Section **II** – Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the Limits of Insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**(a)** We have used up the applicable Limit of Insurance in the payment of judgments or settlements; or

**(b)** The conditions set forth above, or the terms of the agreement described in Paragraph **(2)(f)** above are no longer met.

**2. Medical Expenses**

  **a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

  **(1)** On premises you own or rent;

  **(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

  **(a)** The accident takes place in the "coverage territory" and during the policy period;

  **(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

  **(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault.  These payments will not exceed the Limits of Insurance of Section **II** – Liability. We will pay reasonable expenses for:

  **(1)** First aid administered at the time of an accident;

  **(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

  **(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**B. Exclusions**

  **1. Applicable To Business Liability Coverage**

  This insurance does not apply to:

  **a. Expected Or Intended Injury**

  "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

  **b. Contractual Liability**

  "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

  **(1)** That the insured would have in the absence of the contract or agreement; or

  **(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.  Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal,

seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.  However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor.

© Insurance Services Office, Inc., 2009

However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them.  This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured.  Use includes operation and "loading or unloading".

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 51 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a

compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where it is licensed or principally garaged; or

**(b)** The operation of any of the following machinery or equipment:

**(i)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(ii)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition or stunting activity.

**i. War**

"Bodily injury", "property damage" or "personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by government authority in hindering or defending against any of these.

**j. Professional Services**

"Bodily injury", "property damage" or "personal and advertising injury" caused by the rendering or failure to render any professional service.  This includes but is not limited to:

**(1)** Legal, accounting or advertising services;

**(2)** Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

**(3)** Supervisory, inspection or engineering services;

**(4)** Medical, surgical, dental, x-ray or nursing services treatment, advice or instruction;

**(5)** Any health or therapeutic service treatment, advice or instruction;

**(6)** Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;

**(7)** Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

**(8)** Body piercing services; and

**(9)** Services in the practice of pharmacy.

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering or failure to render any professional service.

**k. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to

you for a period of seven or fewer consecutive days.  A separate Limit of Insurance applies to Damage To Premises Rented To You as described in Paragraph **D.** Liability And Medical Expenses Limit Of Insurance in Section **II** – Liability.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3), (4), (5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**l. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**m. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**n. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**o. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**p. Personal And Advertising Injury**

"Personal and advertising injury":

**(1)** Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

**(2)** Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

**(3)** Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

**(4)** For which the insured has assumed liability in a contract or agreement.  This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

**(5)** Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

**(6)** Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

**(7)** Arising out of the wrong description of the price of goods, products or services stated in your "advertisement";

**(8)** Committed by an insured whose business is:

**(a)** Advertising, broadcasting, publishing or telecasting;

**(b)** Designing or determining content of websites for others; or

**(c)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under Paragraph **F.** Liability And Medical Expenses Definitions.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, by itself, is not considered the business of advertising, broadcasting, publishing or telecasting.

**(9)** Arising out of the actual, alleged or

threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time;

**(10)** With respect to any loss, cost or expense arising out of any:

**(a)** Request, demand or order that any insured or others test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to, or assessing the effects of, "pollutants".

**(11)** Arising out of an electronic chatroom or bulletin board the insured hosts, owns or over which the insured exercises control;

**(12)** Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**(13)** Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatags, or any other similar tactics to mislead another's potential customers.

**q. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process,

store, retrieve or send data.

**r. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**s. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury", "property damage", or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.**, **d.**, **e.**, **f.**, **g.**, **h.**, **i.**, **k.**, **l.**, **m.**, **n.** and **o.** in Section **II** – Liability do not apply to damage by fire to premises while rented to you, or temporarily occupied by you with permission of the owner. A separate Damage To Premises Rented To You Limit of Insurance applies to this coverage as described in Paragraph **D.** Liability And Medical Expenses Limits of Insurance in Section **II** – Liability.

**2. Applicable To Medical Expenses Coverage**

We will not pay expenses for "bodily injury":

**a.** To any insured, except "volunteer workers".

**b.** To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c.** To a person injured on that part of premises you own or rent that the person normally occupies.

**d.** To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e.** To a person injured while practicing, instructing or participating in any physical

exercises or games, sports or athletic contests.

**f.** Included within the "products-completed operations hazard".

**g.** Excluded under Business Liability Coverage.

**3. Applicable To Both Business Liability Coverage And Medical Expenses Coverage – Nuclear Energy Liability Exclusion**

This insurance does not apply:

**a.** Under Business Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by the Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

**(a)** Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

**(b)** The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**b.** Under Medical Expenses Coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**c.** Under Business Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of the "nuclear material"; if:

**(1)** The "nuclear material":

**(a)** Is at any "nuclear facility" owned by, or operated by or on behalf of, an insured; or

**(b)** Has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed,

stored, transported or disposed of by or on behalf of an insured; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility"; but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**d.** As used in this exclusion:

**(1)** "By-product material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**(2)** "Hazardous properties" include radioactive, toxic or explosive properties;

**(3)** "Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for:

**(i)** Separating the isotopes of uranium or plutonium;

**(ii)** Processing or utilizing "spent fuel"; or

**(iii)** Handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

**(4)** "Nuclear material" means "source material", "special nuclear material" or "by-product material";

**(5)** "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of

fissionable material;

**(6)** "Property damage" includes all forms of radioactive contamination of property;

**(7)** "Source material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**(8)** "Special nuclear material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**(9)** "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

**(10)** "Waste" means any waste material:

**(a)** Containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content; and

**(b)** Resulting from the operation by any person or organization of any "nuclear facility" included under Paragraphs **(a)** and **(b)** of the definition of "nuclear facility".

**C. Who Is An Insured**

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of

your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph **(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(a)** or **(b)**; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by,

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**D. Liability And Medical Expenses Limits Of Insurance**

**1.** The Limits of Insurance of Section **II** – Liability shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The most we will pay for the sum of all damages because of all:

**a.** "Bodily injury", "property damage" and medical expenses arising out of any one "occurrence"; and

**b.** "Personal and advertising injury" sustained by any one person or organization;

is the Liability and Medical Expenses limit shown in the Declarations. But the most we will pay for all medical expenses because of "bodily injury" sustained by any one person is the Medical Expenses limit shown in the Declarations.

**3.** The most we will pay under Business Liability Coverage for damages because of "property damage" to a premises while rented to you or in the case of fire while rented to you or temporarily occupied by you with permission of the owner is the applicable Damage To Premises Rented To You limit shown for that premises in the Declarations. For a premises temporarily occupied by you, the applicable limit will be the highest Damage To Premises Rented To You limit shown in the Declarations.

**4. Aggregate Limits**

The most we will pay for:

**a.** All "bodily injury" and "property damage" that is included in the "products-completed operations hazard" is twice the Liability and Medical Expenses limit.

**b.** All:

**(1)** "Bodily injury" and "property damage" except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard";

**(2)** Plus medical expenses;

**(3)** Plus all "personal and advertising injury" caused by offenses committed;

is twice the Liability and Medical Expenses limit.

Subject to Paragraph **a.** or **b.** above, whichever applies, the Damage To Premises Rented To You Limit is the most we will pay for damages because of "property damage" to any one premises, while rented to you, or in the case of fire, while rented to you or temporarily occupied by you with permission of the owner.

The Limits of Insurance of Section **II** – Liability apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**E. Liability And Medical Expenses General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this policy.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this policy:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Separation Of Insureds**

Except with respect to the Limits of Insurance of Section **II – Liability**, and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**F. Liability And Medical Expenses Definitions**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding websites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semi-trailer

designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**(1)** The repair, replacement, adjustment or removal of "your product" or "your work"; or

**(2)** Your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph **(2)** above and supervisory, inspection or engineering services.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, on which are permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for

purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where they are licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law or motor vehicle registration law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis,

chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at the job site has been put to its intended use by any other person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

The "bodily injury" or "property damage" must occur away from premises you own or rent, unless your business includes the selling, handling or distribution of "your product" for consumption on premises you own or rent.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or

other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

## SECTION III – COMMON POLICY CONDITIONS (APPLICABLE TO SECTION I – PROPERTY AND SECTION II – LIABILITY)

**A. Cancellation**

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**a.** Five days before the effective date of cancellation if any one of the following conditions exists at any building that is Covered Property in this policy:

**(1)** The building has been vacant or unoccupied 60 or more consecutive days. This does not apply to:

**(a)** Seasonal unoccupancy; or

**(b)** Buildings in the course of construction, renovation or addition.

Buildings with 65% or more of the rental units or floor area vacant or unoccupied are considered unoccupied under this provision.

**(2)** After damage by a Covered Cause of Loss, permanent repairs to the building:

**(a)** Have not started, and

**(b)** Have not been contracted for,

within 30 days of initial payment of loss.

**(3)** The building has:

**(a)** An outstanding order to vacate;

**(b)** An outstanding demolition order; or

**(c)** Been declared unsafe by governmental authority.

**(4)** Fixed and salvageable items have been or are being removed from the building

and are not being replaced. This does not apply to such removal that is necessary or incidental to any renovation or remodeling.

**(5)** Failure to:

**(a)** Furnish necessary heat, water, sewer service or electricity for 30 consecutive days or more, except during a period of seasonal unoccupancy; or

**(b)** Pay property taxes that are owing and have been outstanding for more than one year following the date due, except that this provision will not apply where you are in a bona fide dispute with the taxing authority regarding payment of such taxes.

**b.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium.

**c.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

**4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**6.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Concealment, Misrepresentation Or Fraud**

This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**1.** This policy;

**2.** The Covered Property;

**3.** Your interest in the Covered Property; or

**4.** A claim under this policy.

**D. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**E. Inspections And Surveys**

**1.** We have the right to:

**a.** Make inspections and surveys at any time;

**b.** Give you reports on the conditions we find; and

**c.** Recommend changes.

**2.** We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

**a.** Are safe and healthful; or

**b.** Comply with laws, regulations, codes or standards.

**3.** Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**4.** Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**F. Insurance Under Two Or More Coverages**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**G. Liberalization**

If we adopt any revision that would broaden the coverage under this policy without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this policy.

**H. Other Insurance**

**1.** If there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance of Section **I** – Property.

**2.** Business Liability Coverage is excess over:

**a.** Any other insurance that insures for direct physical loss or damage; or

**b.** Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

**3.** When this insurance is excess, we will have no duty under Business Liability Coverage to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**I. Premiums**

**1.** The first Named Insured shown in the Declarations:

**a.** Is responsible for the payment of all premiums; and

**b.** Will be the payee for any return premiums we pay.

**2.** The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

**3.** With our consent, you may continue this policy in force by paying a continuation premium for each successive one-year period. The premium must be:

**a.** Paid to us prior to the anniversary date; and

**b.** Determined in accordance with Paragraph **2.** above.

Our forms then in effect will apply. If you do not pay the continuation premium, this policy will expire on the first anniversary date that we have not received the premium.

**4.** Undeclared exposures or change in your business operation, acquisition or use of locations may occur during the policy period that are not shown in the Declarations. If so, we may require an additional premium. That premium will be determined in accordance with our rates and rules then in effect.

**J. Premium Audit**

**1.** This policy is subject to audit if a premium designated as an advance premium is shown in the Declarations. We will compute the final premium due when we determine your actual exposures.

**2.** Premium shown in this policy as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit premiums is the date shown as the due date on the bill. If the sum of the

advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**3.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**K. Transfer Of Rights Of Recovery Against Others To Us**

**1.** Applicable to Businessowners Property Coverage:

If any person or organization to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

**a.** Prior to a loss to your Covered Property.

**b.** After a loss to your Covered Property only if, at time of loss, that party is one of the following:

**(1)** Someone insured by this insurance;

**(2)** A business firm:

**(a)** Owned or controlled by you; or

**(b)** That owns or controls you; or

**(3)** Your tenant.

You may also accept the usual bills of lading or shipping receipts limiting the liability of carriers.

This will not restrict your insurance.

**2.** Applicable to Businessowners Liability Coverage:

If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them. This condition does not apply to Medical Expenses Coverage.

**L. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

BUSINESSOWNERS
BP 03 03 02 23

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**A. Section I – Property** is amended as follows:

**1.** The following provisions are added to Paragraph **E.3. Duties In The Event Of Loss Or Damage** Property Loss Condition:

**a.** A claim or reopened claim for loss or damage caused by any peril is barred unless notice of claim is given to us in accordance with the terms of this Policy within one year after the date of loss. A reopened claim means a claim that we have previously closed but that has been reopened upon an insured's request for additional costs for loss or damage previously disclosed to us.

A supplemental claim is barred unless notice of the supplemental claim was given to us in accordance with the terms of the Policy within 18 months after the date of loss. A supplemental claim means a claim for additional loss or damage from the same peril which we have previously adjusted or for which costs have been incurred while completing repairs or replacement pursuant to an open claim for which timely notice was previously provided to us.

For claims resulting from hurricanes, tornadoes, windstorms, severe rain or other weather-related events, the date of loss is the date that the hurricane made landfall or the tornado, windstorm, severe rain or other weather-related event is verified by the National Oceanic and Atmospheric Administration.

This provision concerning time for submission of claim, supplemental claim or reopened claim does not affect any limitation for legal action against us as provided in this Policy under the Legal Action Against Us Condition including any amendment to that condition.

**b.** Any inspection or survey by us, or on our behalf, of property that is the subject of a claim, will be conducted with at least 48 hours' notice to you. The 48-hour notice may be waived by you.

**2.** Paragraph **E.4.b. Legal Action Against Us** Property Loss Condition is replaced by the following:

**b.** Legal action against us involving direct physical loss or damage to property must be brought within five years from the date the loss occurs.

**3.** Paragraph **E.5.g. Loss Payment** Property Loss Condition is replaced by the following:

**g.** Provided you have complied with all the terms of this Policy, we will pay for covered loss or damage upon the earliest of the following:

**(1)** Within 20 days after we receive the sworn proof of loss and reach written agreement with you;

**(2)** Within 30 days after we receive the sworn proof of loss and:

**(a)** There is an entry of a final judgment; or

**(b)** There is a filing of an appraisal award with us; or

**(3)** Within 60 days of receiving notice of an initial, reopened or supplemental claim, unless we deny the claim during that time or factors beyond our control prevent such payment. If a portion of the claim is denied, then the 60-day time period for payment of claim relates to the portion of the claim that is not denied.

Paragraph **(3)** applies only to a claim for building or contents coverage if the insured structure is 10,000 square feet or less and the Policy covers only locations in Florida.

**4. Sinkhole Collapse Coverage Removed**

Throughout the Policy, Sinkhole Collapse is deleted from the "specified causes of loss" and is no longer an exception to the Earth Movement Exclusion. Catastrophic Ground Cover Collapse is added instead as set forth in Paragraph **A.6.** of this Endorsement.

Further, this Policy does not insure against Sinkhole Loss as defined in Florida law unless an endorsement for Sinkhole Loss is made part of this Policy. However, if Sinkhole Loss causes Catastrophic Ground Cover Collapse, coverage is provided for the resulting Catastrophic Ground Cover Collapse even if an endorsement for Sinkhole Loss is not made part of this Policy.

