UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 24-62400-CIV-SINGHAL/STRAUSS

PARKLAND CHAMBER OF COMMERCE,
INC. and DOUG EATON,

    Plaintiffs,

v.

MOUNT VERNON FIRE INSURANCE
COMPANY,

    Defendant.
_____/

## **ORDER**

    **THIS CAUSE** involves the question of whether Defendant, Mount Vernon Fire Insurance Company ("Mount Vernon") has a duty to defend Plaintiffs, Parkland Chamber of Commerce ("PCC") and its President, Doug Eaton, in a lawsuit against them brought by the South Florida Muslim Federation ("SFMF").[1] Mount Vernon moves for summary judgment, arguing that it has no duty to defend PCC and Eaton in the underlying lawsuit since its insurance policy excludes coverage of discrimination claims. (Mount Vernon's Mot. for Summary Judgment (DE [28])) ("Mount Vernon's Mot."). PCC and Eaton filed a cross-motion for summary judgment and assert that Mount Vernon does have a duty to defend them. (PCC and Eaton's Response in Opposition to Mount Vernon's Mot. for Summary Final Judgment and Cross Mot. for Summary Judgment (DE [38])) ("PCC and Eaton's Mot."). Both parties agree that the question of whether the Policy affords coverage for the *Federation* Action is a purely legal issue which is properly resolved on

---

[1] The Court will refer to the SFMF lawsuit as the *Federation* Action.

summary judgment. (Mount Vernon's Mot. (DE [28]), at 2); (PCC and Eaton's Mot. (DE [38]), at 2). This matter is fully briefed and ripe for review.

I. BACKGROUND

A. *Federation* Action

On September 30, 2024, PCC and Eaton, were named as defendants in a lawsuit styled *South Florida Muslim Federation Inc. v. Parkland Chamber of Commerce, Inc., et al*, Case No. 24-cv-61811-AHS (S.D. Fla. 2025) ("*Federation* action"). (Mount Vernon Statement of Undisputed Material Facts in Support of its Mot. for Summary Judgment (DE [29]), ¶ 1) ("Mount Vernon's Facts"); (PCC and Eaton's Statement of Material Facts (DE [39]), ¶ 1) ("PCC and Eaton's Facts").[2] SFMF "is an organization representing over thirty South Florida Muslim entities and over 200,000 Muslims in South Florida." (Mount Vernon's Facts (DE [29]), ¶ 3); (PCC and Eaton's Facts (DE [39]), ¶ 3). SFMF alleges unlawful discrimination under 42 U.S.C. § 2000(a) (Count I), unlawful discrimination under 42 U.S.C. § 1981 (Count II), conspiracy to interfere with civil rights in violation of § 1985(3) (Count III), breach of contract under Florida law (Count IV), and tortious interference with a business relationship under Florida law (Count V). (*Federation* Compl., (DE [1-1]), ¶¶ 68-97).[3]

In the *Federation* action, SFMF alleges that it entered into a contract with Marriott to provide a venue for SFMF's second annual conference to take place at the Coral

---

[2] The only 'facts' that are relevant to a determination of [Mount Vernon's] duty to defend PCC and E[aton] are those facts which are alleged in the *Federation* action. (Mount Vernon's Facts (DE [29]), ¶ 2); (PCC and Eaton's Facts (DE [39]), ¶ 2); *see Travelers Indem. Co. of Connecticut v. Richard Mckenzie & Sons, Inc.*, 10 F.4th 1255, 1261 (11th Cir. 2021) ("We determine whether an insurer has a duty to defend its insured based only on 'the eight corners of the complaint and the policy.'").
[3] This Court held that the Complaint in the *Federation* action was a shotgun pleading, which makes it difficult to discern which claims were brought against which defendants. (*Federation* action, (DE [85]), at 8 n.2)

Springs Marriott on January 12-14, 2024. (Mount Vernon's Facts (DE [29]), ¶ 4) (citing (*Federation* Compl. (DE [1-1]), ¶¶ 2, 40)).[4]  "[O]ne week prior to the conference Marriott unilaterally cancelled the contract citing 'significant undesirable interest.'" (Mount Vernon's Facts (DE [29]), ¶ 5); (PCC and Eaton's Facts (DE [39]), ¶ 5).