**5.** If windstorm is a Covered Cause of Loss, and Covered Property is located in:

**a.** Monroe County; or

**b.** East of the west bank of the Intracoastal Waterway in:

  **(1)** Broward County;

  **(2)** Dade County;

  **(3)** Indian River County;

  **(4)** Martin County;

  **(5)** Palm Beach County; or

  **(6)** St. Lucie County;

the following applies:

If loss or damage to Covered Property is caused by or results from windstorm, the following exclusion applies:

**Windstorm Exterior Paint Or Waterproofing Exclusion**

We will not pay for loss or damage caused by windstorm to:

**a.** Paint; or

**b.** Waterproofing material;

applied to the exterior of Buildings unless the Building to which such loss or damage occurs also sustains other loss or damage by windstorm in the course of the same storm event. But such coverage applies only if windstorm is a Covered Cause of Loss.

When loss or damage to exterior paint or waterproofing material is excluded, we will not include the value of paint or waterproofing material to determine:

**a.** The amount of the Windstorm or Hail Deductible; or

**b.** The value of Covered Property.

**6.** The following is added to this Policy as a Covered Cause of Loss and as a "specified cause of loss". However, as a "specified cause of loss", the following does not apply to the Additional Coverage – Collapse.

**Catastrophic Ground Cover Collapse**

We will pay for direct physical loss or damage to Covered Property caused by or resulting from catastrophic ground cover collapse, meaning geological activity that results in all of the following:

**a.** The abrupt collapse of the ground cover;

**b.** A depression in the ground cover clearly visible to the naked eye;

**c.** "Structural damage" to the building, including the foundation; and

**d.** The insured structure being condemned and ordered to be vacated by the governmental agency authorized by law to issue such an order for that structure.

© Insurance Services Office, Inc., 2022

However, damage consisting merely of the settling or cracking of a foundation, structure or building does not constitute loss or damage resulting from a catastrophic ground cover collapse.

The Earth Movement Exclusion and the Collapse Exclusion do not apply to coverage for Catastrophic Ground Cover Collapse.

Coverage for Catastrophic Ground Cover Collapse does not increase the applicable Limit of Insurance. Regardless of whether loss or damage attributable to catastrophic ground cover collapse also qualifies as Sinkhole Loss or Earthquake (if either or both of those causes of loss are covered under this Policy), only one Limit of Insurance will apply to such loss or damage.

**7.** For the purposes of this Endorsement, the following is added to the **Definitions** in **Section I – Property:**

"Structural damage" means a covered building, regardless of the date of its construction, has experienced the following:

**a.** Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Florida Building Code, which results in settlement related damage to the interior such that the interior building structure or members become unfit for service or represent a safety hazard as defined within the Florida Building Code;

**b.** Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 or the Florida Building Code, which results in settlement related damage to the primary structural members or primary structural systems that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those primary structural members or primary structural systems exceed one and one-third the nominal strength allowed under the Florida Building Code for new buildings of similar structure, purpose or location;

**c.** Damage that results in listing, leaning or buckling of the exterior load bearing walls or other vertical primary structural members to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;

**d.** Damage that results in the building, or any portion of the building containing primary structural members or primary structural systems, being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code; or

**e.** Damage occurring on or after October 15, 2005, that qualifies as "substantial structural damage" as defined in the Florida Building Code.

**B. Section III – Common Policy Conditions** is amended as follows:

**1.** Paragraph **A.2. Cancellation** is replaced by the following:

**2. Cancellation For Policies In Effect 60 Days Or Less**

**a.** If this Policy has been in effect for 60 days or less, we may cancel this Policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the specific reasons for cancellation, at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(2)** 20 days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:

**(a)** A material misstatement or misrepresentation; or

**(b)** A failure to comply with underwriting requirements established by the insurer.

**b.** We may not cancel:

**(1)** On the basis of property insurance claims that are the result of an act of God, unless we can demonstrate, by claims frequency or otherwise, that you have failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or

**(2)** Solely on the basis of a single property insurance claim which is the result of water damage, unless we can demonstrate that you have failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.

**2.** Paragraph **A.5. Cancellation** is replaced by the following:

**5.** If this Policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. If the return premium is not refunded with the notice of cancellation or when this Policy is returned to us, we will mail the refund within 15 working days after the date cancellation takes effect, unless this is an audit policy.

If this is an audit policy, then, subject to your full cooperation with us or our agent in securing the necessary data for audit, we will return any premium refund due within 90 days of the date cancellation takes effect. If our audit is not completed within this time limitation, then we shall accept your own audit, and any premium refund due shall be mailed within 10 working days of receipt of your audit.

The cancellation will be effective even if we have not made or offered a refund.

**3.** The following is added to Paragraph **A. Cancellation:**

**7. Cancellation For Policies In Effect For More Than 60 Days**

**a.** If this Policy has been in effect for more than 60 days, we may cancel this Policy only for one or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** The Policy was obtained by a material misstatement;

**(3)** In the event of failure to comply, within 60 days after the effective date of coverage, with underwriting requirements established by us before the effective date of coverage;

**(4)** There has been a substantial change in the risk covered by the Policy;

**(5)** The cancellation is for all insureds under such policies for a given class of insureds;

**(6)** On the basis of property insurance claims that are the result of an act of God, if we can demonstrate, by claims frequency or otherwise, that you have failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property;

**(7)** On the basis of a single property insurance claim which is the result of water damage, if we can demonstrate that you have failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property; or

**(8)** The cancellation of some or all of our policies is necessary to protect the best interests of the public or policyholders and such cancellation is approved by the Florida Office of Insurance Regulation.

**b.** If we cancel this Policy for any of these reasons, we will mail or deliver to the first Named Insured written notice of cancellation, accompanied by the specific reasons for cancellation, at least:

**(1)** 10 days before the effective date of cancellation if cancellation is for nonpayment of premium; or

**(2)** 45 days before the effective date of cancellation if cancellation is for one or more of the reasons stated in Paragraphs **7.a.(2)** through **7.a.(8)** above.

**4.** The following paragraphs are added:

**M. Nonrenewal**

**1.** If we decide not to renew this Policy, we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the specific reason for nonrenewal, at least 45 days prior to the expiration of the Policy.

**2.** Any notice of nonrenewal will be mailed or delivered to the first Named Insured at the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

**3.** We may not refuse to renew this Policy:

**a.** On the basis of property insurance claims that are the result of an act of God, unless we can demonstrate, by claims frequency or otherwise, that you have failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or

**b.** On the basis of filing of claims for sinkhole loss. However, we may refuse to renew this Policy if:

**(1)** The total of such property insurance claim payments for this Policy equals or exceeds the policy limits in effect on the date of loss for property damage to the covered building; or

**(2)** You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based.

**c.** Solely on the basis of a single property insurance claim which is the result of water damage, unless we can demonstrate that you have failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.

**4.** Notwithstanding the provisions of Paragraph **B.4.M.3.,** we may refuse to renew this Policy if this Policy includes Sinkhole Loss Coverage. If we nonrenew this Policy for purposes of removing Sinkhole Loss Coverage, pursuant to section 627.706, Florida Statutes, we will offer you a policy that includes catastrophic ground cover collapse coverage.

**5.** Notwithstanding the provisions of Paragraph **B.4.M.3.,** we may refuse to renew this Policy if nonrenewal of some or all of our policies is necessary to protect the best interests of the public or policyholders and such nonrenewal is approved by the Florida Office of Insurance Regulation.

**N.** The following changes apply only to Information Security Protection Endorsement **BP 15 07** if it is attached to this Policy:

**1.** Paragraph **(2)** of Insuring Agreement **d. Security Breach Liability** is replaced by the following:

**(2)** We will pay for "defense expenses" as a result of a "claim" in the form of a "regulatory proceeding" first made against the insured during the "policy period" or during the applicable Extended Reporting Period, in response to a "wrongful act" or a series of "interrelated wrongful acts" covered under Paragraph **d.(1).**

**2.** Paragraph **d.** of the definition of "loss" in Paragraph **V.** is replaced by the following:

**d.** With respect to Insuring Agreements **d.** Security Breach Liability and **g.** Web Site Publishing Liability:

Compensatory damages, settlement amounts and costs awarded pursuant to judgments or settlements.

"Loss" does not include:

**(1)** Civil or criminal fines or penalties imposed by law;

**(2)** Punitive or exemplary damages;

**(3)** The multiplied portion of multiplied damages;

**(4)** Taxes;

**(5)** Royalties;

**(6)** The amount of any disgorged profits; or

**(7)** Matters that are uninsurable pursuant to law.

**5.** The following condition is added to **Section III – Common Policy Conditions:**

**Assignment**

**a.** Except as otherwise provided in Paragraph **5.b.** below, assignment of this Policy will not be valid unless we give our written consent.

**b.** Under this Policy, any attempt to assign post-loss property insurance benefits is void, invalid and unenforceable. Post-loss insurance benefits may not be assigned, in whole or in part, with the exception of:

    **(1)** An assignment, transfer or conveyance granted to a subsequent purchaser of the property with an insurable interest in the property following a loss;

    **(2)** A power of attorney that grants to a management company, family member, guardian or similarly situated person of an "insured" the authority to act on behalf of an "insured" as it relates to a property claim under this Policy; or

    **(3)** Liability coverage under this Policy.

© Insurance Services Office, Inc., 2022

**BUSINESSOWNERS**
**BP 04 17 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following exclusion is added to Paragraph **B.1. Exclusions – Applicable To Business Liability Coverage** in **Section II – Liability:**

This insurance does not apply to "bodily injury" or "personal and advertising injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" or "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraph **(a), (b)** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraph **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

 © Insurance Services Office, Inc., 2009

BUSINESSOWNERS
BP 15 05 05 14

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# Exclusion – Access Or Disclosure Of Confidential Or Personal Information And Data-Related Liability – Limited Bodily Injury Exception Not Included

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**A.** Exclusion **B.1.q.** of **Section II – Liability** is replaced by the following:

This insurance does not apply to:

**q. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

**(1)** Damages, other than damages because of "personal and advertising injury", arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

As used in this exclusion, electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

 © Insurance Services Office, Inc., 2013

**B.** The following is added to Paragraph **B.1.p. Personal And Advertising Injury** Exclusion of **Section II – Liability:**

This insurance does not apply to:

**p. Personal And Advertising Injury**

"Personal and advertising injury":

Arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

© Insurance Services Office, Inc., 2013

**BUSINESSOWNERS**
**BP 15 60 02 21**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CYBER INCIDENT EXCLUSION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**Section I – Property** is amended as follows:

**A.** The following exclusion is added to Paragraph **B. Exclusions:**

We will not pay for loss or damage caused directly or indirectly by the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**Cyber Incident**

**1.** Unauthorized access to or use of any computer system (including "electronic data").

**2.** Malicious code, virus or any other harmful code that is directed at, enacted upon or introduced into any computer system (including "electronic data") and is designed to access, alter, corrupt, damage, delete, destroy, disrupt, encrypt, exploit, use or prevent or restrict access to or the use of any part of any computer system (including "electronic data") or otherwise disrupt its normal functioning or operation.

**3.** Denial of service attack which disrupts, prevents or restricts access to or use of any computer system, or otherwise disrupts its normal functioning or operation.

**B. Exceptions And Limitations**

**1. Fire Or Explosion**

If a cyber incident as described in Paragraphs **A.1.** through **A.3.** of this exclusion results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**2. Additional Coverage**

The exclusion in Paragraph **A.** does not apply to the extent that coverage is provided in the:

**a.** Additional Coverage – Electronic Data; or

**b.** Additional Coverage – Interruption Of Computer Operations.

**3. Computer Fraud And Funds Transfer Fraud Endorsement**

The exclusion in Paragraph **A.** does not apply to the Computer Fraud And Funds Transfer Fraud endorsement when attached to your policy.

**4. Electronic Commerce Endorsement**

The exclusion in Paragraph **A.** does not apply to the Electronic Commerce (E-Commerce) endorsement when attached to your policy.

**5. Information Security Protection Endorsement**

The exclusion in Paragraph **A.** does not apply to the Information Security Protection Endorsement when attached to your policy.

**C. Vandalism**

The following is added to Vandalism:

Vandalism does not include a cyber incident as described in Paragraph **A.**

© Insurance Services Office, Inc., 2020

**BUSINESSOWNERS**
**BP 15 91 12 23**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – PERFLUOROALKYL AND POLYFLUOROALKYL SUBSTANCES (PFAS)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**Section II – Liability** is amended as follows:

**A.** The following is added to Paragraph **B. Exclusions:**

This insurance does not apply to:

**Perfluoroalkyl And Polyfluoroalkyl Substances**

**a.** "Bodily injury" or "property damage" which would not have occurred, or "personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged, threatened or suspected inhalation, ingestion, absorption, consumption, discharge, dispersal, seepage, migration, release or escape of, contact with, exposure to, existence of, or presence of, any "perfluoroalkyl or polyfluoroalkyl substances".

**b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "perfluoroalkyl or polyfluoroalkyl substances", by any insured or by any other person or entity.

**B.** The following is added to Paragraph **F. Liability And Medical Expenses Definitions:**

"Perfluoroalkyl or polyfluoroalkyl substances" means any:

**1.** Chemical or substance that contains one or more alkyl carbons on which hydrogen atoms have been partially or completely replaced by fluorine atoms, including but not limited to:

**a.** Polymer, oligomer, monomer or nonpolymer chemicals and their homologues, isomers, telomers, salts, derivatives, precursor chemicals, degradation products or by-products;

**b.** Perfluoroalkyl acids (PFAA), such as perfluorooctanoic acid (PFOA) and its salts, or perfluorooctane sulfonic acid (PFOS) and its salts;

**c.** Perfluoropolyethers (PFPE);

**d.** Fluorotelomer-based substances; or

**e.** Side-chain fluorinated polymers; or

**2.** Good or product, including containers, materials, parts or equipment furnished in connection with such goods or products, that consists of or contains any chemical or substance described in Paragraph **B.1.**

| This endorsement modifies insurance provided under the following: |
|---|
| **NON PROFIT MANAGEMENT LIABILITY POLICY** |

# FLORIDA STATE AMENDATORY ENDORSEMENT

To be attached to and form a part of all Non Profit Management Liability Policies written in the state of Florida.

It is hereby agreed that the following sections are amended and supersede any provision to the contrary:

The General Terms and Conditions, Section VIII. CHANGES IN EXPOSURE, "Takeover of the Named Insured", Item 3. is deleted and replaced by the following:

Right to Purchase

3. The **Named Insured** shall have the right to purchase an Extended Reporting Period, subject to Section II. EXTENDED REPORTING PERIOD herein, to report **Claims** arising out of **Wrongful Acts** occurring prior to the effective date of any **Takeover**.

It is further agreed that the any reference to "Retention" in the General Terms and Conditions, Directors and Officers Coverage Part, Employment Practices Coverage Part, or Fiduciary Liability Coverage Part shall be replaced by "Deductible"

All other terms and conditions of this **Policy** remain unchanged.  This endorsement is a part of your **Policy** and takes effect on the effective date of your **Policy** unless another effective date is shown.

| **Non-Profit Management Liability Policy** | **Directors and Officers Coverage Part** |

In consideration of payment of the premium and subject to the Policy Declarations, General Terms and Conditions, and the limitations, conditions, provisions and all other terms of this **Coverage Part**, the **Company** and the **Insureds** agree as follows:

Words that are in bold have special meaning and are defined in Section III. DEFINITIONS of this **Coverage Part**, or in Section I. DEFINITIONS of the General Terms and Conditions, incorporated in or attached to this **Coverage Part**, as applicable.

I.  INSURING AGREEMENTS

   A.  Individual Insured – Non-Indemnified Coverage

   The **Company** will pay, on behalf of an **Individual Insured**, **Loss** and **Defense Costs** resulting from a **Claim** first made against an **Individual Insured** during the **Policy Period**, or Extended Reporting Period, if applicable, to the extent such **Individual Insured** is not indemnified by the **Organization** for such **Loss** and **Defense Costs**.