SFMF alleges that "[b]etween December 29, 2023 and January 5, 2024, PCC and Eaton engaged in multiple efforts aimed at pressuring the Coral Springs Marriott to cancel the conference with SFMF." (Mount Vernon's Facts (DE [29]), ¶ 7) (citing (*Federation* Compl (DE [1-1]), ¶ 43)). SFMF states that on January 5, 2024, PCC met with the general manager of Coral Springs Marriott to pressure him to cancel its contract with SFMF. ((DE [29]), ¶ 8) (citing (*Federation* Compl. (DE [1-1]), ¶ 44)). It alleges that Eaton sent an email warning PCC's members about the conference, referencing an article published by the Middle East Forum that referred to the event's attendees as "Hamas Sympathizers." ((DE [29]), ¶ 11) (citing (*Federation* Compl. (DE [1-1]), ¶ 49)). SFMF alleges that later that day, PCC then posted the following message on Instagram: "Important Message from Our President [Doug Eaton]: It has been brought to our attention that the Coral Springs Marriott is hosting a meeting for pro-Hamas sympathizers, along with other anti-Israel and Palestinian groups in January." ((DE [29]), ¶ 12) (citing (*Federation* Compl. (DE [1-1]), ¶ 51)). The Coral Springs Marriott cancelled the conference that afternoon. ((DE [29]), ¶ 13) (citing (*Federation* Compl. (DE [1-1]), ¶ 52)). SFMF further alleges that on January 8, 2024, the Middle East Forum published an article that quotes PCC and Eaton stating

---

[4] Regarding SFMF's allegations in the *Federation* action, PCC and Eaton do not agree with the allegations but acknowledge that they are the same factual allegations contained the *Federation* action.  *See* (PCC and Eaton's Facts (DE [39]), ¶¶ 4, 6-15) (PCC and Eaton "do not agree that the factual allegations themselves are undisputed facts.")

3

that if the Marriott Coral Springs reschedules with SFMF, the PCC would cease doing business with the hotel.  ((DE [29]), ¶ 15) (citing (*Federation* Compl. (DE [1-1]), ¶ 63)).

### B. Complaint for Declaratory Judgment

Mount Vernon issued a Non-Profit Management Liability Policy number NBP2556963A to [PCC] as the named insured, which was in effect from August 23, 2024 to August 23, 2025 (the "Policy")." (Mount Vernon's Facts (DE [29]), ¶ 21); (PCC and Eaton's Facts (DE [39]), ¶ 21).  Eaton "qualifies as an insured under the Policy." (Mount Vernon's Facts (DE [29]), ¶ 21); (PCC and Eaton's Facts (DE [39]), ¶ 21).  The Policy includes a Directors and Officers Coverage Part, which contains the following exclusion for discrimination:

> **IV. EXCLUSIONS**
>
> A.   The Company shall not be liable to make payment for Loss or Defense Costs in connection with any Claim made against the Insured arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged:
>
> ***
>
> Discrimination
>
> Discrimination, including but not limited to discrimination based on religion, race, creed, color, sex, age, material status (sic)[5], sexual preference, pregnancy, handicap or disability;

(Mount Vernon's Facts (DE [29]), ¶ 22); (PCC and Eaton's Facts (DE [39]), ¶ 22) ("Discrimination Exclusion").  Mount Vernon has denied coverage for PCC and Eaton's claim and declined to defend them in the *Federation* action.  (Mount Vernon's Facts (DE [29]), ¶ 23); (PCC and Eaton's Facts (DE [39]), ¶ 23).  On December 20, 2024, the PCC

---

[5] The pleadings refer to "material status" as opposed to the insurance policy term "marital status".

4

and Eaton filed their Complaint for Declaratory Judgment against Mount Vernon, asking this Court to issue a judgment declaring that Mount Vernon has a duty to defend PCC and Eaton in the *Federation* action.  (DE [1]).