   B.  Individual Insured – Indemnified Coverage

   The **Company** will pay, on behalf of the **Organization**, **Loss** and **Defense Costs** resulting from a **Claim** first made against an **Individual Insured** during the **Policy Period**, or Extended Reporting Period, if applicable, but only to the extent the **Organization** indemnifies such **Individual Insured** for such **Loss** and **Defense Costs** as permitted or required by law.

   C.  Organization Coverage

   The **Company** will pay, on behalf of the **Organization**, **Loss** and **Defense Costs** resulting from a **Claim** first made against the **Organization** during the **Policy Period**, or the Extended Reporting Period, if applicable.

II.  INDIVIDUAL INSURED – NON-INDEMNIFIED COVERAGE ADDITIONAL LIMIT

   "Dedicated Limit – Insuring Agreement A"

   The **Company** shall pay an additional limit of liability, not to exceed an aggregate of $1,000,000 per **Policy Period**, solely for **Loss** covered under Section I. INSURING AGREEMENT, Subsection A. Individual Insured Non-Indemnified Coverage. This additional limit of liability shall be paid only after the applicable Limit of Liability for Individual Insured – Non-Indemnified Coverage of the Directors & Officers Liability **Coverage Part** shown in the Policy Declarations is completely exhausted by payment of **Loss**.

III.    DEFINITIONS

**Claim**                                    means any:

1. written demand for monetary damages or non-monetary relief, including injunctive relief;
2. civil proceeding commenced by service of a complaint or similar pleading;
3. criminal proceeding commenced by the return of an indictment;
4. administrative or regulatory proceeding commenced by the filing of a formal written notice of charges, notice of violations, notice of investigation, cease and desist or similar action;
5. arbitration, mediation or other alternative dispute resolution proceeding in which the **Insured** is obligated to participate  if the **Insured** agrees to participate with the **Company's** prior written consent; or
6. other proceeding initiated before any governmental body which is authorized to render an enforceable judgment, order for monetary damages or other relief;

received by, or brought or initiated against any **Insured** alleging a **Wrongful Act**, including any appeal therefrom.

**Claim** also means any:

7. written request, first received by an **Insured** to toll or waive a statute of limitations relating to a potential **Claim** as described in subparagraphs 1. through 6. above.

A **Claim** shall be deemed made on the earliest of the date of service upon, or receipt by, any **Insured** of a potential **Claim** as described in subparagraphs 1. through 7. above.

**Defense Costs**                            means:

1. reasonable and necessary legal fees and expenses incurred by the **Company**, or by any attorney designated by the **Company** to defend the **Insured**; and

2. all other fees, costs, costs of attachment or similar bonds (without any obligation on the **Company's** part to apply for or furnish such bonds);

resulting from the investigation, adjustment, defense and appeal of a **Claim**. **Defense Costs** does not include **Loss** or the **Insured's** salaries, wages, overhead or benefits expenses.

**Employed Attorney Services**    means legal services provided by any **Individual Insured**, but only to the extent that such services are performed directly to the **Organization** and in the **Individual Insured's** capacity as an **Employee** of the **Organization**.

Any services rendered by an **Individual Insured** for any party other than the **Organization** shall not constitute **Employed Attorney Services**.

**Employee**    means any natural person whose labor or service is engaged and directed by the **Organization** while performing duties related to the conduct of the **Organization's** business and includes leased, part-time, seasonal and temporary workers, independent contractors, volunteers and interns.

**Executive**    means any natural persons who are directors, trustees, officers, managing members, advisory board members or committee members or any equivalent position of the **Organization**.

**Excess Benefit Transaction**    means a transaction as defined in Internal Revenue Code, Title 26 §4958 (c)(1).

**Excess Benefit Transaction Excise Tax**    means any excise tax imposed by the Internal Revenue Service, pursuant to Section 4958(a)(2) of the Internal Revenue Code, 26 U.S.C. § 4958(a)(2), against an **Individual Insured** who participated as an **Organization Manager** in connection with an **Excess Benefit Transaction**.

**Individual Insured**    means any past, present or future:

1. **Executive**;
2. **Employee**; or

3.  the estates, heirs, legal representatives or assigns of 1. and 2., above in the event of their death, incapacity or bankruptcy.

**Loss**                    means the amount the **Insured** becomes legally obligated to pay as a result of a **Claim**, including:

1.  damages, settlements and judgments;
2.  pre-judgment and post judgment interest;
3.  punitive or exemplary damages to the extent such damages are insurable under applicable law, statute or regulation;
4.  the multiplied portion of any multiple damage award to the extent such damages are insurable under applicable law, statute or regulation; and
5.  any ten percent (10%) **Excess Benefit Transaction Excise Tax** assessed by the Internal Revenue Service against any **Individual Insured**, subject to a $100,000 maximum sublimit of liability per **Policy Period** for **Loss** and **Defense Costs**, combined provided, however that indemnification by the **Organization** for such taxes is not expressly prohibited in the bylaws, certificate of incorporation or other governing documents of the **Organization**. This sublimit of liability is part of and not in addition to the applicable Directors and Officers Limit of Liability as set forth on the Policy Declarations.

For the purpose of determining the insurability of damages in items 3. and 4. above, the laws of the jurisdiction most favorable to the insurability of such damages shall control; provided that such jurisdiction has a substantial relationship to the relevant **Insured** or to the **Claim** giving rise to the damages.

However, **Loss** does not include:

1.  fines, penalties, sanctions and forfeitures;
2.  taxes, except for any ten percent (10%) **Excess Benefit Transaction Excise Tax** as outlined in subparagraph 5. above of this definition of "**Loss**", or as otherwise provided by endorsement;
3.  any amount uninsurable under the law pursuant

to which this **Policy** is construed;

4. cost of compliance with any order for, grant of or agreement to provide non-monetary or injunctive relief;

5. any unpaid salary, wages, commissions, severance, bonus or incentive compensation that is due or alleged to be due to any person; or

6. any amount for which an **Individual Insured** is absolved from payment by reason of any covenant, agreement or court order.

**Organization Manager**    means a person or persons described in Internal Revenue Code, Title 26 §4958(f).

**Outside Entity**    means any not-for-profit organization that qualifies as such under Section 501(c) of the Internal Revenue Code of 1986 (as amended), that is not an **Insured**.

**Outside Capacity**    means the service, other than **Employed Attorney Services,** of an **Individual Insured** while acting in the capacity of director, officer, trustee, managing member or any equivalent position of an **Outside Entity,** but only if such service is provided on behalf of the **Outside Entity** with the specific knowledge, request, consent or direction of the **Named Insured**.

**Personal Injury Wrongful Act**    means any actual or alleged false arrest, wrongful detention, malicious prosecution, invasion of privacy, wrongful entry or eviction, libel, slander or defamation.

**Pollutants**    means any solid, liquid, gaseous, bacterial, fungal, electromagnetic, thermal or other substance, smoke, vapor, soot, fumes, acids, alkalis, chemicals, toxic materials, 'Volatile Organic Compound', 'Organic Pathogen', 'Silica', asbestos, lead and gases therefrom, radon, combustion byproducts, noise and 'Waste'. Specific examples include, but are not limited to diesel, kerosene, and other fuel oils, carbon monoxide, and other exhaust gases, mineral spirits and other solvents, tetrachloroethylene, perchloroethylene (PERC), trichloroethylene (TCE), methylene chloroform, and other dry cleaning chemicals, chlorofluorocarbons, chlorinated hydrocarbons, adhesives, pesticides, insecticides, and all substances specifically listed, identified, or described by one or more of the following references:

1. Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) Priority List Hazardous Substances (1997 and all subsequent editions); or
2. Agency for Toxic Substances And Disease Registry ToxFAQs™; or
3. U.S. Environmental Protection Agency EMCI Chemical References Complete Index.

For the purposes of this definition;

1. 'Volatile Organic Compound' means any compound which discharges organic gases as it decomposes or evaporates, examples of which include but are not limited to formaldehyde, pesticides, adhesives, construction materials made with organic chemicals, solvents, paint varnish and cleaning products.
2. 'Organic Pathogen' means any organic irritant or contaminant, including but not limited to mold, fungus, bacteria or virus, including but not limited to their byproduct such as mycotoxin, mildew, or biogenic aerosol.
3. 'Silica' means silica in any form and any of its derivatives, including but not limited to silica dust, silicon dioxide, crystalline silica, quartz, or non-crystalline (amorphous) silica.
4. 'Waste' means any property intended to be disposed, recycled, reused or reclaimed by the owner or user thereof.

**Publisher Wrongful Act**     means any infringement of copyright, trademark, unauthorized use of title, or plagiarism or misappropriation of ideas.

**Wrongful Act**     means any:

1. actual or alleged act, error, omission, misstatement, misleading statement, neglect, or breach of duties;
2. **Personal Injury Wrongful Act**;
3. **Publisher Wrongful Act**; or
4. **Employed Attorney Services**

committed or allegedly committed by:

    a.  the **Organization**;

    b.  any **Individual Insured,** arising solely from duties conducted on behalf of the **Organization** or asserted against an **Individual Insured** because of 1. above; or

    c.  any **Individual Insured** while acting in an **Outside Capacity**.

---

## IV.  EXCLUSIONS

A. The **Company** shall not be liable to make payment for **Loss** or **Defense Costs** in connection with any **Claim** made against the **Insured** arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged:

Conduct

1. deliberately fraudulent act, omission, criminal act, or willful violation of any statute or regulation by any **Insured**; or
2. any **Insured** having gained any profit, remuneration or other advantage to which such **Insured** was not legally entitled;

provided that this exclusion will not apply to **Defense Costs** incurred until:

    a.  a final, non-appealable adjudication in any underlying proceeding or action establishes such conduct; or

    b.  the **Insured** has admitted, stipulated or pleaded no contest to such conduct;

Bodily Injury/Property Damage

1. bodily injury, assault, battery, sickness, disease, death, mental anguish, humiliation or emotional distress of any person; or
2. damage to or destruction of any tangible property including any resulting loss of use thereof;

provided that this exclusion shall not apply to any mental anguish, humiliation or emotional distress asserted in an otherwise covered **Claim** alleging a **Personal Injury Wrongful Act**.

Employee Benefits

pension, profit sharing, welfare benefit or other employee benefit program established in whole or in part for the benefit of any **Individual Insured**, or based upon, arising out of or in any way involving the Employee Retirement Income Security Act of 1974 (or

any amendments thereof or regulations promulgated there under) or similar provisions of any federal, state or local statutory law or common law;

Insured vs Insured

**Claim** brought by or on behalf of any **Insured**; provided that this exclusion shall not apply to:

1. any derivative action on behalf of, or in the name or right of the **Organization,** if such action is brought and maintained independent of and without the solicitation, assistance, participation or intervention of any **Insured**;
2. any **Claim** in the form of a cross claim, third party claim or other claim for contribution or indemnity by any **Individual Insured** which is part of or results directly from a **Claim** which is not otherwise excluded under this **Policy**;
3. any **Claim** brought or maintained by or on behalf of a bankruptcy or insolvency trustee, examiner, liquidator, receiver, rehabilitator, or creditors committee for an **Organization**; or
4. any **Claim** brought and maintained by or on behalf of any former **Executive**, but only if such **Claim** does not arise out of, directly or indirectly result from, is in consequence of, or in any way involves any **Wrongful Act**, responsibilities, actions or failure to act by any **Insured** during the tenure of service of such former **Executive**.

Employment Practices

refusal to employ, termination of employment, or employment related coercion, demotion, evaluation, reassignment, discipline, workplace conditions, false imprisonment, defamation, harassment, humiliation, or discrimination of employment, or other employment-related practices, policies, acts or omissions or sexual harassment by any **Insured** against any person(s) or entity; or negligence involving any of the foregoing;

it being understood that this exclusion applies whether the **Insured** may be held liable as an employer or in any other capacity and to any obligation to contribute with or indemnify another with respect to such **Claim**;

Discrimination

discrimination, including but not limited to discrimination based on religion, race, creed, color, sex, age, marital status, sexual preference, pregnancy,

handicap or disability;

| | |
|---|---|
| Outside Entity vs. Insured | **Claim** made by or on behalf of an **Outside Entity** or one or more of the **Outside Entity's** directors, officers, trustees, managing members or any equivalent position against an **Individual Insured** acting in an **Outside Capacity**, provided, however that this exclusion shall not apply to: |

1. any **Claim** brought derivatively on behalf of the **Outside Entity,** independently and without the direct solicitation, participation, intervention or assistance of the **Outside Entity** or any **Insured** in an **Outside Capacity**;
2. any **Claim** in the form of a cross claim, third party claim or other claim for contribution or indemnity by an **Insured** acting in an **Outside Capacity** and which is part of or results directly from a **Claim** which is not otherwise excluded under this **Policy**; and
3. any **Claim** brought or maintained by or on behalf of a bankruptcy or insolvency trustee, examiner, liquidator, receiver, rehabilitator, or creditors committee for an **Outside Entity** against an **Insured** acting in an **Outside Capacity** for such **Outside Entity**.

Pollution

1. discharge, emission, release, seepage, migration, dispersal or escape of **Pollutants** or any threat thereof, including nuclear reaction, radiation or contamination; or
2. treatment, removal or disposal of any **Pollutants**;
3. regulation, order, direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any **Pollutants**; or any voluntary decision to do so; or
4. actual or alleged property damage including loss of use, bodily injury, sickness, disease or death of any person, or financial loss to an **Organization** or **Outside Entity**, their security holders, or their creditors resulting from any of the aforementioned matters in 1., 2., or 3. above of this Exclusion.

| | |
|---|---|
| Prior or Pending Litigation | litigation, demand, claim, arbitration, decree, judgment, proceeding, or investigation against any **Insured**, which was pending on or prior to the Prior or Pending Litigation date referenced on the Policy Declarations, or any such action based on the same or essentially the same fact, circumstance, matter, situation, transaction or event underlying or alleged therein; |

Prior Notice

1. fact, circumstance, matter, situation, transaction, event, or **Wrongful Act** that, before the effective date of this **Policy**, was the subject of any notice given under any similar policy of insurance; or
2. other fact, circumstance, matter, situation, transaction, event, or **Wrongful Act** whenever occurring, which together with a fact, circumstance, matter, situation, transaction, event, or **Wrongful Act** described in subparagraph 1. above, would constitute **Interrelated Wrongful Acts**;

Prior Wrongful Acts of Subsidiaries

1. **Wrongful Act** committed by an **Individual Insured** of any **Subsidiary**, or by such **Subsidiary**, occurring before the date such entity became a **Subsidiary**; or
2. other fact, circumstance, matter, situation, transaction, event, or **Wrongful Act** whenever occurring, which together with a fact, circumstance, matter, situation, transaction, event, or **Wrongful Act** described in subparagraph 1. above, would constitute **Interrelated Wrongful Acts**;

Professional Services

rendering or failure to render legal (except **Employed Attorney Services**), medical, psychological, counseling services or referrals, if the **Claim** is brought by or on behalf of any individual and/or entity for whom such services were, now are, or shall be performed;

provided that this exclusion shall not apply to that part of a **Claim** against an **Individual Insured** which alleges that the **Individual Insured**, in his or her capacity as such, failed to supervise those who performed such services.