## II.     LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment "is appropriate only if 'the movant shows there is no genuine [dispute] as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Tolan v. Cotton*, 572 U.S. 650, 656–57, 34 S. Ct. 1861, 188 L. Ed. 2d 895 (2014) (per curiam) (quoting Fed. R. Civ. P. 56(a));[6] *see also Alabama v. North Carolina*, 560 U.S. 330, 344, 130 S. Ct. 2295, 176 L. Ed. 2d 1070 (2010).  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  An issue is "genuine" if a reasonable trier of fact, viewing all the record evidence, could rationally find in favor of the nonmoving party in light of his burden of proof.  *Harrison v. Culliver,* 746 F.3d 1288, 1298 (11th Cir. 2014).  And a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case."  *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004).  "[W]here the material facts are undisputed and do not support a reasonable inference in favor of the non-movant, summary judgment may properly be granted as a matter of law."

---

[6] The 2010 Amendment to Rule 56(a) substituted the phrase "genuine dispute" for the former "'genuine issue' of any material fact."

*DA Realty Holdings, LLC v. Tenn. Land Consultants*, 631 Fed. Appx. 817, 820 (11th Cir. 2015).

    III.    <u>DISCUSSION</u>

"Under Florida law, 'an insurer's duty to defend its insured against a legal action arises when the complaint alleges facts that fairly and potentially bring the suit within policy coverage.'"[7] *Travelers Indem. Co. of Connecticut v. Richard Mckenzie & Sons, Inc.*, 10 F.4th 1255, 1261 (11th Cir. 2021) (quoting *Jones v. Fla. Ins. Guar. Ass'n*, 908 So. 2d 435, 442–43 (Fla. 2005)). "The duty to defend 'depends solely on the allegations in the complaint filed against the insured.'" *Trizec Props., Inc. v. Biltmore Const. Co.*, 767 F.2d 810, 811 (11th Cir. 1985) (quoting *Tropical Park, Inc. v. United States Fidelity and Guaranty Co.,* 357 So.2d 253, 256 (Fla. 3d DCA 1978)); *Travelers Indem. Co. of Connecticut*, 10 F.4th at 1261 ("We determine whether an insurer has a duty to defend its insured based only on 'the eight corners of the complaint and the policy.'"). "The duty to defend is a broad one, broader than the duty to indemnify, and '[t]he merits of the underlying suit are irrelevant.'" *Travelers Indem. Co. of Connecticut*, 10 F.4th at 1261 (quoting *Mid-Continent Cas. Co. v. Royal Crane, LLC*, 169 So. 3d 174, 181 (Fla. 4th DCA 2015)).

"If the complaint alleges facts partially within and partially outside the scope of coverage, the insurer is obligated to defend the entire suit." *Trizec Props., Inc.,* 767 F.2d at 811-12 (citing *Tropical Park, Inc.*, 357 So.2d at 856); *see also Travelers Indem. Co. of*

---

[7] The parties agree that Florida law should guide this Court's analysis. (Mount Vernon's Mot. (DE ([28]), at 4) (PCC and Eaton's Mot. (DE [38]), at 4); *see also Provau v. State Farm Mut. Auto. Ins. Co.*, 772 F.2d 817, 819 (11th Cir. 1985) ("The construction of insurance contracts is governed by substantive state law.") (citation omitted).

6

*Connecticut*, 10 F.4th at 1261. "All doubts as to whether a duty to defend exists are resolved against the insurer and in favor of the insured, and if the complaint alleges facts which create potential coverage under the policy, the duty to defend is triggered." *Id*. at 812 (citing *Tropical Park, Inc.*, 357 So.2d at 856) (citation omitted); *see also Travelers Indem. Co. of Connecticut*, 10 F.4th at 1261. "But of course, because the lawsuit must be for something covered by the insurance policy, 'the insurer has no duty to defend' when 'the pleadings show the applicability of a policy exclusion.'" *Id*. (quoting *State Farm Fire & Cas. Co. v. Tippett*, 864 So. 2d 31, 35 (Fla. 4th DCA 2003)). Mount Vernon asserts that it is not required to defend PCC and Eaton because the Discrimination Exclusion applies. (Mount Vernon's Mot. (DE [28]), at 6-9).