B.  The **Company** shall not be liable to make payment for **Loss** or **Defense Costs** in connection with any **Claim** made against the **Insured** for actual or alleged:

Contract

liability of the **Insured** under any express contract or agreement to which an **Organization** is a party, provided that this exclusion shall not apply to:

1.  the extent that such **Organization** would have been liable in the absence of such contract or agreement; and
2.  any **Claim** against an **Individual Insured**.

No **Wrongful Act** of one or more **Insureds** shall be imputed to any other **Insured** for the purpose of determining the applicability of any of the above exclusions in Section A. or B. above.

V.  ORDER OF PAYMENTS

In the event of **Loss** arising from a **Claim** for which payment is concurrently due under Insuring Agreement A., Individual Insured - Non-Indemnified Coverage, and one or more of the other Insuring Agreements of this **Coverage Part**, the **Company** shall:

1.  first pay **Loss** for which coverage is provided under Insuring Agreement A., Individual Insured - Non-Indemnified Coverage; then
2.  with respect to whatever remaining amount of the Limit of Liability is available after payment above, pay such **Loss** for which coverage is provided under any other Insuring Agreement.

Except as otherwise provided above, the **Company** may pay covered **Loss** as it becomes due under this **Coverage Part** without regard to the potential for other future payment obligations under this **Coverage Part**.

VI.  LIFETIME OCCURRENCE REPORTING PROVISION

A.  If this Policy is cancelled or not renewed by the **Named Insured** for any reason other than being sold, acquired, or declaring bankruptcy, each **Individual Insured** who did not serve as such at the time of the cancellation or non-renewal, shall be provided with an unlimited extension of time to report any **Claim** first

made against such **Individual Insured** after the effective date of such cancellation or non-renewal, subject to the following conditions:

1. the **Claim** results from a **Wrongful Act** committed by the **Individual Insured** before the effective date of cancellation or non-renewal; and
2. the **Wrongful Act** was actually or allegedly committed during a **Policy Period** of a **Policy** issued by the **Company**; and
3. such **Individual Insured** was serving in such capacity during the **Policy Period** of a **Policy** issued by the **Company**; and
4. no Directors & Officers Liability policy, or similar policy providing essentially the same type of coverage, or extended reporting period, is in effect at the time the **Claim** is first made against such **Individual Insured**; and
5. the **Claim** is not otherwise excluded by the **Policy** issued by the **Company** in effect at the time the **Wrongful Act** actually or allegedly occurred; such **Policy** shall be the **Policy** under which coverage is applicable including all terms, conditions, limits, retentions, and endorsements therein.
6. the **Company** will have written continuous coverage for **Named Insured** from the effective date of the first **Policy** the **Company** issued to the date of cancellation or non-renewal of this **Policy**.

B. The LIFETIME OCCURRENCE REPORTING PROVISION described herein shall not apply to any **Claim** made against any **Individual Insured** caused by, arising or resulting, directly or indirectly from or in consequence of the **Individual Insured's** serving in an **Outside Capacity** for an **Outside Entity**.

_____

VII.   TIMELY NOTICE AND RESOLUTION INCENTIVE

Retention Forgiveness

In the event of a **Claim**, the **Company** shall waive the applicable retention under this **Coverage Part**, up to a maximum of  $10,000, if each of the following conditions are met:

1. The **Claim** is reported to the **Company** within thirty (30) days of first receipt by an **Insured**; and
2. The **Company** successfully negotiates a

settlement of the **Claim** within the Limits of Liability of this **Coverage Part**; and

3. The **Insured** consents to the settlement of the **Claim** without condition within thirty (30) days after notice of the settlement is provided to the **Insured** by the **Company**; and

4. Settlement of the **Claim** is finalized by the **Company** within ninety (90) days of the **Claim** being first reported to the **Company**.

---

VIII.   OUTSIDE DIRECTORSHIP PROVISION

In the event a **Claim** is made against any **Individual Insured** arising out of their service as a director, officer, trustee, managing member or any equivalent positions of an **Outside Entity**, coverage afforded under this **Policy** shall be excess of any indemnification provided by the **Outside Entity** and any insurance provided to the **Outside Entity** which covers its directors, trustees, officers, managing members or any equivalent position.

**Non-Profit Management Liability Policy**          **Employment Practices Coverage Part**

In consideration of payment of the premium and subject to the Policy Declarations, General Terms and Conditions, and the limitations, conditions, provisions and all other terms of this **Coverage Part**, the **Company** and the **Insureds** agree as follows:

Words that are in bold have special meaning and are defined in Section II. DEFINITIONS of this **Coverage Part**, or in Section I. DEFINITIONS of the General Terms and Conditions, incorporated in or attached to this **Coverage Part**, as applicable.

---

**I.    INSURING AGREEMENTS**

The **Company** will pay on behalf of an **Insured, Loss** and **Defense Costs** resulting from a **Claim** first made against an **Insured** during the **Policy Period** or during any Extended Reporting Period, if applicable, by or on behalf of:

A.  Employment Practices Liability

any **Employee** or applicant for employment for a **Wrongful Employment Act**; or

B.  Third Party Liability

any natural person, other than an **Employee**, for a **Wrongful Third Party Act**.

---

**II.    DEFINITIONS**

**Claim**

means any:

1.  written notice received by an **Insured** that any person or entity intends to hold such **Insured** responsible for a **Wrongful Act**, including a written demand for monetary or non-monetary relief, including injunctive relief;
2.  civil proceeding commenced by the service of a complaint or similar pleading;
3.  formal civil, administrative or regulatory proceeding or formal civil, administrative or regulatory investigation, including any such proceeding brought by or in association with the Equal Employment Opportunity Commission or any similar federal, state or local agency with jurisdiction over an **Organization's** employment practices;
4.  arbitration or mediation proceeding commenced by receipt of a demand for arbitration, demand for mediation or similar document; or
5.  Notice of Violation or Order to Show Cause or

written demand for monetary relief or injunctive relief, commenced by the receipt by an **Insured** of such Notice, Order or written demand, issued by the Office of Federal Contract Compliance Programs;

received by, or brought or initiated against any **Insured** alleging a **Wrongful Act**, including any appeal therefrom.

**Claim** also means any:
6. written request, first received by an **Insured** to toll or waive a statute of limitations relating to a potential **Claim** as described in subparagraphs 1. through 5. above.

A **Claim** shall be deemed made on the earliest of the date of service upon, or receipt by, any **Insured** of a potential **Claim** as described in subparagraphs 1. through 6. above.

Notwithstanding the foregoing, **Claim** shall not include any labor dispute or grievance proceeding, arbitration or other proceeding brought against any **Insured** pursuant to a collective bargaining agreement.

**Confidential Employee Information**

means any non-public, personally identifiable information regarding an **Employee**, collected, stored or transmitted by an **Organization**, for the purpose of establishing or maintaining an employment relationship.

**Defense Costs**

means:
1. reasonable and necessary legal fees and expenses incurred by the **Company**, or by any attorney designated by the **Company** to defend the **Insured**; and
2. all other fees, costs, costs of attachment or similar bonds (without any obligation on the **Company's** part to apply for or furnish such bonds);

resulting from the investigation, adjustment, defense and appeal of a **Claim**. **Defense Costs** does not include **Loss** or salaries, wages, overhead, benefits expenses of any **Individual Insured**.

**Employee**

means any natural person whose labor or service is engaged and directed by the **Organization** while performing duties related to the conduct of the **Organization's** business and

|  | includes leased, part-time, seasonal and temporary workers, independent contractors, volunteers and interns. |
|---|---|
| **Employee Benefits** | means perquisites, fringe benefits, deferred compensation or payments (including insurance premiums) in connection with an employee benefit plan, and any other payment to or for the benefit of an **Employee** arising out of the employment relationship. **Employee Benefits** shall not include salary, wages, commissions, or non-deferred cash incentive compensation. |
| **ERISA or any similar act** | means the Employee Retirement Income Security Act of 1974, as amended, or any similar common or statutory law of the United States, Canada or their states, territories or provinces or any other jurisdiction anywhere in the world. |
| **Executive** | means any natural persons who serve as directors, trustees, officers, managing members, advisory board members or committee members or any equivalent position of the **Organization**. |
| **Fair Labor Standards Act Violation** | shall mean any actual or alleged violation of the Fair Labor Standards Act, any amendments thereto or the provisions of any similar federal, state or local law regulating minimum wage, working hours, overtime, child labor, record keeping and other matters regulated under the federal Fair Labor Standards Act, including misrepresentation under these laws. **Fair Labor Standards Act Violation** does not mean any actual or alleged violation of the Equal Pay Act, any amendments thereto or the provisions of any similar federal, state or local law. |
| **Harassment** | means:<br><br>1. sexual harassment including unwelcome sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature that are made a condition of employment, are used as a basis for employment decisions, or create a work environment that is hostile, intimidating or offensive or that otherwise interferes with performance; or<br>2. other workplace harassment, including workplace bullying, which creates a work environment that is hostile, intimidating or offensive or that otherwise interferes with performance. |
| **Individual Insured** | means any past, present or future: |

1. **Executive**;
2. **Employee**; or
3. the estates, heirs, legal representatives or assigns of 1. and 2. above in the event of their death, incapacity or bankruptcy.

**Loss**

means the amount the **Insured** becomes legally obligated to pay as a result of a **Claim**, including:

1. damages, settlements, and judgments;
2. front pay and back pay;
3. pre-judgment and post judgment interest;
4. liquidated damages awarded by a court pursuant to a violation of the Equal Pay Act, the Age Discrimination in Employment Act and the Family Medical Leave Act, all as amended, or any rules or regulations promulgated thereunder, or similar provisions of any federal, state or local law, statute or regulation;
5. punitive or exemplary damages to the extent such damages are insurable under applicable law, statute or regulation;
6. the multiplied portion of any multiple damage award to the extent such damages are insurable under applicable law, statute or regulation; and
7. attorney's fees awarded by a court against an **Insured** to a person or entity bringing a **Claim** or agreed to by the **Company**, in writing, in connection with a settlement;

For the purpose of determining the insurability of 4., 5., or 6. above the laws of the jurisdiction most favorable to the insurability of such damages shall control; provided that such jurisdiction has a substantial relationship to the relevant **Insured** or to the **Claim** giving rise to the damages.

However, **Loss** does not include:

1. the cost of compliance with any order for, grant of, or agreement to provide non-monetary or injunctive relief;
2. costs associated with providing any accommodation for persons with disabilities or any other status which is protected under any applicable federal, state or local statutory or common law, including but not limited to the Americans with Disabilities Act, the

DO 101 (05-17)                                                                                      Page 4 of 10

Civil Rights Act of 1964, or any amendments to or rules or regulations promulgated thereunder;

3. any amounts uninsurable under the law pursuant to which this **Coverage Part** is construed;

4. civil or criminal fines, penalties, taxes, sanctions or forfeitures imposed on an **Insured** whether pursuant to law, statute, regulation or court rule;

5. future salary, wages, commissions or **Employee Benefits** of a person bringing a **Claim** who has been or shall be hired, promoted or reinstated to employment pursuant to a settlement, order, or other resolution of a **Claim**;

6. salary, wages, commissions, **Employee Benefits**, bonus or incentive compensation or other monetary payments which constitute severance payments or payments pursuant to a notice period;

7. **Employee Benefits** due or to become due or the equivalent value of such **Employee Benefits**, except with respect to any **Claim** for wrongful termination; or

8. any amount for which an **Individual Insured** is absolved from payment by reason of any covenant, agreement or court order.

**Retaliation**                means retaliatory treatment against an **Employee** because of:

1. the exercise of or attempt to exercise an **Employee's** rights under law or for otherwise engaging in any legally protected activity;

2. refusing to violate any law or opposing any unlawful practice;

3. having cooperated in a proceeding or investigation (including an internal investigation by an **Organization's** human resources department or legal department) into alleged unlawful activity by an **Insured**;

4. disclosing or threatening to disclose to a superior or any governmental agency any alleged violations of law by an **Insured** and/or the **Organization**;

5. filing any claim against the **Organization** under any federal, state or local whistleblower law including Federal False Claims Act, or Sarbanes-Oxley; or

6. **Employee** strikes or slowdowns.

**Wrongful Act**                means any **Wrongful Employment Act** or **Wrongful**

**Third Party Act**.

| | |
|---|---|
| **Wrongful Employment Act** | means any actual or alleged: |

1. violation of any federal, state or local laws (whether statutory or common) prohibiting discrimination in employment based on a person's race, color, religion, creed, genetic information, age, gender or gender identity, disability, marital status, national origin, pregnancy, HIV status, sexual orientation or preference, any protected military status, or any other status that is protected pursuant to any such laws;
2. **Harassment**;
3. **Retaliation**;
4. wrongful: termination, dismissal or discharge of employment, whether actual or constructive;
5. wrongful: demotion; denial of tenure; failure or refusal to hire or promote; denial of seniority; failure to employ; or wrongful or negligent employee reference;
6. wrongful employment-related: misrepresentation; defamation, humiliation, libel or slander; negligent evaluation; wrongful discipline; wrongful deprivation of career opportunity; negligent retention, supervision, hiring or training; emotional distress, mental anguish, invasion of privacy or false imprisonment;
   but only when alleged as part of a **Claim** for an act described in 1. through 5. above;
7. wrongful failure to adopt or enforce consistent employment-related corporate workplace policies and procedures arising from 1. through 6. above;
8. breach of any express or implied contract, including any contract arising out of any personnel manual, employee handbook, policy statement or other representation; or
9. unauthorized use or disclosure of **Confidential Employee Information**;

committed or allegedly committed by an **Organization** or by an **Individual Insured** while acting in his or her capacity as such by any means including the internet, social media, email, or telecommunications systems.

| | |
|---|---|
| **Wrongful Third Party Act** | means any actual or alleged: |

1. discrimination based on race, color, religion, creed, genetic information, age, gender or gender identity, disability, marital status, national origin, pregnancy, HIV status, sexual orientation or preference, any military protected status, or any other status that is protected pursuant to any federal, state or local statutory or common law;

2. harassment of either a sexual nature or other unwelcome conduct; or

3. violation of civil rights relating to such discrimination or harassment;

against any natural person, other than an **Employee**, committed or allegedly committed by an **Organization** or by an **Individual Insured** while acting in his or her capacity as such, by any means including the internet, social media or email, or telecommunication systems.

III.   EXCLUSIONS

A. The **Company** shall not be liable to make payment for **Loss** or **Defense Costs** in connection with any **Claim** made against the **Insured** for:

Bodily Injury/ Property Damage

any actual or alleged bodily injury, sickness, disease or death of any person, or damage to or destruction of any tangible property including any resulting loss of use; provided that this exclusion shall not apply to any mental anguish, emotional distress, invasion of privacy, humiliation, libel, slander or defamation asserted in an otherwise covered **Claim** alleging a **Wrongful Act**.

Violation of Law

any actual or alleged violation of:
1. **ERISA or any similar act** (except Section 510 of ERISA), or any other federal, state or local statutory or common law anywhere in the world governing any employee benefit program, policy, plan or arrangement of any type, including but not limited to laws governing retirement or pension benefit programs, welfare plans, insurance plans, employee stock options, employee stock ownership plans, employee stock purchase plans or deferred compensation programs;

2. the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), as amended or any other similar federal, state or

local statutory or regulatory law or common law anywhere in the world;

3. any law governing workers' compensation, unemployment insurance, social security, disability benefits or any other similar federal, state or local statutory or regulatory law or common law anywhere in the world;

4. the Occupational Safety and Health Act of 1970 (OSHA), as amended, or any other federal, state or local statutory or regulatory law or common law anywhere in the world governing workplace safety and health;

5. the Workers' Adjustment and Retraining Notification Act, Public Law 100-379 (1988), as amended, or any other federal, state or local statutory or regulatory law or common law anywhere in the world governing an employer's obligation to notify or bargain with others in advance of any facility closing or mass layoff; or

6. the National Labor Relations Act, as amended, or any other federal, state or local statutory or regulatory law or common law anywhere in the world governing employees' rights and employers' duties with respect to unions, bargaining, strikes, boycotts, picketing, lockouts or collective activities;

however, the foregoing shall not apply to any **Claim** alleging **Retaliation** (including any **Claim** alleging retaliation in violation of Section 510 of ERISA) or wrongful termination of employment whether actual or constructive, because of an **Employee's** exercise of a right pursuant to any such laws.