### A. The Conduct Exclusion Does Not Create Ambiguity

First, to determine the applicability of the Discrimination Exclusion, the Court must determine whether the exclusion was "clear and unambiguous." *S. Cent. Educ. Risk Mgmt. Program v. Star Ins. Co.*, 2018 U.S. Dist. LEXIS 244508, *7-8 (S.D. Fla. Dec. 18, 2018) (Rosenberg, J.) (quoting *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005)). "A contract is ambiguous only when it is susceptible to two or more reasonable interpretations." *Id.* (quoting *Cont. Cas. Co. v. Wendt*, 205 F.3d 1258, 1261 (11th Cir. 2000)).[8] PCC and Eaton contend that the Policy's Conduct Exclusion creates ambiguity that should be resolved by a finding of the duty to defend. (PCC and Eaton's

---

[8] PCC and Eaton do not argue that the Discrimination Clause itself is ambiguous. Nevertheless, this Court notes that "The Florida Supreme Court held that the phrase 'arising out of' is *not* ambiguous and should be interpreted broadly." *James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1275 (citing *Taurus Holdings, Inc. v. United States Fid. and Guar. Co.*, 913 So.2d 528, 537 (Fla. 2005)).

7

Mot. (DE [38]), at 12-15).  In addition to the Discrimination Exclusion, the Policy contains the following exclusion for conduct:

> **IV. EXCLUSIONS**
>
> A. The Company shall not be liable to make payment for Loss or Defense Costs in connection with any Claim made against the Insured arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged:
>
> > \*\*\*
> >
> > Conduct
> >
> > > 1. deliberately fraudulent act, omission, criminal act, or willful violation of any statute or regulation by any Insured; or
> > >
> > > 2. any Insured having gained any profit, remuneration or other advantage to which such Insured was not legally entitled;
> >
> > provided that this exclusion will not apply to Defense Costs incurred until:
> >
> > > a. a final, non-appealable adjudication in any underlying proceeding or action establishes such conduct; or
> > >
> > > b. the Insured has admitted, stipulated or pleaded no contest to such conduct;

((DE [1-2]), at 110) ("Conduct Exclusion").  If this Court finds that the Discrimination Exclusion applies, PCC and Eaton contend that since some of the claims allege intentional discrimination, that both the Discrimination and Conduct Exclusion would be invoked.  If so, they argue that the Conduct Exclusion only applies to defense costs when "a final, non-appealable adjudication in any underlying proceeding or action establishes such conduct" or "the Insured has admitted, stipulated or pleaded no contest to such

conduct." ((DE [1-2]), at 110). Given this ambiguity, they posit that this Court must grant summary judgment in their favor.

This Court does not accept PCC and Eaton's circuitous interpretation of the Policy. The language of the Policy is clear. Mount Vernon is not expected to pay defense costs for "any Claim made against the Insured arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged … discrimination." A reasonable reader would conclude that the Conduct Exclusion releases Mount Vernon from paying defense costs for any willful conduct not already excluded under other provisions of the Policy. If this Court were to adopt PCC and Eaton's interpretation of the Policy, the policy would provide a windfall for perpetrators of intentional discrimination. In their view, allegations involving unintentional discrimination would be subject to the Discrimination Exclusion. But if those allegations involved intentional discrimination and thus invoked both the Discrimination and Conduct Exclusions, then Mount Vernon would have to pay defense costs unless the allegations were proven or admitted. This latter interpretation is not a reasonable one. Reading the Policy as a whole, *see Washington Nat. Ins. Corp. v. Ruderman*, 117 So. 3d 943, 948 (Fla. 2013) ("In construing insurance contracts, 'courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect.'") (quoting *U.S. Fire Ins. Co. v. J.S.U.B., Inc.,* 979 So.2d 871, 877 (Fla. 2007) (citation omitted)), this Court finds that the Policy is unambiguous.

### B. The Discrimination Exclusion Applies

Mount Vernon asserts that it is not required to defend PCC and Eaton because the Discrimination Exclusion applies. (Mount Vernon's Mot. (DE [28]), at 6-9). PCC and

Eaton contend that the Discrimination Exclusion does not apply because (i) none of the factual allegations relating to PCC or Eaton allege discrimination (ii) and even if they did, those factual allegations have no bearing on SFMF's claim for tortious inference with a business relationship (Count V), which means Mount Vernon must defend PCC and Eaton on all counts. (PCC and Eaton's Mot. (DE [38]), at 7-11).