B. The **Company** shall not be liable to make payment for **Loss** or **Defense Costs** (except where otherwise noted) in connection with any **Claim** made against an **Insured** arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any actual or alleged:

Prior or Pending Litigation    litigation, demand, claim, arbitration, decree, judgment, proceeding, or investigation against any **Insured**, which was pending on or prior to the Prior or Pending Litigation date referenced on the Policy Declarations, or any such action based on the same or essentially the

same fact, circumstance, matter, situation, transaction or event underlying or alleged therein;

| | |
|---|---|
| Prior Notice | 1. fact, circumstance, matter, situation, transaction, event, or **Wrongful Act** that, before the effective date of this **Policy**, was the subject of any notice given under any similar policy of insurance; or<br>2. other fact, circumstance, matter, situation, transaction, event, or **Wrongful Act** whenever occurring, which together with a fact, circumstance, matter, situation, transaction, event, or **Wrongful Act** described in subparagraph 1. above, would constitute **Interrelated Wrongful Acts**; |
| Prior Wrongful Acts of Subsidiaries | 1. **Wrongful Act** committed by an **Individual Insured** of any **Subsidiary**, or by such **Subsidiary**, occurring before the date such entity became a **Subsidiary**; or<br>2. other fact, circumstance, matter, situation, transaction, event, or **Wrongful Act** whenever occurring, which together with a fact, circumstance, matter, situation, transaction, event, or **Wrongful Act** described in subparagraph 1. above, would constitute **Interrelated Wrongful Acts**; |
| Wage and Hour | **Fair Labor Standards Act Violation** |
| Breach of Employment Contract | breach of any express employment contract or express employment agreement; provided that this exclusion shall not apply to:<br>1. **Loss** to the extent an **Insured** would have been liable for such **Loss** in the absence of such contract or agreement; or<br>2. **Defense Costs**. |

## IV. LIFETIME OCCURRENCE REPORTING PROVISION

A. If this Policy is cancelled or not renewed by the **Named Insured** for any reason other than being sold, acquired, or declaring bankruptcy, each director or officer who did not serve as such at the time of the cancellation or non-renewal, shall be provided with an unlimited extension of time to report any **Claim** first made against such

director or officer after the effective date of such cancellation or non-renewal, subject to the following conditions:

1. the **Claim** results from a **Wrongful Act** committed by the director or officer before the effective date of cancellation or non-renewal; and
2. the **Wrongful Act** was actually or allegedly committed during a **Policy Period** of a **Policy** issued by the **Company**; and
3. such director or officer was serving in such capacity during the **Policy Period** of a **Policy** issued by the **Company**; and
4. no Directors & Officers Liability policy, or similar policy providing essentially the same type of coverage, or extended reporting period, is in effect at the time the **Claim** is first made against such director or officer; and
5. the **Claim** is not otherwise excluded by the Policy issued by the **Company** in effect at the time the **Wrongful Act** actually or allegedly occurred; such **Policy** shall be the **Policy** under which coverage is applicable including all terms, conditions, limits, retentions, and endorsements therein.
6. the **Company** will have written continuous coverage for **Named Insured** from the effective date of the first **Policy** the **Company** issued to the date of cancellation or non-renewal of this **Policy**.

B. The LIFETIME OCCURRENCE REPORTING PROVISION described herein shall not apply to any **Claim** made against any director or officer caused by, arising or resulting, directly or indirectly from or in consequence of the director or officer serving in an **Outside Capacity** for an **Outside Entity**.

| This Endorsement modifies insurance provided under the following: |
|:---:|
| **NON PROFIT MANAGEMENT LIABILITY POLICY** |

## INSURANCE OPERATIONS EXCLUSION

It is hereby agreed that the Directors and Officers **Coverage Part**, Section III. DEFINITIONS, is amended by the addition of the following:

| **Insurance** | means any risk transfer arrangement or agreement including but not limited to policies of insurance, reinsurance treaties, bonds, indemnity agreements, or guaranties, whether covering property, casualty, life, health, disability, mortgages, title annuities, endowments, pension contracts, or other risks or exposures. **Insurance** also means risk-management or self-insurance programs or pools, or similar arrangements for the transference or assumption of risk. |
|---|---|

It is also agreed that the Directors and Officers **Coverage Part**, Section IV. EXCLUSIONS, Subsection A. is amended by the addition of the following:

| Insurance Operations | solicitation, negotiation, consultation, sponsorship, placement, management or administration of any type of **Insurance.** |
|---|---|

All other terms and conditions of this **Policy** remain unchanged.  This endorsement is part of your **Policy** and takes effect on the effective date of your **Policy** unless another effective date is shown.

DO 211 (05-17)                                                      Page 1 of 1

> This Endorsement modifies insurance provided under the following:
>
> **NON PROFIT MANAGEMENT LIABILITY POLICY**

## DATA & SECURITY+ ENDORSEMENT

It is hereby agreed:

Unless otherwise stated herein, the terms, conditions, exclusions and other limitations set forth in this endorsement are solely applicable to coverage afforded by this endorsement. This endorsement is part of and subject to the provisions of the **Policy** to which it is attached.

I.   SCHEDULE OF ADDITIONAL COVERAGES AND LIMITS

The following is a summary of coverages and Limits of Liability provided by this endorsement.

| COVERAGE | LIMIT OF LIABILITY |
| --- | --- |
| A.  **Data Breach** Expense | $50,000 each claim<br>    $50,000 in the aggregate |
| B.  **Identity Theft** Expense | $50,000 each claim<br>    $50,000 in the aggregate |
| C.  **Workplace Violence Act** Expense | $50,000 each claim<br>$50,000 in the aggregate |
| D.  **Kidnapping** Expense | $50,000 each claim<br>    $50,000 in the aggregate |

The maximum aggregate per **Policy Period** for A. through D. above shall be $200,000 in the aggregate.

No retentions shall apply to the sublimits shown above.

II.  COVERAGES:

   A.  **Data Breach** Expense
      The **Company** will pay on behalf of the **Organization** up to the **Data Breach** Expense Limit of Liability stated in the schedule above, for reasonable and necessary expenses in items 1. through 6. below:
      1.  Development of a plan to assist the **Organization** in responding to a **Data Breach**;
      2.  Data analysis or forensic investigation to assess the scope of a **Data Breach**;
      3.  The development, printing and mailing of legally required notification letters to those affected by a **Data Breach;**

4. Development of a website link for use by the **Organization** in communicating with persons affected by a **Data Breach** after legally required notification letters are sent;
5. Development of a customer relationship management system for use by the **Organization** in communicating with persons affected by a **Data Breach** after legally required notification letters are sent**;**
6. Public relations services or crisis management services retained by the **Organization** to mitigate the adverse affect on the **Organization's** reputation  resulting from a **Data Breach** that becomes public and only after legally required notification letters are sent.

incurred by the **Organization** as a result of a **Data Breach.** The **Data Breach** must be first occur, be discovered by an **Insured**, and reported to the **Company** during the **Policy Period** but in no event later than sixty (60) days after the **Data Breach** is first discovered by an **Insured**. The expenses below must be incurred within one (1) year of the reporting of such **Data Breach**:

The **Organization** must first report the **Data Breach** to the **Company** and use a service provider of the **Company's** choice prior to incurring any of the above costs.

B. **Identity Theft** Expense

The **Company** will pay on behalf of a director or officer of the **Organization** up to the **Identity Theft** Expense Limit of Liability stated in the schedule above, for expenses, services or fees noted in items 1. through 3. below:

1. Credit monitoring services provided by a vendor of the **Company's** choice for the affected director or officer for up to one year following an **Identity Theft;**
2. Additional application fees paid by a director or officer whose loan(s) were rejected based on incorrect credit information resulting from an **Identity Theft**;
3. Notary fees, certified and overnight mail expenses paid by a director or officer in connection with reporting an **Identity Theft** to financial institutions, credit bureaus and agencies and law enforcement authorities.

incurred by such director or officer after he or she has become a victim of **Identity Theft.** The **Identity Theft** must first occur, be first discovered by an **Insured,** and reported to the **Company** during the **Policy Period** but in no event later than sixty (60) days after the **Identity Theft** is first discovered by an **Insured.**  The expenses above must be incurred within one (1) year of the reporting of such **Identity Theft**:

Any director or officer of the **Organization** who is a victim of **Identity Theft** must first report the **Identity Theft** to the **Company** and use a service provider of the **Company's** choice prior to incurring any of the above expenses, services or fees.

C. **Workplace Violence Act** Expense
The **Company** will reimburse the **Organization,** up to the **Workplace Violence Act** Expense Limit of Liability stated in the schedule above**,** for the following reasonable costs paid by the **Organization** for a period of thirty (30) days following, and as a result of, a

**Workplace Violence Act**:
1. Counseling services rendered to **Employees** and persons on the **Organization's Premises** directly affected by a **Workplace Violence Act**. The counseling services must be rendered by a licensed, professional counselor of the **Organization's** choice.
2. Services rendered by an independent public relations consultant of the **Organization's** choice for the purpose of mitigating the adverse affect of a **Workplace Violence Act** on the **Organization**.

To be covered, the **Workplace Violence Act** must occur during the **Policy Period** and be reported to the **Company** during the **Policy Period** but in no event later than sixty (60) days after the occurrence.

D. **Kidnapping** Expense

The **Company** will reimburse the **Organization,** up to the **Kidnapping** Expense Limit of Liability stated in the schedule above**,** for the following reasonable costs paid by the **Organization** as a result of a **Kidnapping:**
1. Retaining an independent negotiator or consultant to facilitate the release of a **Kidnapping** victim.  Nothing herein shall obligate the **Company** to recommend, select, retain or arrange for the retention of such independent negotiator or consultant;
2. Interest on a loan obtained by the **Organization** to pay expenses covered under this endorsement that is incurred as a result of a **Kidnapping.** However, there is no coverage for interest accruing prior to thirty (30) days preceding the date of such payment or subsequent to the date the **Company** pays any portion of a **Kidnapping** Expense or for expenses not covered under this endorsement;
3. Travel and accommodations incurred by the **Organization** in direct response to the **Kidnapping.** Nothing herein shall obligate the **Company** to recommend, select, or arrange for such travel and accommodations;
4. A reward up to $10,000 paid by the **Organization** to an informant for information which leads to the arrest and conviction of the person(s) responsible for the **Kidnapping**;
5. The current base salary paid to a director or officer of the **Organization** for the director or officer's work on behalf of the **Organization**, who is a victim of a **Kidnapping** subject to the following:
   a. salary reimbursement shall commence on the thirty-first (31st) consecutive day after a **Kidnapping**;
   b. salary reimbursement shall end when the director or officer is released; or is confirmed dead; or one hundred and twenty (120) days after the director or Officer is last confirmed to be alive; or twelve (12) months after the date of the **Kidnapping**, or when the **Kidnapping** Expense Limit of Liability has been exhausted by payments made by the **Company**, whichever occurs first. There is no coverage for **Kidnapping** Expense resulting from a **Kidnapping** planned, carried out or participated in, directly or indirectly, by any person who is or was a member of the victim's family or the **Organization**.

The **Kidnapping** must occur and be reported to the **Company** during the **Policy Period** but in no event later than sixty (60) days after the occurrence.

## III. ADDITIONAL DEFINITIONS

It is hereby agreed that the Directors and Officers **Coverage Part**, Section III. DEFINITIONS, is amended by the addition of the following definitions:

**Data Breach**

means the misappropriation or public disclosure, by electronic or non-electronic means, by the **Organization** and without the knowledge of, consent, or acquiescence of the president, member of the board of directors or any executive officer, of an individual(s) **Personally Identifiable Information** in the **Organization's** care, custody and control without the authorization or permission of the owner of such information.

**Identity Theft**

Means:
1. the act of obtaining **Personally Identifiable Information** belonging to a director or officer of the **Organization** without that person's authorization, consent or permission; and
2. the use of **Personally Identifiable Information** so obtained to make or attempt to make transactions or purchases by fraudulently assuming that person's identity.

**Identity Theft** does not mean any of the above committed directly or indirectly by a director or officer of the **Organization,** or by a family member of any  director or officer.

There is no coverage for any **Identity Theft** Expense unless **Personally Identifiable Information** that is obtained without authorization, consent or permission is used to make or attempt to make purchases or conduct transactions by fraudulently assuming the identity of a director or officer of the **Organization**.

**Kidnapping**

means an actual or alleged wrongful abduction and involuntary restraint of a director or officer of the **Organization**, by one or more persons acting individually or collectively in which monetary or non-monetary demands are made to the **Organization** to obtain the director's or officer's release.

| **Personally Identifiable Information** | means: |
|---|---|
| | 1. information concerning an individual(s) that would be considered "non-public information" within the meaning of Title V of the Gramm-Leach Bliley Act of 1999 (as amended) and its implementing regulations including but not limited to Social Security numbers or account numbers correlated with names and addresses which is in an Insured's care, custody and control; and |
| | 2. personal information as defined in any U.S. federal, state or local privacy protection law governing the control and use of an individual's personal and confidential information, including any regulations promulgated thereunder; and |
| | 3. protected health information as defined by the Health Insurance Portability and Accountability Act of 1996 (Public Law 104-191) ("HIPPA") or the Health Information Technology for Economic and Clinical Health Act of 2009 ("HITECH") (Public Law 111- 5), as amended, and any regulations promulgated thereto. **Personally Identifiable Information** does not mean information that is available to the public which does not include otherwise protected personal information. |
| **Premises** | means buildings, facilities or properties leased or owned by the **Organization** in conducting its operations. |
| **Workplace Violence Act** | means an actual use of unlawful deadly force, or the threatened use of unlawful deadly force involving the display of a lethal weapon, occurring on the **Organization's Premises** and directed at an **Individual Insured,** or other persons on the **Premises** of the **Organization**. |

## IV. LIMITS OF LIABILITY AND RETENTION

1. The maximum Limit of Liability for any expenses provided by this endorsement shall be in addition to the Limits of Liability as set forth in the Policy Declarations for the Directors and Officers **Coverage Part**.
2. Any one incident, interrelated incidents or series of similar or related incidents for which coverage is provided under this endorsement shall be treated as one incident subject to

the maximum Limit of Liability available under this endorsement at the time the incident(s) is first reported to the Company regardless of whether the incident(s) continues and expenses are incurred by the Organization in any subsequent Policy Period(s).