"The Florida Supreme Court held that the phrase 'arising out of' is *not* ambiguous and should be interpreted broadly." *James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1275 (citing *Taurus Holdings, Inc. v. United States Fid. and Guar. Co.*, 913 So.2d 528, 537 (Fla. 2005)). "The court declared that 'the term "arising out of"' is broader in meaning than the term "caused by" and means "originating from," "having its origin in," "growing out of," "flowing from," "incident to" or "having a connection with."'" *Id.* "To have arisen out of something, there must be 'some causal connection, or relationship' that is 'more than a mere coincidence' but proximate cause is not required." *Id.* "'[T]he phrase "arising out of" contemplates a more attenuated link than the phrase "because of."'" *Id.* (quoting *Garcia v. Federal Ins. Co.,* 969 So.2d 288, 293 (Fla. 2007)).

PCC and Eaton argue that SFMF's allegations of tortious inference with a business relationship are not excluded under the Policy, and since a duty to defend one count triggers a duty to defend all counts, *see Lime Tree Village Community Club Association, Inc. v. State Farm General Insurance Company*, 980 F.2d 1402, 1405 (11th Cir. 1993), Mount Vernon owes them a duty to defend in the instant action. The language of the Policy's discrimination exclusion is broad. *See* (Mount Vernon's Facts (DE [29]), ¶ 22) and (PCC and Eaton's Facts (DE [39]), ¶ 22) (excluding coverage for discrimination "including but not limited to discrimination based on religion, race, creed, color, sex, age,

10

material status (sic), sexual preference, pregnancy, handicap or disability"). SFMF's tortious interference accuses defendants of "participating in public and private campaign" to pressure Marriott to cancel its contract with them. (*Federation* Compl. (DE [1-1]), ¶ 95). The *Federation* Complaint describes this campaign and those like it as "racially-motivated." ((DE [1-1]), ¶ 95).[9] Based on the allegations in the *Federation* Complaint, this Court finds that the tortious inference claim is one "having a connection with" religious and racial discrimination. *See James River Ins. Co.*, 540 F.3d at 1275. SFMF alleges that by participating in meetings, publishing on social media that the Coral Springs Marriott would be hosting a meeting for "pro-Hamas sympathizers," and threatening to cancel future business with the hotel, PCC and Eaton engaged in a racially motivated campaign that interfered with and eventually led to the cancelation of the conference. (*Federation* Compl. (DE [1-1]), ¶¶ 44, 49, 51, 63). Further, the message from Eaton continued by referencing "other anti-Israel and Palestinian groups". ((DE [29]), ¶ 12) (citing (*Federation* Compl. (DE [1-1]), ¶ 51)). In the context of the *Federation* action, these words have a connection with religion and race. Mount Vernon does not have a duty to defend PCC and Eaton for SFMF's claim for tortious inference with a business relationship or any other claims.

This Court is not concerned with indemnification and whether PCC and Eaton's actions constituted discrimination. Rather, applying Florida's contract law, it finds that given the Policy's broad language, the Discrimination Exclusion applies, and Mount Vernon does not owe PCC and Eaton a duty to defend in the *Federation* action.

---

[9] SFMF re-alleges the facts in paragraphs one to sixty-seven of the *Federation* Complaint and incorporates them into its claim for tortious interference with a business relationship. (*Federation* Compl. (DE [1-1]), ¶ 93).

IV.     CONCLUSION

Accordingly, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. Mount Vernon's Motion for Summary Judgment (DE [28]) is **GRANTED**.

2. PCC and Eaton's Cross Motion for Summary Judgment (DE [38]) is **DENIED**.

3. Pursuant to Fed. R. Civ. P. 58(a), a separate final judgment will be entered.

4. The Clerk of Court is directed to **CLOSE** this case and **DENY AS MOOT** any pending motions.

5. Any future hearings are therefore **CANCELLED**.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 18th day of November 2025.

_____
RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished counsel via CM/ECF