## V.  ADDITIONAL EXCLUSIONS

It is hereby agreed that the Directors and Officers **Coverage Part**, Section IV. EXCLUSIONS, is amended by the addition of the following:

Data Breach Related

1. Expense reimbursement resulting in any **Insured** gaining any profit, remuneration or advantage to which the **Insured** is not legally entitled;
2. expenses incurred by any **Subsidiary** of an **Organization** occurring prior to the date that such entity became a **Subsidiary** or incurred at any time that such entity is not a **Subsidiary**;
3. expenses arising from any incident(s) of which any **Insured** had notice before the inception date of this Policy; or any fact, circumstance, event, situation or incident which before the inception date of this Policy was the subject of any notice under any other similar policy of insurance or any future claims for expenses under this Policy based upon such pending or prior notice;
4. The portion of any expenses covered under this endorsement that is also covered under any other coverage part of this **Policy**;
5. Reissuance of credit or debit cards or any other expense not shown in Section II, COVERAGES, sub-section A, **Data Breach** Expense.

## VI. COVERAGE LIMITATIONS

The following terms, conditions and exclusions in the General Terms and Conditions and the Directors and Officers **Coverage Part** do not apply to this endorsement:

1. General Terms and Conditions
   a. Section II. EXTENDED REPORTING PERIOD
   b. Section XI. SPOUSAL AND DOMESTIC PARTNER EXTENSION

2. Directors and Officers **Coverage Part**
   a. Section IV. EXCLUSIONS, Subsection A. "Bodily Injury/Property Damage"
   b. Section VI. LIFETIME OCCURRENCE REPORTING PROVISION
   c. Section VIII. OUTSIDE DIRECTORSHIP PROVISION

All other terms and conditions of this **Policy** remain unchanged.  This endorsement is part of your **Policy** and takes effect on the effective date of your **Policy** unless another effective date is shown.

| This Endorsement modifies insurance provided under the following: |
|---|
| **NON PROFIT MANAGEMENT LIABILITY POLICY** |

## FAIR LABOR STANDARDS ACT ENDORSEMENT
## DEFENSE COSTS ONLY COVERAGE

It is hereby agreed that the Employment Practices **Coverage Part**, Section I. INSURING AGREEMENTS, is deleted and replaced by the following:

---

I.      INSURING AGREEMENTS

|  |  |
|---|---|
|  | 1.   The **Company** will pay on behalf of an **Insured, Loss** and **Defense Costs** resulting from a **Claim** first made against an **Insured** during the **Policy Period** or during any Extended Reporting Period, if applicable, by or on behalf of: |
| A.  Employment Practices Liability | any **Employee** or applicant for employment for a **Wrongful Employment Act**; or |
| B.  Third Party Liability | any natural person, other than an **Employee**, for a **Wrongful Third Party Act**. |
|  | 2.   The **Company** will pay on behalf of an **Insured, Defense Costs** resulting from a **Claim** first made against an **Insured** during the **Policy Period** or during any Extended Reporting Period, if applicable, by or on behalf of: |
| C.  Fair Labor Standards Act Defense Costs Coverage | any **Employee** for a **Fair Labor Standards Act Violation**; provided that this Insuring Agreement C. is subject to a maximum sublimit of liability of $100,000 solely for **Defense Costs**. This **Defense Costs** only sublimit is part of, not in addition to, and shall erode the applicable Employment Practices Limit of Liability as set forth on the Policy Declarations, and is subject to applicable Retention for this **Coverage Part**, or $5,000, whichever is larger. |

---

It is hereby agreed that the Employment Practices **Coverage Part**, Section III. EXCLUSIONS, Subsection B. "Wage and Hour" is deleted and replaced by the following:

| | |
|---|---|
| Wage and Hour | **Fair Labor Standards Act Violation**, provided that this exclusion shall not apply to the $100,000 sublimit for **Defense Costs** only as set forth in Insuring Agreement C. of this **Coverage Part.** |

It is also agreed that the Employment Practices **Coverage Part**, Section II., DEFINITIONS, **Wrongful Act** is deleted and replaced by the following:

| | |
|---|---|
| **Wrongful Act** | means any **Wrongful Employment Act,** any **Fair Labor Standards Act Violation,** or any **Wrongful Third Party Act**. |

All other terms and conditions of this **Policy** remain unchanged.  This endorsement is part of your **Policy** and takes effect on the effective date of your **Policy** unless another effective date is shown.

---

This Endorsement modifies insurance provided under the following:

**NON PROFIT MANAGEMENT LIABILITY POLICY**

---

# BIOMETRIC INFORMATION EXCLUSION

This endorsement amends the following **Coverage Parts**, if purchased and attached to this **Policy:**

Directors and Officers Coverage Part (DO-100), Section III, DEFINITIONS; and Employment Practices Liability Coverage Part (DO-101), Section II, DEFINITIONS; and Fiduciary Liability Coverage Part (DO-102), Section II, DEFINITIONS

are amended by the addition of the following:

| | |
|---|---|
| **Biometric Identifier(s)** | means a retina or iris scan, fingerprint, voiceprint**,** deoxyribonucleic acid (DNA), scan of hand or face geometry, or any physical, physiological, biological or behavioral characteristic of an individual, or anything else that could be perceived as biologically unique to an individual. |
| **Biometric Information** | means any **Confidential Employee Information**, or any other information, regardless of how it is captured, converted, stored, or shared, based on an individual's **Biometric Identifier(s)** used to identify an individual. |

The Employment Practices Coverage Part (DO-101), Section II. DEFINITIONS, **Wrongful Employment Act**, is deleted in its entirety and replaced by the following:

| | |
|---|---|
| **Wrongful Employment Act** | means any actual or alleged:<br><br>1. violation of any federal, state or local laws (whether statutory or common) prohibiting discrimination in employment based on a person's race, color, religion, creed, genetic information, age, gender or gender identity, disability, marital status, national origin, pregnancy, HIV status, sexual orientation or preference, any protected military status, or any other status that is protected pursuant to any such laws;<br>2. **Harassment**;<br>3. **Retaliation**;<br>4. wrongful: termination, dismissal or discharge of employment, whether actual or constructive; |

5. wrongful: demotion; denial of tenure; failure or refusal to hire or promote; denial of seniority; failure to employ; or wrongful or negligent employee reference;

6. wrongful employment-related: misrepresentation; defamation, humiliation, libel or slander; negligent evaluation; wrongful discipline; wrongful deprivation of career opportunity; negligent retention, supervision, hiring or training; emotional distress, mental anguish, invasion of privacy or false imprisonment; but only when alleged as part of a **Claim** for an act described in 1. through 5. above;

7. wrongful failure to adopt or enforce consistent employment-related corporate workplace policies and procedures arising from 1. through 6. above;

8. breach of any express or implied contract, including any contract arising out of any personnel manual, employee handbook, policy statement or other representation;

committed or allegedly committed by an **Organization** or by an **Individual Insured** while acting in his or her capacity as such by any means including the internet, social media, email, or telecommunications systems.

The Directors and Officers Coverage Part (DO-100), Section IV, EXCLUSIONS, A. and Employment Practices Liability Coverage Part (DO-101), Section III, EXCLUSIONS, Subsection B. and Fiduciary Liability Coverage Part (DO-102), Section III, EXCLUSIONS, Subsection B.;

are amended by the addition of the following;

Biometric Information

violation of any law that regulates or restricts the collection, maintenance, storage, use, safeguarding, handling, retention, disposal, notifications, disclosures or authorizations related to **Biometric Information**; or any actual or alleged unauthorized collection, maintenance, storage, use, safeguarding, handling, retention, disposal, notifications, disclosures or authorizations of **Biometric Information**, or any other improper use thereof.

All other terms and conditions of this **Policy** remain unchanged.  This endorsement is part of your **Policy** and takes effect on the effective date of your **Policy** unless another effective date is shown.

**Non-Profit Management Liability Policy**                    **General Terms and Conditions**

In consideration of the payment of the premium and reliance upon all statements made and information furnished to the **Company**, including the statements made in the **Application** and subject to all the provisions of this **Policy**, the **Company** and the **Insureds** agree as follows:

**NOTICE**: This is a Claims Made Policy.  This means the **Company** will cover only those **Claims** first made against the **Insured** during the **Policy Period** or, where applicable, the Extended Reporting Period.

If any provision in these General Terms and Conditions is inconsistent or in conflict with the terms and conditions of any **Coverage Part**, the terms and conditions of such **Coverage Part** shall control for the purposes of that **Coverage Part**.

Any bolded term in a **Coverage Part** that is defined in these General Terms and Conditions shall have the meaning set forth in these General Terms and Conditions. Any bolded term in a **Coverage Part** that is defined in that **Coverage Part** shall have the meaning set forth in such **Coverage Part**.

The descriptions in the headings and subheadings of this **Policy** are solely for convenience and form no part of the terms and conditions of coverage, and do not serve to express, confirm, alter or provide coverage.

I.       DEFINITIONS

**Application**                    means:

1. an application and any materials submitted for this **Policy**; and
2. an application and any materials submitted for all previous **Policies** issued by the **Company** providing uninterrupted coverage.

The content of 1. and 2. above are incorporated by reference in this **Policy** as if physically attached hereto.

**Claim**                    shall have the meaning as defined in the applicable **Coverage Part**.

**Company**                    means the insurance company identified in the Policy Declarations.

**Coverage Part**                    means individually or collectively, as applicable, the purchased coverage parts as set forth in the Policy Declarations as included and attached to and made a part of this **Policy**.

| | |
|---|---|
| **Defense Costs** | shall have the meaning as defined in the applicable **Coverage Part**. |
| **Domestic Partner** | means any natural person qualifying as a domestic partner under the provision of any applicable federal, state or local laws. |
| **Employee** | shall have the meaning as defined in the applicable **Coverage Part**. |
| **Financial Impairment** | means: |

1. the appointment by any federal or state official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator, creditors committee or similar official to take control of, supervise, manage or liquidate the **Organization** and provided that the court or other judicial or administrative body overseeing the receivership, conservatorship, liquidation, rehabilitation, bankruptcy or equivalent proceeding has denied a request by the **Organization** to indemnify an **Individual Insured** for a **Loss**; or
2. the **Organization** becoming a debtor in possession under the United States bankruptcy law or the equivalent of a debtor in possession under the law of any other country.

| | |
|---|---|
| **Insured** | means any **Organization** and any **Individual Insured**. |
| **Individual Insured** | shall have the meaning as defined in the applicable **Coverage Part**. |
| **Interrelated Wrongful Acts** | means any **Wrongful Acts** based upon, arising from, or in consequence of the same or related facts, circumstances, situations, transactions or events, or that are logically or causally connected by reason of any common or related series of facts, circumstances, situations, transactions or events. |
| **Loss** | shall have the meaning as defined in the applicable **Coverage Part**. |
| **Management Control** | means: |

1. control of more than fifty percent (50%) of the voting rights representing the right to appoint, elect, or designate the majority of the board of directors, board

of trustees, or board of managers; or

2. control of exactly fifty percent (50%) of the voting rights representing the right to appoint, elect, or designate the majority of the board of directors, board of trustees, or board of managers; and pursuant to a written contract solely controls the management and operations of such entity.

| | |
|---|---|
| **Named Insured** | means the entity named in Item 1. of the Policy Declarations. |
| **Organization** | means: |

1. the **Named Insured** and any **Subsidiary**; and
2. any entity as debtor in possession under United States bankruptcy law or equivalent status under the law of any other jurisdiction.

| | |
|---|---|
| **Plan** | shall have the meaning as defined in the applicable **Coverage Part**. |
| **Policy** | means collectively the Policy Declarations, General Terms and Conditions, applicable **Coverage Parts**, applicable endorsements, and the **Application**. |
| **Policy Period** | means the period of time from the effective date and time of this **Policy** to the date and time of expiration as shown in the Policy Declarations, or its earlier cancellation or termination date. If the length of the **Policy Period** is the same as the **Policy Year**, the terms **Policy Period** and **Policy Year** are used interchangeably herein. |
| **Policy Year** | means the period of one (1) year following the effective date of the **Policy Period** or any subsequent one-year anniversary thereof; or |

In the event the **Policy** expires less than one (1) year following the effective date of the **Policy Period**; or more than one (1) year but less than two (2) years following the effective date of the **Policy Period**; then **Policy Year** shall mean any such period.

| | |
|---|---|
| **Subsidiary** | means: |

1. any not-for-profit entity in which the **Named Insured** has **Management Control** directly or indirectly through one or more **Subsidiaries** on or before the

effective date of this **Policy**; and is disclosed as a **Subsidiary** in an **Application** to the **Company**; or

2. any other entity added as a **Subsidiary** by written endorsement to this **Policy**.

**Takeover**                            means:

1. the acquisition by another entity or person or group of entities or persons acting in concert of:
   a. the **Management Control** of the **Named Insured**; or
   b. the acquisition of more than fifty percent ( 50%) of the total consolidated assets of the **Named Insured** as of the date of the **Named Insured's** most recent consolidated financial statements prior to such acquisition;
2. the merger of the **Named Insured** into another entity such that the **Named Insured** is not the surviving entity;
3. the consolidation of the **Named Insured** with another entity; or
4. the loss, forfeiture, or suspension of the **Named Insured's** tax exempt status.

**Wrongful Act**                        shall have the meaning as defined in the applicable **Coverage Part**.

_____

II.    EXTENDED REPORTING PERIOD

Right to Purchase                       If the **Policy** expires, is cancelled or not renewed for any reason other than non-payment of premium, then the **Named Insured** shall have the right to purchase an Extended Reporting Period to report to the **Company**, as soon as practicable prior to the expiration date of the purchased Extended Reporting Period, any **Claim** against an **Insured**.

An Extended Reporting Period shall only apply to **Claims** arising from a **Wrongful Act** which was actually or allegedly committed before the date of expiration, cancellation or non-renewal of this **Policy**, or prior to the effective date of any **Takeover**.  For the purpose of this clause, the offer of renewal terms and conditions or premiums by the **Company** different from those in effect prior to renewal shall not constitute a refusal to renew.

| | |
|---|---|
| Options | The additional premium for the Extended Reporting Period shall be a percentage of the total annual premium as shown in the Policy Declarations.  The **Named Insured** may elect any one of the following options: |

1. Twelve (12) month period - 30% of the annual premium;
2. Twenty Four (24) month period - 75% of the annual premium; or
3. Thirty Six (36) month period - 120% of the annual premium.

The Extended Reporting Period begins on the expiration date of the **Policy**, or if cancelled or non-renewed, the effective date of such cancellation or non-renewal of the **Policy**.

| | |
|---|---|
| Payment & Notice to the Company | As a condition precedent to the right to purchase an Extended Reporting Period, the total earned premium for this **Policy** must have been paid to the **Company**. Any premium paid with respect to an Extended Reporting Period shall be deemed fully earned as of the first day of the Extended Reporting Period.  The right to elect the Extended Reporting Period will terminate unless written notice of such election, together with payment of the additional premium as set forth above, is received by the **Company** within sixty (60) days of the effective date of the expiration, nonrenewal or cancellation of this **Policy**. |
| Extended Reporting Period Limits & Other Insurance | The Extended Reporting Period will not provide a new, separate or additional Limit of Liability.  The remainder of the Limit of Liability applicable to the **Policy Year** in effect as of the effective date of the expiration, cancellation, or non-renewal is the maximum Limit of Liability for all **Claims** reported during the Extended Reporting Period. |

---

III.   DEFENSE & SETTLEMENT

| | |
|---|---|
| Duty To Defend | The **Company** shall have the right and duty to defend any **Claim** covered by this **Policy** even if the allegations are groundless, false or fraudulent.  The **Company** shall have the right to appoint counsel of its choice with respect to such **Claim.**  The **Company's** obligation to defend any **Claim** or pay any **Loss** or **Defense Costs** shall be completely |

fulfilled and extinguished if the applicable Limit of Liability has been exhausted by payment of **Loss**.

Consent to Settle

The **Company**, as it deems necessary, has the right to investigate, adjust, defend, appeal and, with the consent of the **Insured**, negotiate the settlement of any **Claim** whether within or in excess of the Retention. If the **Insured** refuses to consent to a settlement recommended by the **Company**, the **Company's** obligation to the **Insured** for **Loss** and **Defense Costs** attributable to such **Claim** shall be limited to:

 a. The amount of the covered **Loss** in excess of the Retention which the **Company** would have paid in settlement at the time the **Insured** first refused to settle; plus

 b. covered **Defense Costs** incurred up to the date the **Insured** first refused to settle; plus

 c. eighty percent (80%) of covered **Loss** and **Defense Costs** in excess of the first settlement amount recommended by the **Company** to which the **Insured** did not consent.

It is understood that payment of a., b. and c. above is the limit of the **Company's** liability under this **Policy** for any **Claim** in which the **Insured** fails or refuses to consent to the **Company's** settlement recommendation, subject at all times to Section IX. LIMITS OF LIABILITY and Section X. RETENTIONS AND PRESUMPTIVE INDEMNIFICATION of these General Terms and Conditions. The remaining twenty percent (20%) of **Loss** and **Defense Costs** in excess of the amount referenced in a. and b. above shall be the obligation of the **Insured**.

In no event shall the **Company** be obligated to pay any **Loss** or **Defense Costs** after the applicable Limit of Liability shown in the Policy Declarations has been exhausted by payment of **Loss**.

| | |
|---|---|
| Consent of the Company | The **Insured** shall not demand or agree to arbitration of any **Claim** without the **Company's** written consent. The **Insured** shall not, except at personal cost, make any offer or payment, admit any liability, settle any **Claim**, assume any obligation, or incur any expense without the **Company's** written consent. |
| Cooperation | The **Insured** agrees to cooperate with the **Company** with respect to all **Claims**, and provide such assistance and information as the **Company** may reasonably request. Upon the **Company's** request, the **Insured** shall submit to examination and interrogation by the **Company's** representative, under oath if required, and shall attend hearings, depositions, trials and shall assist in the conduct of suits, including but not limited to effecting settlement, securing and giving evidence, obtaining the attendance of witnesses, giving written statements to the **Company's** representatives and meeting with such representatives for the purpose of investigation and/or defense, all of the above without charge to the **Company**. The **Insured** further agrees not to take any action which may increase the **Insured's** or the **Company's** exposure under this **Policy**. |
| Papers/Documents | The **Insured** shall execute all papers required and shall do everything that may be necessary to secure and preserve any rights of indemnity, contribution or apportionment which the **Insured** or the **Company** may have, including the completion of such documents as are necessary to enable the **Company** to bring suit in the **Insured's** name, and shall provide all other assistance and cooperation which the **Company** may reasonably require. |

## IV.   ALLOCATION OF DEFENSE COSTS

If a **Claim** is made against an **Insured** for both **Loss** that is covered by this **Policy** and loss that is not covered by this **Policy**, the **Company** will pay as follows:

1. One hundred percent (100%) of **Defense Costs** on account of such **Claim**; and

2.  all remaining loss from such **Claim** shall be apportioned between covered **Loss** and uncovered loss based on the relative legal exposures of the parties to such matters.

3.  Items 1. and 2. above of this Section IV. shall not apply to any **Insured** for whom coverage is excluded pursuant to Section VII. REPRESENTATIONS AND SEVERABILITY.

---

## V.    NOTICE AND CLAIM REPORTING PROVISIONS

Notice hereunder shall be given in writing to the **Company**. If mailed, the date of mailing of such notice shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.

Written Notice of a Claim

1.  As a condition precedent to exercising any right to coverage under this **Policy**, the **Insured** shall give to the **Company** written notice of a **Claim** as soon as practicable after any Chief Executive Officer, Chief Financial Officer, Chief Operating Officer, Chairperson, Executive Director, Human Resources Manager, In-House General Counsel, Managing Member or Fiduciary of any **Plan** becomes aware of such **Claim**, however:

    a.  if the **Policy** expires, is cancelled or is non-renewed and no Extended Reporting Period is purchased, no later than ninety (90) days after the expiration date or the effective date of such cancellation or non-renewal; or

    b.  if an Extended Reporting Period is purchased, no later than the last day of the Extended Reporting Period.

However, if the **Policy** is cancelled for non-payment of premium, notice shall be provided by the **Insured** to the **Company** no later than the effective date of cancellation.

2.  Coverage for a **Claim** reported to the **Company** during the automatic 90 day period noted in 1. a. above shall only apply if the **Claim** is first made prior to the date of the **Policy** expiration, cancellation, or non-renewal.

| | |
|---|---|
| Written Notice of a Circumstance | 1. If during the **Policy Period**, or any applicable Extended Reporting Period, the **Insured** becomes aware of circumstances which could give rise to a **Claim** and gives written notice of such circumstances to the **Company** as soon as practicable during the **Policy Period**, or Extended Reporting Period if applicable, in which the **Insured** first becomes aware of such circumstances, then any **Claim** subsequently arising from such circumstances shall be deemed made against the **Insured** during the **Policy Year** in which such circumstances were first reported to the **Company**. Such subsequent **Claim** must be reported to the **Company** in accordance with this Section V. NOTICE AND CLAIM REPORTING PROVISIONS, "Written Notice of Claim" above. |
| | 2. When reporting a circumstance to the **Company**, an **Insured** shall give the names of any potential claimant; a description of the specific circumstances that could give rise to a **Claim**; the identity of the specific **Insureds** allegedly involved in such circumstance; the nature of the potential damages (monetary and non-monetary); and the specifics as to how the **Insureds** first became aware of such circumstance. |
| Interrelated Claims | More than one **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be considered as one **Claim** which shall be deemed made on the earlier of: |
| | 1. the date on which the earliest **Claim** was first made; or |
| | 2. the first date valid notice was given by the **Insured** to the **Company**, in accordance with applicable reporting provisions, under this **Policy** or under any prior policy, of any **Wrongful Act** or any fact, circumstance, situation, transaction or event which underlies such **Claim**. |

---

## VI.   CANCELLATION OR NON-RENEWAL

| | |
|---|---|
| Cancellation by the Insured | This **Policy** may be cancelled by the **Named Insured** by either surrender thereof to the **Company** at its address stated in the Policy Declarations or by mailing to the **Company** written notice requesting cancellation and in either case stating when thereafter such |

|                            | cancellation shall be effective. Earned premium shall be computed pro rata at the time cancellation is effected or as soon as practicable thereafter. |
|----------------------------|-----|
| Cancellation By the Company | The **Company** may cancel this **Policy** only in the event of the **Insured's** failure to pay the premium when due. The **Company** will mail to the **Named Insured**, written notice stating when cancellation shall take effect. The effective date of such cancellation shall not be less than twenty (20) days after the date of mailing. Earned premium shall be computed pro rata at the time cancellation is effected or as soon as practicable thereafter. |
| Non-Renewal | In the event the **Company** non-renews this **Policy**, the **Company** shall mail to the **Named Insured**, not less than sixty (60) days prior to the end of the **Policy Period**, written notice of non-renewal. Such notice shall be binding on all **Insureds**. |
| Delivery of Notice | The **Company** shall mail notice of cancellation or non-renewal with a certificate of mailing stating the effective date of cancellation or non-renewal which shall become the end of the **Policy Period**. Mailing of such notice shall be sufficient notice of cancellation or non-renewal. |

VII.   REPRESENTATIONS AND SEVERABILITY

| Representations | The **Insured** represents that the particulars and statements contained in the **Application** are true and agree that: |
|----------------|-----|
|                | 1.  those particulars and statements are the basis of this **Policy** and are to be considered as incorporated into and constituting a part of the **Policy**; |
|                | 2.  those particulars and statements are material to the acceptance of the risk assumed by the **Company**; and |
|                | 3.  the **Policy** is issued in reliance upon the truth of such representations. |
| Severability of Application | An **Application** for coverage shall be construed as a separate **Application** for coverage by each **Individual Insured**. With respect to the particulars and statements |

contained in the **Application**, no fact pertaining to or knowledge possessed by any **Individual Insured** shall be imputed to any other **Individual Insured** for the purpose of determining if coverage is available.

In the event that such **Application** contains any misrepresentations which materially affects either the acceptance of the risk or the hazard assumed by the **Company** under this **Policy**, then no coverage shall be afforded for any **Claim** based upon, arising out of, related to or in consequence of any such misrepresentation with respect to:

1. any **Individual Insured** who knew of such misrepresentations or knew of the facts or circumstances relating to such misrepresentations, or any **Organization** to the extent it indemnifies any such **Individual Insured**. Such knowledge possessed by such **Individual Insured** shall not be imputed to any other **Individual Insured;** or

2. any **Organization** if any past or present Chief Executive Officer, Chief Financial Officer, Chief Operating Officer, Chairperson, Executive Director, Human Resources Manager, In-House General Counsel, Managing Member or Fiduciary of any **Plan** or any equivalent position of the **Named Insured**, or the signer of the **Application**, knew of such misrepresentations or knew of the facts or circumstances relating to such misrepresentations.

---

VIII.   CHANGES IN EXPOSURE

Creation, Acquisition of or Merger with Another Entity

1. If, after the effective date of this **Policy**:
   a. the **Organization** creates, acquires, consolidates or merges with another nonprofit entity incorporated under the laws of a jurisdiction within the territorial United States, (hereafter referred to as "other entity") such that the **Organization** is the surviving entity, and if as a result of such creation, acquisition, consolidation or merger, the other entity becomes a **Subsidiary** of the **Organization**, then coverage shall be provided for the other entity as an **Insured** solely for **Wrongful Acts** committed or

allegedly committed after the effective date of such creation, acquisition, consolidation or merger.  The **Insured** shall disclose full particulars of such a change to the **Company** as soon as practicable but not later than the expiration date of the **Policy Year**, or effective date of cancellation or non-renewal of this **Policy**.

b.  However, if at the time of an event described in Paragraph 1, a., above:

    i.  the assets of the other entity exceed thirty five percent (35%) of the total assets of the **Organization** as reflected in the **Organization's**  most recent annual financial statements; or

    ii.  if the Employment Practices Liability Coverage Part is attached to this **Policy,** the total number of employees of the other entity exceeds thirty five (35%) of the total number of **Employees** of the **Organization** immediately prior to such event, then:

    the **Named Insured** shall provide to the **Company** written notice of  such creation, acquisition, consolidation or merger, containing full details thereof, as soon as practicable but within sixty (60) days of such event. The **Company**, at its sole discretion, may require additional premium and may alter the terms, conditions or limitations of coverage. The **Company** reserves the right to refuse any extension of coverage to such entity.

2.  If, after the effective date of this **Policy**, the **Organization** creates, acquires, consolidates or merges with a for-profit entity, or any entity incorporated outside of the territorial United States, such that the **Organization** is the surviving entity, and if as a result of such creation, acquisition, consolidation or merger, such for-profit or foreign entity becomes a **Subsidiary** of the **Organization**, then:

    the **Named Insured** shall provide to the

**Company** written notice of such creation, acquisition, consolidation or merger, containing full details thereof, as soon as practicable but within sixty (60) days of such event. The **Company**, at its sole discretion, may require additional premium and may alter the terms, conditions or limitations of coverage. The **Company** reserves the right to refuse any extension of coverage to such entity.

Cessation of Subsidiaries

If during the **Policy Period** any **Subsidiary** ceases to be a **Subsidiary**, then coverage under this **Policy** shall continue for such **Subsidiary** and its **Individual Insureds** until the expiration of this **Policy** or the last **Policy** in an uninterrupted series of policies issued by the **Company**, but solely for **Claims** arising out of **Wrongful Acts** committed or allegedly committed by such **Subsidiary** or its **Individual Insureds** while such **Subsidiary** was a **Subsidiary** and prior to the effective date of such cessation. There shall be no coverage for **Claims** arising out of actual or alleged **Wrongful Acts** occurring on or after the effective date of cessation.

Takeover of the Named Insured

In the event of a **Takeover** of the **Named Insured**:

1. coverage under this **Policy** shall continue until the earlier of:
   a. the expiration of the **Policy Year**; or
   b. if the **Policy** is cancelled or non-renewed, the effective date of cancellation or non-renewal;

   but only with respect to **Claims** arising out of **Wrongful Acts** that occurred or allegedly occurred prior to the effective date of the **Takeover**. There shall be no coverage for **Claims** arising out of actual or alleged **Wrongful Acts** occurring on or after the date of **Takeover**;

2. the **Named Insured** shall give the **Company** written notice of the **Takeover** as soon as practicable, but not later than sixty (60) days after the effective date of the **Takeover**; and
3. the premium for the **Policy Year** in which the **Takeover** occurred shall be deemed to be fully

earned.  The **Named Insured** shall have the right to purchase an Extended Reporting Period, subject to Section II. EXTENDED REPORTING PERIOD herein, to report **Claims** arising out of **Wrongful Acts** occurring prior to the effective date of any **Takeover**.

Merger, Sale, Transfer or Termination of a Plan

If after the inception date of the Fiduciary Liability **Coverage Part,** or the date the Fiduciary Liability Coverage Endorsement is added to this **Policy**:

1. the sponsorship of a **Plan** is transferred so that an **Organization** is no longer the sole employer sponsor of such **Plan**;
2. a **Plan** is merged with another plan for which coverage is not afforded under the Fiduciary Liability **Coverage Part**;
3. a **Plan** is terminated or sold; or
4. the Pension Benefit Guaranty Corporation (PBGC) becomes the Trustee of a **Plan**;

then:

a. in the case of paragraphs 1., 2. and 3. above, the Fiduciary Liability **Coverage Part** or the Fiduciary Liability Coverage Endorsement, as applicable, shall continue to apply to such transferred, merged, terminated or sold **Plan**, but solely for **Claims** based upon or arising out of **Wrongful Acts** that occurred or allegedly occurred prior to the date of such transfer, merger, termination or sale. There shall be no coverage for **Claims** arising out of actual or alleged **Wrongful Acts** occurring on or after the date of merger, transfer, termination or sale of any **Plan** as described in paragraphs 1., 2. and 3. above; or
b. in the case of paragraph 4. above, the Fiduciary Liability **Coverage Part** or the Fiduciary Liability Coverage Endorsement shall continue to apply to such **Plan** for those who were **Insureds** at the time the PBGC became the Trustee of such **Plan** but solely for **Claims** based upon or arising out of **Wrongful Acts** that occurred or allegedly occurred prior to the date the PBGC became

the Trustee of such **Plan**. There shall be no coverage for **Claims** arising out of actual or alleged **Wrongful Acts** occurring on or after the date the PBGC becomes the Trustee of any **Plan**.

Cancellation of the Policy

If the **Named Insured** requests cancellation of this **Policy** as a result of a "Creation, Acquisition of or Merger with Another Entity", "Cessation of Subsidiaries", or "Takeover of the Named Insured", the **Company** shall compute earned premium on a pro rata basis and return any unearned premium to such entity as of the effective date of such cancellation as long as notice of the event is provided to the **Company** as soon as practicable but not later than sixty (60) days after such event, together with such information as the **Company** may require.

---

IX.   LIMITS OF LIABILITY

"Each Claim"

The "Each Claim" Limit of Liability shown on the Policy Declarations is the **Company's** maximum liability for **Loss** for each **Claim** to which the applicable **Coverage Part** applies, during each **Policy Year**.

"In the Aggregate"

The "In the Aggregate" Limit of Liability shown on the Policy Declarations is the **Company's** maximum liability for **Loss** for all **Claims** to which the applicable **Coverage Part** applies, during each **Policy Year**.

Policy Year Limits

The Limits of Liability for any **Policy Year** may not be aggregated or transferred, in whole or in part, so as to provide any additional coverage with respect to **Claims** first made or deemed made, as provided in Section V. NOTICE AND CLAIM REPORTING PROVISIONS of these General Terms and Conditions during any other **Policy Year**.  If the applicable Limits of Liability for any **Policy Year** are exhausted, the **Company's** obligation for that **Policy Year** shall be deemed completely fulfilled and extinguished.

Extended Reporting Period Limits

The Extended Reporting Period will not provide a new, separate or additional Limit of Liability.  The remainder of the Limit of Liability applicable to the **Policy Year** in effect as of the date of expiration, cancellation, or non-renewal is the maximum Limit of Liability for all

|  | **Claims** reported during the Extended Reporting Period. |
|---|---|
| Defense Costs | **Defense Costs** shall be in addition to the Limits of Liability for each **Coverage Part** purchased as shown on the Policy Declarations, unless as otherwise provided within that **Coverage Part** or by endorsement. |
| Interrelated Claims | More than one **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be considered as one **Claim** pursuant to Section V. NOTICE AND CLAIM REPORTING PROVISIONS, "Interrelated Claims" and shall be subject to the Limit of Liability in effect when the **Claim** was first made. |

## X.   RETENTIONS AND PRESUMPTIVE INDEMNIFICATION

| Retentions | Retentions set forth in the Policy Declarations for each **Coverage Part** shall apply per **Claim** per **Policy Year** under each respective **Coverage Part**. |
|---|---|
|  | If more than one Retention applies to any one **Claim** then each applicable Retention shall be applied to the applicable part of such **Claim**, but the sum of such Retentions shall not exceed the highest of such applicable Retentions. |
|  | **Claims** shall be subject to the Retention applicable to the **Policy Year** during which the **Claims** are first made as provided in Section V. NOTICE AND CLAIM REPORTING PROVISIONS. |
|  | Except as otherwise provided by Section VII. TIMELY NOTICE AND RESOLUTION INCENTIVE of the Directors and Officers **Coverage Part**: |

1. the **Company** shall be liable to pay only **Loss** and **Defense Costs** in excess of the applicable Retention for the **Coverage Part** to which the **Claim** applies;
2. the **Company** shall have no obligation to pay any part or all of such Retention on the **Insured's** behalf; and
3. if the **Company**, at its sole discretion, elects to pay any part of or all of such Retention, the **Insured** agrees to repay such amounts to the **Company** upon demand.

| Presumptive Indemnification | Regardless of whether **Loss** or **Defense Costs** resulting from any **Claim** against an **Individual Insured** is actually indemnified by the **Organization**, the applicable Retention set forth in the Policy Declarations shall apply to any **Loss** and **Defense Costs** if indemnification of the **Individual Insured** by the **Organization** is legally permissible. The certificate of incorporation, charter, articles of association or other organizational documents of the **Organization**, including by-laws and resolutions, will be deemed to have been adopted or amended to provide indemnification to the **Individual Insured** to the fullest extent permitted by law. |
|---|---|

However, if an **Individual Insured** is not indemnified for **Loss** or **Defense Costs** solely by reason of:

1. **Financial Impairment**; or
2. a good faith determination by the **Organization** that such indemnification is not permitted by common or statutory law; then

an **Individual Insured's** Retention for this **Coverage Part** shall be amended to $0.

XI.   SPOUSAL AND DOMESTIC PARTNER EXTENSION

If a **Claim** against an **Individual Insured** includes a **Claim** against the lawful spouse or **Domestic Partner** of such **Individual Insured** solely by reason of:

1. such spousal or **Domestic Partner** status;  or
2. such spouse's or **Domestic Partner's** ownership interest in property or assets that are sought as recovery for **Wrongful Acts**; then

any **Loss** which such spouse or **Domestic Partner** becomes legally obligated to pay on account of such **Claim** shall be deemed **Loss** which the **Individual Insured** becomes legally obligated to pay as a result of the **Claim.**

This extension of coverage shall not apply to the extent a **Claim** alleges any **Wrongful Act**, error, omission, misstatement, misleading statement or neglect or breach

of duties by such spouse or **Domestic Partner**.

XII.   SUBROGATION

In the event of payment under this **Policy**, the **Company** shall be subrogated to the **Insureds'** rights of recovery. The **Insured** shall do everything necessary to secure such rights, including the execution of such documents necessary to enable the **Company** to effectively bring suit in the name of any **Company**.

In no event, however, shall the **Company** exercise its rights to subrogation against an **Individual Insured** under this **Policy** unless such **Individual Insured**:

1. has been convicted of a deliberate criminal act; or
2. has been determined by a final adjudication adverse to the **Individual Insured** to have committed a deliberate fraudulent act, or to have obtained any profit, advantage or remuneration to which such **Individual Insured** was not legally entitled.

In the event the **Company** shall for any reason pay indemnifiable **Loss** on behalf of an **Individual Insured**, the **Company** shall have the contractual right hereunder to recover from the **Organization** or any **Subsidiary** the amount of such **Loss** equal to the amount of the Retention not satisfied by the **Organization** or any **Subsidiary** and shall be subrogated to rights of the **Individual Insureds** hereunder.

XIII.   CHANGES

Notice to any agent or knowledge by any agent shall not affect a waiver or change in any part of this **Policy** or stop the **Company** from asserting any right under the terms of this Policy, nor shall the terms of this **Policy** be waived or changed except by an endorsement, issued by the **Company** to form a part of this **Policy**.

XIV.   AUTHORIZATION CLAUSE AND NOTICES

By acceptance of this **Policy**, the **Insured** agrees that the **Named Insured** shall act on behalf of all **Insureds** with respect to:

1. the payment of premiums or the receipt of any return premiums that may become due under the **Policy**;
2. the cancellation or non-renewal of this **Policy**;
3. the effecting of any changes to the **Policy** or purchasing of an Extended Reporting Period; or
4. the giving and receiving of all notices and correspondence.

Any notice given to the **Named Insured** by the **Company** pursuant to Section VI. CANCELLATION OR NON-RENEWAL shall be deemed to be notice to all **Insureds**.

---

## XV.   ASSIGNMENT

Assignment of interest under this **Policy** shall not bind the **Company** until the **Company's** consent is endorsed hereon.

---

## XVI.   OTHER INSURANCE

This **Policy** is excess of other valid and collectable insurance, unless such other insurance is specifically written to be in excess of this **Policy**. For purposes of this provision, "other valid and collectable insurance" means insurance provided by an entity or organization other than the **Company**.

When it is determined that both this insurance and other insurance or self-insurance apply to any **Claim** on the same basis, whether primary, excess or contingent, the **Company** shall not be liable under this **Policy** for a greater proportion of the **Loss** and **Defense Costs** than the applicable Limit of Liability under the **Policy** for such **Loss** and **Defense Costs** bears to the total applicable Limit of Liability of all valid and collectible insurance against such **Claims**.

---

## XVII.   TERMS OF POLICY CONFORMED TO STATUTE

Terms of this **Policy** which are in conflict with the statutes of the state or territory wherein this **Policy** is

issued are hereby amended to conform to such statutes.

## XVIII. ACTION AGAINST THE COMPANY

Compliance

No action shall lie against the **Company** unless, as a condition precedent thereto, there has been full compliance with all of the terms of this **Policy**, and until the amount of the **Insured's** obligation to pay shall have been finally determined either by judgment against the **Insured** after actual trial or by the **Insured's** written agreement, the claimant or the claimant's legal representative, and the **Company**.

Rights to Recover

Any person or the legal representatives thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this **Policy** to the extent of the insurance afforded by this **Policy**. No person or entity shall have any right under this **Policy** to join the **Company** as a party to any action against the **Insured** to determine the **Insured's** liability, nor shall the **Company** be impleaded by the **Insured** or the **Insured's** legal representatives. Bankruptcy or insolvency of the **Insured** or the **Insured's** successors in interest shall not relieve the **Company** of its obligations hereunder.

## XIX. POLICY TERRITORY

This **Policy** shall apply worldwide.

## XX. COORDINATION OF COVERAGE

Subject always to the applicable Limit of Liability, should two or more **Coverage Parts** apply to the same **Claim**, the **Company** will not pay more than the actual **Loss** incurred by the **Insureds**.

## XXI. ACCEPTANCE

This **Policy** embodies all agreements existing between the parties hereunder or any of their agents relating to this insurance.

## XXII. LIBERALIZATION

If within forty-five (45) days of binding this **Policy**, the **Company** broadens coverage under any **Coverage Part** or the General Terms & Conditions attached to this

**Policy**, and;

1. such broadened coverage applies to policies in the state or territory in which this **Policy** is written;
2. the effective date of the policies which are to receive the broadened coverage is after the effective date of this **Policy**; and
3. there is no additional premium charged for such broadened coverage;

then the **Company** shall apply the broadened coverage to this **Policy** as applicable for no additional premium, but only for a **Wrongful Act** which first occurs after the effective date of such broadened coverage.

_____

# INSURANCE

# POLICY

## UNITED STATES LIABILITY INSURANCE GROUP

A STOCK COMPANY

A BERKSHIRE HATHAWAY COMPANY

1190 Devon Park Drive
Wayne, PA 19087-2191
888-523-5545 – USLI.COM

This policy jacket together with the policy declarations, coverage forms and endorsements, if any, complete this policy.

The enclosed declarations designates the issuing company.

# INSURANCE POLICY

## Read your policy carefully!

**In Witness Whereof**, the company has caused this Policy to be executed and attested.  Where required by law, this Policy shall not be valid unless countersigned by a duly authorized representative of the company.

Secretary

President

# INSURANCE

# POLICY

## UNITED STATES LIABILITY INSURANCE GROUP

A STOCK COMPANY

A BERKSHIRE HATHAWAY COMPANY

1190 Devon Park Drive
Wayne, PA 19087-2191
CUSTOMER SERVICE: 888-523-5545 – USLI.COM

This policy jacket together with the policy declarations, coverage forms and endorsements, if any, complete this policy.

The enclosed declarations designates the issuing company.

# INSURANCE POLICY

## Read your policy carefully!

**In Witness Whereof**, the company has caused this Policy to be executed and attested.  Where required by law, this Policy shall not be valid unless countersigned by a duly authorized representative of the company.

Secretary

President

This endorsement changes insurance provided under the following:

**NON PROFIT MANAGEMENT LIABILITY POLICY
COMMUNITY ASSOCIATION DIRECTORS AND OFFICERS LIABILITY
COVERAGE FORM
PUBLIC OFFICIALS LIABILITY
PROPERTY MANAGERS ERRORS AND OMISSIONS
PROPERTY MANAGERS TENANT DISCRIMINATION
PROFESSIONAL AND TECHNOLOGY ERRORS AND OMISSIONS LIABILITY
TECHNOLOGY PROFESSIONAL LIABILITY COVERAGE FORM
ALLIED HEALTHCARE PROFESSIONAL LIABILITY COVERAGE FORM
MICRO PRO PROFESSIONAL LIABILITY COVERAGE FORM
SPECIFIED PROFESSIONS PROFESSIONAL LIABILITY COVERAGE FORM
TECHNOLOGY PROFESSIONAL LIABILITY INSURANCE COVERAGE
INSURANCE AGENTS AND BROKERS PROFESSIONAL LIABILITY COVERAGE
FORM**

# EXCLUSION – PERFLUOROALKYL AND POLYFLUOROALKYL SUBSTANCES (PFAS)

This insurance does not apply to:

**Perfluoroalkyl And Polyfluoroalkyl Substances**
The **Company** shall not be liable to make payment for, as defined by the applicable policy above; **Loss, Defense Costs, Claim(s) Expense(s)** or **Cyber Event** in connection with any **Claim** made against the **Insured** arising out of, directly or indirectly resulting from, in consequence of, in whole or in part, or in any way involving any actual or alleged;

    a. threatened or suspected inhalation, ingestion, absorption, consumption, discharge, dispersal, seepage, migration, release or escape of, contact with, exposure to, existence of, or presence of, any **perfluoroalkyl or polyfluoroalkyl substances**; and

    b. abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, **perfluoroalkyl or polyfluoroalkyl substances**, by any **Insured** or by any other person or entity.

**Perfluoroalkyl or polyfluoroalkyl substances** means any:

    1. Chemical or substance that contains one or more alkyl carbons on which hydrogen atoms have been partially or completely replaced by fluorine atoms, including but not limited to:

        a. Polymer, oligomer, monomer or nonpolymer chemicals and their homologues, isomers, telomers, salts, derivatives, precursor chemicals, degradation products or by-products;

        b. Perfluoroalkyl acids (PFAA), such as perfluorooctanoic acid (PFOA) and its salts, or perfluorooctane sulfonic acid (PFOS) and its salts;

        c. Perfluoropolyethers (PFPE);

        d. Fluorotelomer-based substances; or

PL 1 PFAS (03-23)                                                                                  Page 1 of 2

Includes copyrighted material of Insurance Services Office, Inc. with its permission

    e.   Side-chain fluorinated polymers

2.   Good or product, including containers, materials, parts or equipment furnished in connection with such goods or products, that consists of or contains any chemical or substance described in Paragraph 1.

All other terms and conditions of this policy are the same. This endorsement is a part of your policy. It takes effect on the effective date of your policy unless another effective date is shown.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

## POLICYHOLDER DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE

You are hereby notified that under the Terrorism Risk Insurance Act ("the Act"), as amended, you have a right to purchase insurance coverage for losses arising out of acts of terrorism. *As defined in Section, 102 (1) of the Act*: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security, and the Attorney General of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

You should know that any coverage for losses caused by certified acts of terrorism is partially reimbursed by the United States under a formula established by federal law. Under this formula, the United States reimburses 80% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The premium charged for this coverage is provided below and does not include any charges for the portion of loss covered by the federal government under the Act.

Coverage for "insured losses", as defined in the Act, is subject to the coverage terms, conditions, amounts and limits in this policy applicable to losses arising from events other than acts of terrorism.

You should know that the Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement, as well as insurers' liability, for losses resulting from certified acts of terrorism when the amount of such losses in any one calendar year exceeds $100 billion. If the aggregate insured losses for all insurers exceed $100 billion in any one calendar year, your coverage may be reduced.

You should also know that, under federal law, you are not required to purchase coverage for losses caused by certified acts of terrorism.

<u>REJECTION OR SELECTION OF TERRORISM INSURANCE COVERAGE</u>

Note: In the states of California, Georgia, Hawaii, Illinois, Iowa, Maine, North Carolina, Oregon, Washington, West Virginia and Wisconsin, our terrorism exclusion makes an exception for fire losses resulting from an Act of Terrorism. In these states, if you decline to purchase Terrorism Coverage, you still have coverage for fire losses resulting from an Act of Terrorism.

Please "X" one of the boxes below and return this notice to the Company.

| | |
|---|---|
| X | I decline to purchase Terrorism Coverage. I understand that I will have no coverage for losses arising from acts of Terrorism. |
| | I elect to purchase coverage for certified acts of Terrorism for a premium of $ <u>100</u> . |

On File with the Company
_____
Applicant Name (Print)

PARKLAND CHAMBER OF COMMERCE
_____
Named Insured

Signature on File with the Company
_____
Authorized Signature

On File with the Company
_____
Date